153.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

154.    The actions of the School District Defendants, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees, taken under color of state law, resulted in the deprivation of the rights of Travis Myslow to personal liberty and bodily integrity, a free appropriate public education without discrimination, to equal protection, to substantive and procedural due process, and to be free from discrimination on the basis of his disabilities under the 14th Amendment to the United States Constitution and under article eighth, §1 and article first, §20 as amended of the Connecticut Constitution.

155.    As a direct and proximate result of the actions or inactions of the defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

a.    Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing

31

aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

> b.    The Myslows were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

<u>**COUNT VII - Intentional Infliction of Emotional Distress v.
The School District Defendants and Neu**</u>

156.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

157.    The School District Defendants and Neu, and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

> a.    knew or should have known that their actions and/or inactions would inflict emotional distress on Travis by not providing appropriate education without discrimination, by unduly delaying provision of appropriate education, and by discriminating against him due to his disabilities; and/or

> b.    acted with conduct that was extreme and outrageous conduct in failing to provide Travis with an appropriate education without discrimination.

158.    As a direct and proximate result of the actions or inactions of the aforementioned defendants and their agents, each of them respectively, jointly and severally, by and through their

32

separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

      a.     Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

      b.     The plaintiffs, Cindy and Matthew Myslow, were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, punitive damages, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

### COUNT VII – Negligent/Reckless Infliction of Emotional Distress v. The School District Defendants and Neu

159.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

33

160.    The School District Defendants and Neu, and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

        a.     negligently inflicted emotional distress on Travis by not providing appropriate evaluation, identification of his disability, by not providing appropriate education without discrimination, by unduly delaying provision of appropriate education, and by discriminating against him due to his disabilities;

        b.     recklessly inflicted emotional distress on Travis by not providing appropriate evaluation, identification of his disability, by not providing appropriate education without discrimination, by unduly delaying provision of appropriate education, and by discriminating against him due to his disabilities; and/or

        c.     knew or should have known that their actions and/or inactions would inflict emotional distress on Travis.

161.    As a direct and proximate result of the actions or inactions of the aforementioned defendants and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

        a.     Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional,

34

behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

      b.     The plaintiffs, Cindy and Matthew Myslow, were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

## COUNT IX – Violation of Statutory Provisions

162.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

163.    The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees violated and/or caused to be violated provisions of:

      a.     §504 of the Rehabilitation Act of 1973, 34 C.F.R. Parts §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to provide a free appropriate public education without discrimination to Travis Myslow;

35

b.      §504 of the Rehabilitation Act of 1973, 34 C.F.R. §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to establish and implement an adequate and appropriate system of procedural safeguards including an impartial hearing and a review procedure;

c.      §504 of the Rehabilitation Act of 1973, 34 C.F.R. §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to provide to the plaintiffs their appropriate substantive and procedural due process rights while seeking a free appropriate public education without discrimination for Travis Myslow; and/or

d.      §504 of the Rehabilitation Act of 1973, 34 C.F.R. §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to provide reasonable accommodation to Travis Myslow for his physical and mental disabilities.

164.    As a direct and proximate result of the actions or inactions of the defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

a.      Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional,

36

behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

       b.     The plaintiffs, Cindy and Matthew Myslow, were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

By: _____
       **Deborah G. Stevenson, CT 22946**
       **226 East Flag Swamp Road**
       **Southbury, CT  06488**
       **Tel.:  (860) 354-3590, Fax: (860) 354-9360**

       **Pro Hac Vice:**

By: _____
       **Alan C. Milstein,**
       **Derek T. Braslow,**
       **4300 Haddonfield Road, Suite 311**
       **Pennsauken, New Jersey 08109**
       **Tel.: (856) 662-0700, Fax: (856) 665-0322**
       **Attorneys for plaintiffs**

## CERTIFICATE OF REASONABLE INQUIRY AND GOOD FAITH

I hereby certify that I have made a reasonable inquiry, as permitted by the circumstances, to determine whether there are grounds for a good faith belief that there has been negligence in

37

the care or treatment of the claimant.  This inquiry has given rise to a good faith belief on my

part that grounds exist for an action against each named defendant.

