Comments regarding the draft I.E.P. for Travis Myslow – September 12, 2002                Page 3

expectation for his age. In content courses, curriculum and instructional modification will have to be made in order not to depend upon or to require reading and writing. In other words, Travis will have to be considered to be a dyslexic and dysgraphic student.

9. In content courses, he will require additional, tutorial support to the extent that grade appropriate curriculum depends upon mastery of material taught in previous grades.

The I.E.P., with the revisions suggested on page one of this document would be adequate as an interim program until a final placement that appropriately meets his educational need has determined.

*[signature]*

Armin Paul Thies, Ph.D., ABPP
Board Certified Clinical Neuropsychologist
Board Certified Clinical Psychologist

# Armin Paul Thies, Ph.D.
ABPP/ABCN Board Certified Clinical Neuropsychologist
Associate Clinical Professor - Yale Medical School

Comments regarding the draft I.E.P. for Travis Myslow – September 12, 2002

Goal 1: need objectives to work on content, i.e., expression

    Objective 1: (suggested revision) Travis will independently dictate an eight to ten word sentence which will then be edited for correct grammar, punctuation, and spelling.

    Objective 2: phonological skills are poor; what is the objective?

    Objective 3: Prognosis for improving penmanship is likely to be poor, at this late date. Goals and objectives for keyboard skills are probably more relevant. What does "improve" mean?

Goal 2:

    Objective 1: ...a structured approach to problem solving...??

    Objective 2: What does "appropriately" mean?

    Objective 3: How is this going to be taught?

    Objective 4: How is "...appropriate for time, place and activity..." to be judged?

Goal 3: "improve" – how much?

Goal 5: If the objectives are met with less than perfect performance, the goal should not also have a partial success criteria of "3 of 4."

Goal 6:

    Objective 1: This kind of verbal insight is not normally expected at his age.

    Objective 2: (suggested rewording) Travis will learn alternatives for dealing with anxiety and will [illegible] effective solutions.

    Objective A: How [illegible] per week for keyboard instructions?
    Objective C: What [illegible] "increase" mean?

P.O. Box 906, Orange, [illegible] 06477-0906 • Phone: (203) 966-8241 (Automatic Fax Detection)
E-mail: apthies@icom.net

# EXHIBIT "L"

# SCHAGHTICOKE MIDDLE SCHOOL
23 Hipp Road, New Milford, Connecticut
Telephone (860) 354-2204 ♦ Fax (860) 210-2216

Jean E. Malcolm, Principal
Barbara A. Ajello, Assistant Principal

September 19, 2002

Mr. and Mrs. Matt Myslow
3 Hallets Road
New Milford, CT 06776

Dear Mr. and Mrs. Myslow:

This letter constitutes my written response to the Section 504 complaint that you filed on or about September 5, 2002 pursuant to New Milford Board of Education Policy 5145.4 Grievance Procedure for Complaints of Discrimination. Specifically, you made thirty-three separate allegations that the following staff, by and through their actions or inactions since second grade, have discriminated against you and your son, Travis: Jean Ann Paddyfote, Thomas Mulvihill, Adele Johnson, Josephine Rositano, Jennifer Okoski, Raymond Avery, Denis Dolan, and Paula Kelleher. For the following reasons, it is my opinion that there has been no discriminatory action taken against you or your son.

Board of Education policy recommends that any issues involving discrimination by a member of the school community be reported within 40 calendar days of the alleged discriminatory action. You have alleged numerous incidents of discrimination stemming back to Travis' second grade year. Although it is my opinion that such allegations are beyond the scope of the relevant Board policy, I have interviewed staff concerning every allegation in order to thoroughly investigate and understand the nature of your complaint. In this regard, it was necessary to extend the timeline for responding to your complaint beyond the five business day timeline to ten business days – September 19, 2002. This extension of time was discussed with you on September 10, 2002.