By: _____

Deborah G. Stevenson, CT 22946
226 East Flag Swamp Road
Southbury, CT  06488
Tel.:  (860) 354-3590, Fax: (860) 354-9360

## CERTIFICATE OF SERVICE

I, Derek T. Braslow Esquire, hereby certify that a true and correct copy of the within

Amended Complaint – Civil Action was served on the following via Federal Express:

Thomas R. Gerarde, Esquire
**Howd & Ludorf**
65 Wethersfield Avenue
Hartford, CT  06114-1190
Attorney for Defendants:
**New Milford School District, New Milford
Board of Education, Raymond Avery,
JeanAnn Paddyfote, Thomas Mulvihill,
Paula Kelleher, Denis Dolan, Josephine
Rositano, Jean Malcolm, Adele Johnson,
Deborah Shelley, Robyn Vikland.**

Katherine C. Callahan, Esquire
**Updike Kelly & Spellacy, P.C.**
One State Street
P.O. Box 231277
Hartford, CT  06123-1277
Attorney for Defendant:
**Robert Rubin, M.D.**

Jeffrey A. Blueweiss
**Bai, Pollock, Blueweiss & Mulcahey**
10 Middle Street
Bridgeport, CT  06604
Telephone:  (203) 366-7991
Attorney for Defendant:
**Terry Neu, Ph.D.**

Richard A. O'Connor, Esquire
Christine Robinson, Esquire
**Sachner & O'Connor**
The Crossroads West
765 Straits Turnpike
Building 2 - Suite1001
Middlebury, CT  06762-1323
Telephone:  (203) 598-7585
Attorney for Defendants:
**Anna Alshansky, M.D.
Martin Kreminitzer, M.D.**

Royce L. Vehslage, Esquire
**Genovese Vehslage & Chapman**
500 Enterprise Drive
Rocky Hill, CT  06067
Telephone:  (860) 513-3760
Attorney for Defendant:
**Diana Badillo-Martinez, PhD.**

Date:  November 3, 2003

Derek T. Braslow, Esquire

# EXHIBIT "A"

Department of Pupil Personnel and Special Services

## PSYCHOLOGICAL EVALUATION

**Name:** Travis Myslow
**D.O.B.:** 7-17-90
**Parents:** Cindy and Mattthew Myslow
**Address:** 3 Hallets Rd
**Telephone:** (860) 350-6569
**School:** John Pettibone Elementary
**Grade:** 2
**C.A.:** 7-7

**Dates of Testing:** March 35, 1998
**Examiner:** Josephine Rositano, NCSP

**Reason for Referral:** Travis was referred for a psychological evaluation by the Planning and Placement Team as part of a multidisciplinary assessment of his current educational functioning. Results from this evaluation will aid the team in determining his eligibility for Special Education Services. Travis is functioning approximately two years below grade level in all academic areas. He entered New Milford School in October 1997 from Sherman School. He received occupational therapy service for a short time.

**Background Information:** The following information was compiled from Mrs. Myslow's completion of the Developmental Case History questionnaire, review of Travis' school records and interview of his teachers. Travis resides with his natural mother, adopted father and two older siblings. Travis is the product of a full-term uncomplicated pregnancy. Birth was unremarkable and he experienced no health or feeding problems during early infancy. Developmental milestones were reached within normal limits. Travis is being treated by Dr. Draper for a lazy eye. He has difficulty falling asleep at night.

Mrs. Myslow describes her son as being a kindhearted child who is easily frustrated and obstinate. Travis enjoys outdoor activities such as fishing.

Mrs. Church, the classroom teacher, describes Travis as an affectionate boy who is extremely activity and inattentive. She has implemented many classroom modifications to reduce his frustration level and avoid obstinate behaviors.

**Behavioral Observations:** Travis presented as a friendly boy with a good sense of humor. Throughout the testing his activity level was high and his attention span was short. Travis continuously moved in his seat. He often touched the boxes of the testing material and the testing manual. He was impulsive in his approach to task. He did not wait until the directions were given before starting a task. During tasks, he rushed through too quickly without giving time to efficiently problem solve the answer. His attention to task was also redirected many times. Testing was concluded in short intervals of time.

## TESTS ADMINISTERED AND RESULTS:

**Instrument:** *Wechsler Intelligence Scale for Children-Third Edition (WISC-III)*

| Verbal Subtests | S.S. | Performance Subtests | S.S. |
|---|---|---|---|
| Information | 11 | Picture Completion | 5 (w) |
| Similarities | 15 (s) | Coding | 12 (s) |
| Arithmetic | 12 | Picture Arrangement | 7 |
| Vocabulary | 12 | Block Design | 9 |
| Comprehension | 13 | Object Assembly | 6 |
| (Digit Span) | (12) | (Symbol Search) | (8) |

| Verbal IQ Score | |
|---|---|
| Performance IQ Score | 86 |
| Full Scale IQ Score | 108 |
| | |
| Verbal Comprehension Index | 116 |
| Perceptual Organization Index | 75 |
| Freedom From Distractibility Index | 112 |
| Processing Speed Index | 101 |

**Discussion:** The WISC-III is a standardized test of general intellectual ability. It employs two scales to assess a child's intelligence. The Verbal scale is made up of subtests in which the child must formulate verbal responses to the examiner's questions. The skills taped by this scale are the kind that stand out in traditional academic settings. The Performance scale is made up of subtests in which the child must formulate a visual-motor response to task demands. The Performance subtests emphasize *doing* something rather than saying something.