Furthermore, you raise numerous issues concerning Travis' identification for special education services pursuant to the IDEA, 20 U.S.C. §1400, *et seq.*, and Conn. Gen. Stat. §10-76, *et seq.* In particular, you allege that discrimination has occurred because staff has failed to provide an appropriate public education for Travis by, among other reasons, failing to appropriately identify his disability and by failing to provide specific levels of accommodation and modifications to Travis in the public school setting and by failing to place him in an out-of-district placement. See allegation numbers 3, 7-10, 12-24, 30-31, and 33. It is my opinion that such issues should be addressed by a State Department of Education Due Process Hearing Officer pursuant to Conn. Gen. Stat. §10-76h since the allegations concern the specific nature of educational services that were provided to Travis. Such issues are outside the scope of this grievance process because Travis is identified for special education services pursuant to IDEA and C.G.S. §10-76, and not provided services solely based on Section 504. You have received the procedural safeguards at every planning and placement team meeting regarding the planning

and placement team process and such hearing procedures. Furthermore, this complaint was filed on your behalf by your attorney, Deborah Stevenson. Therefore, this office forwarded your complaint to the State Department of Education on September 6, 2002 to commence the hearing grievance; however, per a conversation that I had with Thomas Badway of the State Department of Education Due Process Unit on September 10, 2002, I learned that your attorney expressly stated that you did not wish to pursue this complaint in a due process hearing at this time. Accordingly, this response only addresses these allegations to the extent that there was any discriminatory motive in not providing such educational services. See allegation numbers 3, 7-10, 12, 14-24, 30-31, and 33.

As part of this investigation, I reviewed the educational records of Travis and interviewed the following individuals:

1) Cindy and Matt Myslow, the parents;
2) Travis Myslow, the student;
3) Barbara Ajello, Assistant Principal, Schaghticoke Middle School
4) Adele Johnson, Speech and Language Pathologist
5) Jennifer Okoski, teacher
6) Susan Pullen, teacher
7) JeanAnn Paddyfote, Interim Superintendent of Schools
8) Thomas Mulvihill, Assistant Superintendent of Schools
9) Denis Dolan, Principal, John Pettibone School
10) Josephine Rositano, School Psychologist
11) Paula Kelleher, Principal
12) Lynn Holmes, School Nurse
13) Dr. Terry Neu, Independent Educational Consultant
14) Thomas Badway, Department of Education Consultant

My conclusions correspond with the numbered paragraphs contained in your complaint as follows:

1) The incident on August 30, 2002 involving Travis and another student was promptly addressed by Assistant Principal Ajello. The complaint was that both boys were allegedly involved in name-calling and that the male student who pushed Travis into a locker received a disciplinary consequence. There was no discrimination by school staff.

2) The incident on August 29, 2002 involved a concern by Mrs. Okoski that Travis' anxiety in relationship to his reading and writing should be monitored. According to Travis' IEP, staff is to "...limit the amount of writing, provide access to a computer, and to adjust class activities to alleviate anxiety due to reading and writing." No staff member told Travis that his writing was "sloppy." The staff were following the IEP and there was no discrimination.

3) Travis has been identified as learning disabled in the area of reading. There is no special education identification label for dyslexia. No discrimination has occurred.

4) The evaluation recommended by the planning and placement team (PPT) was required because staff were concerned about Travis' behaviors in the school setting. According to state and federal law, the PPT requested an evaluation, as they are required to do, to learn more about Travis in preparation for educational programming. There seems to be an inference by this allegation that staff somehow diagnosed Travis with ADHD. This diagnosis came from a licensed medical doctor – Dr. Alshansky – who also prescribed medication for Travis. NO discrimination occurred.

5) It is my understanding that Travis has not been on medication (e.g. Ritalin) for many years. During the time that Travis was on medication it was brought to the school by Travis and/or his parents to be administered by the school nurse. I find no discrimination.

6) Although the school nurse may have attended PPT meetings to update her information concerning Travis' medication regime in the school setting, no staff has called you to insist that Travis remain on certain medication. No discrimination.

7) Over the years Travis has been evaluated in a variety of areas for his learning disability. I find no discrimination.