The average subtest score is 10 and the standard deviation is 3, which defines the average range between 7 and 13. The average IQ and Index score is 100 and the standard deviation is 15, which defines the average range between 85 and 115. Relative strengths and weaknesses are indicated by an (s) or (w) next to the score.

Travis' Full Scale IQ score indicates current functioning in the Average range of general intellectual endowment. The 29 point difference between his Verbal and Performance IQ scores does reach statistical significance, indicating Travis' competence in answering questions verbally. This discrepancy also indicates that he has poor perceptual organizational skills and inflexible thinking skills. Travis approaches problems in a rigid and concrete manner. The individual subtests within each scale are discussed below.

**Verbal Subtests:**
The Information subtest taps a child's fund of factual knowledge that is not specific to any one field. Among the factors that influence a child's performance on this subtest are the child's long-term memory skills, which influence a child's ability to store and retrieve information, the child's exposure to information, and the child's attention to and/or interest in information. Travis obtained an average score on this subtest.

The Similarities subtest taps a child's ability to reason with verbal concepts. Children are asked to say how two things are alike. Responses that highlight categorical or conceptual similarities are worth more points than responses that highlight concrete or functional similarities. Travis obtained a superior score on this subtest.

The Arithmetic subtest taps a child's ability to compute arithmetic problems without the use of paper and pencil. Among the factors that influence a child's performance on this subtest are short-term auditory memory, freedom from distractibility, level of anxiety, and mathematical aptitude. Travis obtained an average score on this subtest.

The Vocabulary subtest taps a child's breadth and depth of word knowledge. Among the factors that influence a child's performance on this subtest are exposure to words through reading and oral language, understanding of words, and the child's ability to organize and verbally express that understanding as a coherent definition. Travis obtained an average score on this subtest.

The Comprehension subtest taps a child's common sense understanding, reasoning, and judgment about social predicaments and every day activities. Among the factors that influence a child's performance on this subtest are cultural opportunities in the child's home, social awareness, and understanding of cause-effect relationships. Travis obtained a high average score on this subtest.

The Digit Span subtest taps a child's short-term auditory memory. Among the factors that influence a child's performance on this subtest are attention span, freedom from distractibility, and level of anxiety. Travis obtained an average score on this subtest.

**Performance Subtests:**

The Picture Completion subtest taps a child's awareness of essential visual details. Among the factors that influence a child's performance on this subtest is the ability to organize visual perceptions without essential motor activity. Travis obtained a borderline score on this subtest. This was his area of weakness.

The Coding subtest taps a child's psycho-motor speed and accuracy. Among the factors that influence a child's performance on this test are level of anxiety, freedom from distractibility, and short-term visual memory. Travis obtained an average score on this subtest. This was his area of strength.

The Picture Arrangement subtest taps a child's ability to integrate discrete visual images into a logical story sequence. Among the factors that influence a child's performance on this subtest are awareness of essential visual details, social judgment, and understanding of cause-effect relationships as depicted by representational drawings. Travis obtained a low average score on this subte.

The Block Design subtest taps a child's ability to geometrically analyze and reconstruct abstract visual designs. Among the factors that influence a child's performance on this subtest are the ability to organize visual perceptions, apply logic and reasoning to problems involving spatial relationships (i.e. spatial concept formation), and the application of visual-motor integration in constructional tasks. Travis obtained a average score on this subtest.

The Object Assembly subtest taps a child's ability to integrate disparate visual elements into a meaningful whole. Among the factors that influence a child's performance on this subtest are the ability to anticipate the relationship among parts, generate and evaluate alternative solutions, attend to visual details, plan, organize, and monitor ones problem solving activities. Travis obtained a borderline score on this subtest. Travis' difficulty on this subtest appeared to be related to executive functioning. His problem solving style was random, illogical, and impulsive.

The Symbol Search subtest taps a child's perceptual speed and accuracy. Among the factors that influence a child's performance on this subtest are level of anxiety, freedom from distractibility, and speed of visual discrimination. Travis obtained a low average score on this subtest.