8) You mentioned that you would fax to me further information regarding this allegation. No such information was provided. The staff has no recollection regarding any statements made by you that were ignored. I find no discrimination.

9) The educational record reflects that Travis received grades according to school district policy and based on his IEP. No further information regarding the specifics of this allegation was provided by you, as mentioned during our interview. I find no discrimination.

10) Exemption from Connecticut Mastery Tests is a PPT decision. In grade 6, during CMT testing, Travis was not attending school.

11) The teachers who have worked with Travis are trained and certified to teach students with learning disabilities. According to my interviews, the staff has individually worked with Travis on his reading and writing skills. Travis does not appreciate this specialized instruction and the one-on-one attention by staff makes him feel "stupid" because other special education students in his class do not have such accommodation or modifications. Moreover, compared to regular education students, Travis' IEP provides for less time in the mainstream setting. Staff deliver Travis' IEP in accordance with the PPT recommendations. Such recommendations are made based on the evaluative information and input from a variety of sources. Travis also has a counseling goal to assist him with his self-esteem and anxiety in the school setting. Accordingly, I find no discrimination.

12) – 24) There was no discriminatory motive involved in the PPT discussions concerning the issues raised in these allegations. The PPT based their decisions on evaluative

information in Travis' file and/or that was needed to make educational programming recommendations.

25) The teachers working with Travis have assigned Travis work in accordance with the goals and objectives of his IEP.

26) Procedural safeguards, provided by the State Department of Education, are provided to you at every PPT meetings. Informal complaints by parents, like yourselves, are treated similarly and if complaints involve accommodation or modification to the IEP, such concerns are required by law to be addressed at PPT meetings. Accordingly, I find no discrimination regarding the concerns addressed by you. Furthermore, Dr. Avery and Dr. Paddyfote have written to you about the school's policies and the state/federal laws regarding your concerns with Travis' educational program.

27) When questioned about this allegation, the benefits you seem to complain about involve benefits as comparable to other special education children who were in Travis' classes. Travis' program was based on his specialized needs as seen by the PPT. There was no discriminatory motive behind such decisions.

28) You claimed that this incident occurred two years ago in grade 5 at John Pettibone School. Such decisions involving gym class were made by a gym teacher not named in this complaint. Upon investigation, the decision was based on classroom policy for all students in the class, not only Travis. Since grade 5, Travis has a behavioral plan that addressed completion of work that is discussed at PPT meetings. There was no discrimination.

29) This allegation concerns the mainstream time recommended by the PPT. I find that Travis' schedule was discussed at numerous PPT meetings and there was no discriminatory motive behind his class schedule.

30) Travis' paraeducator time never lapsed. There was a switch in assignment from the specific individual working with Travis. No discrimination.

31) Travis' classroom in 5th grade was not in the kindergarten hallway. It was at the end of the wing near the kindergarteners. Other 5th grade classrooms were also near the kindergarten hallway, and in this regard, other 5th grade students were also placed in these classrooms. Accordingly, I find no discrimination as Travis was not singled out.

32) As discussed in paragraphs 1-32, there was no discriminatory motive behind the decisions made by staff in programming for Travis.

33) It is my understanding that this allegation is more akin to a remedy. Since it is my conclusion that no discrimination has occurred, I find no reason for a remedy to be awarded. Travis is entitled to receive, and has received the same benefits as other

children enrolled in the New Milford Public Schools. To the extent that he has not been assigned to more mainstream classroom time, this decision was the result of a PPT meeting based on the IEP. Notwithstanding, it is my understanding that based on a recent PPT meeting on 09/13/02, there was a recommendation to place Travis in an out-of-district placement and to pay for individualized counseling with Dr. Schwartz, a doctor chosen and agreed to by you. In this regard, most of your requests have otherwise been addressed through the PPT process.

Since there has been no finding of discrimination, this grievance is dismissed.

I hope that this response addresses your concerns. Should you wish to appeal this decision, please consult board policy 5145.4 for the procedures and timeline. If you need a copy of this policy, please contact my office immediately.

Very truly yours,

Jean Malcolm