**Instrument:** *Bender Visual-Motor Gestalt Test*
  — *Visual-Motor Integration Skills: A.E. 5-6 to 5-8*
  *Visual-Motor Memory Skills: poor (below norm)*

**Discussion:** Travis placed the nine geometric design in a confused order on paper. He also reproduced several of the designs on top of each other. He showed poor organizational skills and impulsivity. Travis' visual-motor skills are significantly delayed, approximately two years below his chronological age. Visual-motor memory skills are also significantly delayed

## SOCIAL EMOTIONAL ASSESSMENT:

**Instrument:** *Child Symptom Inventories (CSI)*
  *Parent Checklist*
  *Teacher Checklist*

**Discussion:** The *CSI* are designed to be a screening instrument for the behavioral, affective and cognitive symptoms of over a dozen childhood psychiatric disorders. Items in the *CSI* are based on the diagnostic criteria specified in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (*DSM*).

The Parent Checklist results indicate that Travis meets the criteria for the following disorder:
  Attention Deficit/Hyperactivity Disorder (NOS)
The Teacher Checklist results indicate that Travis meets the criteria for the following disorders:
  Attention Deficit/Hyperactivity Disorder (Combined Type)
  Oppositional Defiant Disorder
  Dysthymic Disorder

Case 3:03-cv-00406-MRK Document 61-2 Filed 11/06/2003 Page 14 of 28

Within the classrooms Travis shows significant levels of impulsivity and hyperactive-impulsive behaviors. He also loses his temper quickly, argues with adults and refuses what the teacher tells him to do. Travis is irritable for most of the day. He has little confidence and feels that things never work out right.

## Attention Deficit Disorders Evaluation Scale - Home Version Rating Form

| Scale | S.S. | Normal | Moderate | Significant |
|---|---|---|---|---|
| Inattentive | 9 | X | | |
| Hyperactive-Impulsive | 7 | X | | |

**Discussion:** The A.D.D. Evaluation Scales are standardized rating scales that utilize the observations of parents or teachers to rate the child along two specific dimensions of behavior. The results of the Home Version Rating Form indicate no significant problems with Travis' inattentive and hyperactive-impulsive behaviors. However his mother reports that Travis has difficulty concentrating needs oral directions frequently repeated and constant reminders.

## Attention Deficit Disorders Evaluation Scale - School Version Rating Form

| Scale | S.S. | Normal | Moderate | Significant |
|---|---|---|---|---|
| Inattentive | 1 | | | X |
| Hyperactive-Impulsive | 6 | | X | |

**Discussion:** The results of the School Version Rating Form indicate problems with Travis' inattentive and hyperactive-impulsive behaviors. Within the classroom, he is easily distracted by other activities, other students and the teacher. He needs oral directions frequently repeated and constant reminders. He is disorganized and loses material for class. He fails to perform assignments independently and rushes through assignments with no regard for accuracy and quality of work. During instruction, Travis often interrupts the teacher by blurting out an answer or a question. He is easily angered and argues with the teacher and students. Travis is restless in class. He leaves his seat without permission, hops, skips and jumps when moving from one place to another instead of walking and twirls pencils and plays with things in his desk.

## ADD-H Comprehensive Parent's Rating Scale (ACTeRS)

| Scale | %ile | Normal | Moderate | Significant |
|---|---|---|---|---|
| Attention | 60 | X | | |
| Hyperactivity | 23 | | | X |
| Social Skills | 42 | X | | |
| Oppositional | 23 | | | X |
| Early Childhood | 50 | X | | |

**Discussion:** The ACTeRS Parent Rating Scale is the companion to the ACTeRS Teacher Rating Scale and utilizes the parents observations of the child. The resulting scores indicate a child exhibiting significant behaviors in the Hyperactivity and Oppositional Scales. Within the home setting, Travis is fidgety, restless and is frustrated easily. He argues when told what to do and challenges authority.

## ADD-H Comprehensive Teacher's Rating Scale (ACTeRS)

| Scale | %ile | Normal | Moderate | Significant |
|---|---|---|---|---|
| Attention | <1 | | | X |
| Hyperactivity | 1 | | | X |
| Social Skills | 12 | | | X |
| Oppositional | 19 | | | X |

**Discussion:** The ACTeRS Teacher Rating Scale is a standardized behavior rating scale which utilizes the observations of teachers to rate their student along a broad spectrum of behaviors. Within the classroom setting, Travis does not function well. He is unable to work independently, persist with task for reasonable amount of time and complete assigned task satisfactorily with little additional assistance. He is extremely overactive and "on the go". He squirms in his seat and his hands are always busy. His impulsive behaviors affect his social interactions. He does not behave positively with his peers. Travis is noncomplaint. He makes malicious fun of people and picks on others. He defies the teacher.

**Discussion:** Travis struggles with his impulsive behaviors. He needs outer limits and controls to help him regulate his behavior. He generally feels rejected by his peers and view himself as a "clown". He is also frustrated by his academic demands and is happiest in non-academic activities like recess or art. A poor self-esteem is evident. He feels that he is always in "trouble".

## SUMMARY AND RECOMMENDATIONS

Travis is a 7 year, 7 month old second grade student who was referred for an evaluation by the Planning and Placement Team. The results of this evaluation find Travis to be functioning in the Average to High Average range of general intelligence. His overall verbal skills are better development that his perceptual-motor skills. Travis shows poor problem solving skills and approaches situations in a rigid, concrete manner. His strengths are in his verbal abstract reasoning skills and timed paper and pencil tasks. His weaknesses are in his visual alterness to his environment and visual-motor integration skills.

The results also indicate a child with characteristics of an Attention Deficit/Hyperactivity Disorder (Combined Type) and comorbid Oppositional Defiant and Dysthymic Disorders.

The parents are encouraged to share the results of the this evaluation with Travis' pediatrician.

Travis would respond best to a predictable and flexible school environment. Suggestions for the classroom:

- Seat Travis away from distractions and close to where the teacher is giving the lesson
- Cue him to stay on task i.e. using a private signal
- Break long assignments into smaller parts
- Give assignments one at a time
- Set up behavior contract
- Ignore calling out without raising hand
- Praise Travis when his hand is raised
- Look for signs of frustrations and provide encouragement or reduced work load

_____
Josephine Rositano, School Psychologist

*E.D. M. : 4/9/98.*

# SUMMARY OF TRAVIS MYSLOW'S
## LEVEL OF PERFORMANCE
### 1998-2001

|                 | '98 (grade 2) | '98-99 (grade 3) | '99-00 (grade 4)        | '00-01 (grade 5)                                                                       |
|-----------------|---------------|------------------|-------------------------|----------------------------------------------------------------------------------------|
| Math            | $1.9^1$       | $3.6^2$          | $5.3^2$                 | $4.0^1$                                                                                |
| Reading Comp.   | $1.4^1$       | $2.5^2$          | $4.2^3$ (accuracy 2.3)  | $2.2^1$ Broad Reading $2.1^1$ Basic Reading $3.5^3$ (accuracy >1.9)                     |
| Wr.Exp.         | $1.4^1$       |                  |                         |                                                                                        |
| Spelling        |               | $2.0^2$          | $2.6^2$                 | $1.8^1$ Broad Written Exp.                                                              |

[1] Woodcock Johnson – Revised
[2] Kaufman Test of Educational Achievement
[3] Gray Oral Reading Test

# EXHIBIT "B"

# PEDIATRIC ASSOCIATES OF WESTERN CONNECTICUT, L.L.C.
41 Germantown Road, Danbury, CT 06810
(203) 744-1680

Name  Myslow, Travis          Address  3 Hallets Rd.

D.O.B.  7-17-90   Sex  Male  Female          ~~1 Cedar Lane~~          Phone 860-350-6569

Mother  Cindy   Father  Matthew          ~~Sherman, Ct 06784~~  New Milford,
CT
06776

Major Diagnosis/Chronic Medications or Treatments/Dates

| | ALLERGIES | DATE | REACTION |
|---|---|---|---|
| L. Robert Rubin, M.D., F.A.A.P. | None | 10-31-97 | — |
| John E. Ertl, M.D., F.A.A.P. | | | |
| Leon A. Baczeski, Jr., M.D., F.A.A.P. | | | |
| David B. Gropper, M.D., F.A.A.P. | | | |
| Bruce W. Cohen, M.D., F.A.A.P. | | | |
| Maureen R. Burke, M.D., F.A.A.P. | | | |
| Rachel R. Rothschild, M.D. | | | |
| Kevin F. Ferguson, M.D. | | | |
| Jamie L. Alon, M.D. | Date | Water Source | Fluoride Given |
| Kathleen M. Hogan, P.A.-C. | | city / well | yes / no |
| | | city / well | yes / no |

## MEDICAL HISTORY

Full Term  yes / no

Breast / Bottle          NSVD / C-SECTION          Birth wt.          D/C wt.

Neonatal Problems

Medical Hx/Hospitalizations

Surgical/Trauma Hx

Social/Behavioral History

Other Hx

## IMMUNIZATIONS/LABS

| DTP/HIB | DTaP | Td | OPV/IPV | HBV | Varivax | MMR | Hib |
|---|---|---|---|---|---|---|---|
| 9-18-90 | | | 9-18-90 | 10-1-99 | 10-31-97 | 1-31-92 | 5-15-91 |
| 12-10-90 | | | 12-10-90 | 12-10-99 | | 5-8-02 | 1-31-92 |
| 5-15-91 | | | 9-9-92 | 5-12-00 | | | |
| 6-27-95 | | | 6-27-95 | | | | |
| 9-9-92 | | | | | | | |
| Monovacc | PPD | Pb | Hgb | Influenza | HAV | | |
| 6-27-95 | 3-19-02 | | 10.6 gm 3-19-02 | | | | |
| 10-31-97 | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

10-31-97                          7 3/12 yrs   3-27-98   p.c.
wt  43 lb                                      see recent school
ht  4 ft                          evaluations
vs  99/82   for the past         Will  use 2 wk
nsad-l Children's Dropped         trial of ritalin 10mg
hearing fl                        daily.
            iron for anemia                            Ruben
treatment caused constipa-
tion which continues
was stopped                      7/13/98  School form completed
                                 mailed home
PE:HEENT;NECK;LUNGS;HEAR.   nevus
ABDOMEN;GENITALIA;EXTREMITIE  (+) side a
SPINE; AND NEUROSCREEN       nevus    10/16/98 Ritalin 5mg #30 1 tab
NORMAL EXCEPT AS NOTED BE                   @ Noon - 10mg #30 1 tab @ Noon
                            Plan-CBC      Ritalin 10mg #30 1 tab
My s/w, T.  10.31.97                        each AM @  for Dr. Ruben
                            TB Monitor
                            Varicella  2/16/99 Ritalin 5mg
        CBC + Hgb. electro-        #30 1 tab ab 12N  Ritalin
phoresis  ordered.          10mg #30 1 tab in AM
        Advice re Hgb       Will p/uas office  S Ruben
vaccine.                    3/3/99 Ritalin 5mg #30
        Referral to Dr.            1 tab at noon daily
Zwn  re nevus.                     per Dr. Ruben
        i.cp 1-2 yrs.              Ritalin 10mg 1 tab
        Mineral Oil janet          5am daily per Dr. Ruben
retraining.    Ruben               @ script be mailed home
                            5/18/99 Ritalin 10mg
                            #30 1 tab 5am
                            Ritalin 5mg #30
                            1 tab ab noon  Sent
                            per request  S Ruben CRN
12-23-97  Mo informed       8/24/99 Ritalin 10mg 2tab p 5am
states has tha assess       5 mg @ noon  #90  for Dr. Si
mia trait                   w Rx on duration  Mailed
              Ruben         home @



10-1-99

ht     4' 5"           (53")
wt     56 lb          sb - 1-01
BP     98/38

PE: HEENT; NECK; LUNGS; HEART;
ABDOMEN; GENITALIA; EXTREMITIES;
SPINE; AND NEUROSCREEN
NORMAL EXCEPT AS NOTED BELOW

On Ritalin (10 mg AM)
+ 5 mg @ noon
Also being rx for
amblyopia

Plan: 2nd opinion
c̄ Dr. Matthias

cont. Rx for
2 mos. for ritalin

Hep B Vacc #1

ret 2 mo for
HBV #2

12-10-99

HBV × 2

Hep B vacc. (#2) 0.5 cc im gm
in Ⓛ deltoid — thdd (kr)

---

1/28/99  fluid ×2 day
of the pharynx
appetite ↑

—ā significant finding
Imp - URI
Plan - Novahistine - DH
1 tsp. t.d.

1-?-00

4/3/00 (CVS N.M) Claritin reditab
#30    Sig. 1 tab daily
Dr. Coughlin

5/2/00 "chronic" cough (3-4 days)
dry cough, afebrile, keeping chit
of @ night, novahistine working c̄
good results
PE Gen → alert, active N.A.D
HEENT → NCAT, conj. clear, TM's WNL
op benign, oro pharynx
Neck → supple & A/D
- Lung → CTA, good air entry, no rhonchi,
no crackles
COR → RRR, S1 S2 appear.
Abd → benign
A: URI
P: symp. tx (fluids, vaporizer, OTC meds)
novahistine DH + tsp po q6h
call if fever dev. or ↑ sx / not resolving

KARIN E. CROK M.D.
DEA # BC 1583927

5-9-00   child says
ritalin makes him
"hyper". Not taken
at in AM for — wk
fluid. School been



3-19-02
11 9/12   5-8-02

Ht   36¼
Wt   87½                    U/A
B/P  120/8        still
vision - pl      having
hearing - pl     school

MMR #2   0.5cc. Sub q.
given in R
Deltoid  Lot #
0023 M

6.3.02

PE;HEENT;NECK;LUNGS;HEART;
ABDOMEN;GENITALIA;EXTREMITIES;
SPINE; AND NEUROSCREEN
NORMAL EXCEPT AS NOTED BELOW

Tanner I

CHEMSTRIP 10 UA
Seq.No.    1
Pat.ID:
03.19.2002        10:51

SG    1.020
pH    5
LEU   neg
NIT   neg
PRO   neg
GLU   norm
KET   neg
UBG   neg
BIL   neg
BLD   neg

Plan-
PPD
placed

CBC.

3-20-02   Needs MMR (B)

8/5/02
R earache - tender to
touch
no cold sym
swimming a lot
PE: Gen - alert, active, NAD
HEENT → NC/AT, conj clear, O benign
   R canal inflamed, O pus, ? hyphae
   L nml
Neck → supple O LAD
Lungs → CTA, good AE bil
CV: RRR, O appreciation
A: R OE
P: Cipro HC Otic 3-0-7

Plan - Cultivate oint
daily.

Given rx for
prednisone 30mg
to be filled prn
Advise re use
of "IVyblock"

LEFT EAR

RIGHT EAR



| PEAK YA | 1.2 mmho | A C ✳ |
|---|---|---|
| GR (WIDTH) | 50 daPa | ✳ |
| TPP | -100 daPa | ✳ |
| Vea (+200) | 1.3 cc | ✳ |

<u>A= ADULT: 10+ Years</u>
NORMAL TYMPANOGRAM

<u>C= CHILD: <10 Years</u>
HIGH PEAK HEIGHT

| PEAK YA | 1.0 mmho | A C ✳ |
|---|---|---|
| GR (WIDTH) | 85 daPa | ✳ |
| TPP | + 50 daPa | ✳✳ |
| Vea (+200) | 1.7 cc | ✳✳ |

<u>A= ADULT: 10+ Years</u>
POSITIVE TYMPANOMETRIC
PEAK PRESSURE

<u>C= CHILD: <10 Years</u>
POSITIVE TYMPANOMETRIC
PEAK PRESSURE

MicroTymp 2    Welch Allyn, Inc Skaneateles Falls, NY USA ╲╲╲

# EXHIBIT "C"

| Address (Number and Street) | Town and Zip Code | Home Phone | Entry Date | School Name — Town | Exit Date |
|---|---|---|---|---|---|
| 1 Cedar Lane  Sherman  CT. | New Milford, CT 06776 | 370-6569 | 8/28/97 | Sherman School | |
| 3 Halletts Rd. | | | 10/31/97 | The Petibone School - N. M., CT | |

## I. School Health Summary

Use * to note problem explained in Section VII

| School Year | 96-97 | 97-98 | 97-98 | 98-99 | 99-00 | 00-01 | 01-02 | | |
|---|---|---|---|---|---|---|---|---|---|
| Grade | K | 1 | 1 | 2 | 3 | 4 | 5 | 6 | |
| Date Health Assessment | 10/21/91 | | 10/31/97 | | | | | | |
| Date Specific Problem | | | | | | | | | |
| Health Provider / Source of Care | House/Laura | | Dr. Rubin | | | | | Dr. L. Rubin | |
| Date Sports Assessment | | | | | | | | | |

Color Vision Test Results: Section V  Q(Normal)  Date Jul 9, 97  Grade 12

## II. Screening Results

R = Referred (explain in Section V)

| Grade/School Year | K 95-96 | 96-97 | 2 97-98 | 3 98-99 | 4 99-00 | 5 00-01 | 6 01-02 | |
|---|---|---|---|---|---|---|---|---|
| Height | 41 3/4" | 43 3/4" | 47 | 50 | 47 | 49 | 5100-01 | 4/20/02 |
| Weight | 37 1/2 lb. | | 49 | 55 | 49 | 54 | 56 | |
| Blood Pressure | 92/48 | | 98/50 | | 98/50 | 66 | 82 | |
| Pulse | | | 70 | | | | 100/68 | |
| HCT/HGB | 9.1 | | 30% | | 30% | | 70 | |
| Gross Dental | NL | | NL | | NL | | 10.6 | |
| Postural | NL | | | | | | NL | |
| Urinalysis | NL | | | | | | NL | |
| Tuberculin Test | Neg 3/25(c) | | Neg | | Neg 3/1-97 | | Neg 5.01.01 | |
| Vision  Distant  Both | *11/6/95 | *11/6/95 | * | * | * | * | *1/00 | *3.9.01 (-) |
| Right | 20/R(c) | 20/R(c) | 20/20 | 20/40 | | 20/20 | 20 | 20 |
| Left | 20/40 | 20/40 | 20/20 | 20/30 | 20/40 F R | 20/20 | 20 | 20 |
| Near  Both | 20/30 | 20/30 | 20/20 | | 20 F R | 20/25 | 20 | 20 |
| * gl = glasses  Right | 20 | 20 | 20 | 20 | 20/20 | 20/20 | 20 | 20 |
| * c = contact  Left | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| Hearing  Puretone  Right | P | P | P | P | P | P | 11/00 P | |
| Left | P | P | P | P | P | P | P | |
| Impedance  Right | | | | | | | | |
| Left | | | | | | | | |
| Other | | | | | | | | |

## III. Immunization

Kingston

Birth Date ___ 7-17-73 ___

Vaccine (Date = Month/Day/Year)

**DTP/Td (Diphtheria, Pertussis, Tetanus)**

| 1st dose | 2nd dose | 3rd dose | 4th dose | 5th dose | 6th dose |
|---|---|---|---|---|---|
| 9/8/73 | 10/11/73 | 5/11/74 | 4/15/75 | 6/6/79 | |

**DTP/Td (Diphtheria, Tetanus)**

| 1st dose | 2nd dose | 3rd dose | 4th dose | 5th dose |
|---|---|---|---|---|
| 6/27/88 | | | | |

**Hib (Haemophilus Influenzae b)**

| 1st dose | 2nd dose | 3rd dose | 4th dose | 5th dose |
|---|---|---|---|---|
| 5/11/71 | 11/31/72 | | 6/6/79 | |

**Polio**

| 1st dose | 2nd dose | 3rd dose | 4th dose | 5th dose |
|---|---|---|---|---|
| 9/8/73 | 10/31/73 | 9/9/76 | 6/13/75 | |

| | Initial | Booster |
|---|---|---|
| Measles | | |
| Mumps | 7/10/81 | 6/9/22 |
| Rubella | | |

Chicken Pox Vaccine 10/31/97

Disease Hx of above _____

Medical/Religious Contraindication _____

(Specify) _____ (Date) _____ (Be specific) _____ (Confirmed by) _____

Hep B (1) 10-1-99 (2) 12-11-99 (3) 5-12-00

## IV. Significant Health History

Family: _____

Developmental: _____

Illness/Operations: _____

Specific Health Problems: _____

## V. Health Problems for Referral

| Problem | Date Identified | Date Referral Sent | Date Referral Returned | Follow-up Summary |
|---|---|---|---|---|
| Failed Vision - tested cold blind | 11/6/91 | 11/9/91 | | |
| Vision referral | 9/99 | 9/99 | | |
| Vision referral | 10/00 | 11/00 | 4/11/51 | Ophthalmology Rx |

Mother's/Guardian's Name (Last, First, Middle)

Father's/Guardian's Name (Last, First, Middle)

## VI. Medications/Treatments in School

| Start Date | Medication/Treatment Description | Prescribing Physician | Observations | Stop Date |
|---|---|---|---|---|
| 4/27/98 | Liquin say one | Jeffers | ADD | |
| 9/1/98 | 1 tablet 10mg @ 9.00am | Rubin | ADHD | |
| 9/99 | 1 tab. say @ 12 | Rubin | | |
| | Ritalin 15mg/9 5ms @ 12 | Rubin | stop order to 5ms @ 11:30 | |

## VII. Nurses' Notes on Health Problems

| Date | Nursing Diagnosis | Intervention Plan | Outcome |
|---|---|---|---|
| | | | |

# EXHIBIT "D"



F. Taylor Rubin, M.D., F.A.A.P.
John E. Bril, M.D., F.A.A.P.
Leon A. Barbieri, Jr., M.D., F.A.A.P.
David B. Gremper, M.D., F.A.A.P.
Bruce W. Cohen, M.D., F.A.A.P.
Karin E. Chen, M.D., F.A.A.P.
Maureen R. Burke, M.D.

Emeritus:
Robert C. Joy, M.D., F.A.A.P.
Alvin Goldman, M.D., F.A.A.P.

**PEDIATRIC ASSOCIATES**
OF WESTERN CONNECTICUT, L.L.C.
41 GERMANTOWN ROAD, DANBURY, CT 06810

(203) 744-1680 • FAX: (203) 791-6510
BILLING: (203) 7920378

June 19, 2001

Re:      Travis Myslow
D.O.B:   7/17/90

The above named patient has been on Ritalin (methylphenidate) for the past three years. He originally started this medication at the suggestion of his school because of observed and perceived difficulties.

His parents feel there has been no real improvement since inception of the treatment.

Sincerely,

L. Robert Rubin, M.D.

Primary Care: Infants • Adolescents
Board Certified, American Board of Pediatrics • Fellows, American Academy of Pediatrics

P1, 1 of 1