## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MATHEW AND CINDY MYSLOW, as            :
Parents and natural guardian of minor   :
Plaintiff TRAVIS MYSLOW                  :
                                        :
      **Plaintiffs,**                   :
                                        :
    v.                              :
                                        :      **Case No.:  3:03CV00496(MRK)**
NEW MILFORD SCHOOL DISTRICT,            :      **October 2003**
NEW MILFORD BOARD OF EDUCATION,         :      **JURY TRIAL DEMANDED**
RAYMOND AVERY,                          :
JEANANN PADDYFOTE,                      :
THOMAS MULVIHILL,                       :
PAULA KELLEHER,                         :
DENIS DOLAN,                            :
JEAN MALCOLM,                           :
JOSEPHINE ROSITANO,                     :
ADELE JOHNSON                           :
DEBORAH SHELLEY,                        :
ROBYN VIKLAND,                          :
L. ROBERT RUBIN, M.D.,                  :
ANNA ALSHANSKY, M.D.,                   :
MARTIN KREMINITZER, M.D.,               :
DIANA BADILLO-MARTINEZ                  :
TERRY NEU, Ph.D.                        :
                                        :
      **Defendants**                   :

## SECOND AMENDED COMPLAINT – CIVIL ACTION

**A.    PARTIES:**

    1.    Plaintiffs Mathew and Cindy Myslow (the "Myslows"), are the parents and

natural guardians of minor plaintiff, Travis Myslow ("Travis") and are citizens of Connecticut,

who currently and at all times relevant hereto, reside at 3 Halletts Road, New Milford,

Connecticut, 06776.

    2.    Defendant New Milford School District (the "School District") is a recipient of

federal funds, a state actor, and the municipal school district with an office located at 50 East

Street in New Milford, Connecticut, 06776.

3.      Defendant New Milford Board of Education (the "Board of Education") is a recipient of federal funds, a state actor, and the Board of Education for the School District with an address of 50 East Street in New Milford, Connecticut 06776.

4.      Defendant Raymond Avery, who at all times relevant hereto, was a citizen of Connecticut, a state actor, a Superintendent of New Milford Public Schools, and an agent of the School District and Board of Education, whose office was located at 50 East Street in New Milford, Connecticut. He is being sued in his individual and official capacities.

5.      Defendant JeanAnn Paddyfote is a citizen of Connecticut, a state actor, is currently acting Superintendent of the School District; was formerly and at times relevant hereto, Director of Pupil Personnel and Assistant Superintendent; and is an agent of the School District and Board of Education. She has an office located at 50 East Street in New Milford, Connecticut 06776 and is being sued in her individual and official capacities.

6.      Defendant Thomas Mulvihill is a citizen of Connecticut, a state actor, and is Assistant Superintendent of the School District. He is an agent of the School District and Board of Education, and has an office located at 50 East Street in New Milford, Connecticut, 06776. He is being sued in his individual and official capacities.

7.      Defendant Paula Kelleher is a citizen of Connecticut, a state actor, and is Principal of John Pettibone Elementary School. She is an agent of the School District and Board of Education, and has an office located at 2 Pickett District Road in New Milford, Connecticut. She is being sued in her individual and official capacities.

8.      Defendant Denis Dolan is a citizen of Connecticut, a state actor, and is Assistant Principal of John Pettibone Elementary School. He is an agent of the School District and Board of Education, and has an office located at 2 Pickett District Road in New Milford, Connecticut. He is being sued in his individual and official capacities.

2

9.    Defendant Josephine Rositano, is a citizen of Connecticut, a state actor and school psychologist for Pettibone Elementary School. She is an agent of the School District and Board of Education, and has an office located at 2 Pickett District Road in New Milford, Connecticut. She is being sued in her individual and official capacities.

10.    Defendant Jean Malcolm is a citizen of Connecticut, a state actor, and is Principal of the Schaghticoke Middle School. She is an agent of the School District and Board of Education, and has an office at 23 Hipp Road in New Milford, Connecticut, 06776. She is being sued in her individual and official capacities.

11.    Defendant Adele Johnson is a citizen of Connecticut, a state actor, Department Chair for Special Education at Schaghticoke Middle School, and an agent of the School District and Board of Education. She was formerly, and at all times relevant hereto, employed by the School District and the Board of Education as a Speech Pathologist. She has an office at 23 Hipp Road in New Milford, Connecticut, 06776 and is being sued in her individual and official capacities.

12.    Defendant Deborah Shelley is a citizen of Connecticut, a state actor, and a teacher at John Pettibone Elementary School. She is an agent of the School District and the Board of Education, and has an office at 2 Pickett District Road in New Milford, Connecticut. She is being sued in her individual and official capacities.

13.    Defendant Robyn Vikland is a citizen of Connecticut, at all times relevant hereto, was school nurse at the John Pettibone Elementary School and an agent of the School District and Board of Education. She is currently employed at Danbury Hospital located at 24 Hospital Avenue in Danbury, Connecticut, 06810. She is being sued in her individual and official capacities.

3

14.     Defendant Terry Neu, Ph.D., is a state actor and a citizen of Connecticut, and at all times relevant hereto, was the independent educational consultant hired by the School District and Board of Education, and acted as an agent of the School District and Board of Education. He is currently employed at Sacred Heart University located at 5151 Park Avenue, Fairfield, CT, 06432.

15.     Defendant L. Robert Rubin, M.D., is a citizen of Connecticut, is a duly licensed physician, and at all times relevant hereto, effectively acted in concert with the School District and Board of Education, and engaged in private practice with an office at 41 Germantown Road in Danbury, Connecticut 06810. He is being sued in his individual capacity.

16.     Defendant Anna Alshansky, M.D., is a citizen of Connecticut, and at all times relevant hereto, effectively acted as agent of and/or in concert with the School District and Board of Education. She is a duly licensed physician in private practice doing business at Associated Neurologists, P.C., with an office at 69 Sand Pit Road, Suite 300 in Danbury, Connecticut, 06810. She is being sued in her individual and official capacities. Alshansky acted in her official capacity during any and all times she acted as an agent of the School District and Board of Education.

17.     Defendant Martin Kreminitzer, M.D., is a citizen of Connecticut, and at all times relevant hereto, effectively acted as agent of and/or in concert with the School District and Board of Education. He is a duly licensed physician in private practice doing business at Associated Neurologists, P.C., with an office at 69 Sand Pit Road, Suite 300 in Danbury, Connecticut, 06810. He is being sued in his individual and official capacities. Kreminitzer acted in his official capacity during any and all times he acted as an agent of the School District and Board of Education.

4

18.     Diana Badillo-Martinez, PhD., is a citizen of Connecticut, and at all times relevant hereto, acted as agent of and/or in concert with the School District and Board of Education. She is a duly licensed neuropsychologist in private practice and is being sued in her individual and official capacities.

**B.     JURISDICTION AND VENUE:**

19.     The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§1331; IDEA, 20 U.S.C. §1400 et seq. as amended; 29 U.S.C. §§720, 794; §504 and 505 of the Rehabilitation Act of 1973 as amended; the Americans with Disabilities Act as amended, 42 U.S.C. §12101 et seq,; 42 U.S.C. §§1983, 1988; Title VI of the Civil Rights Act of 1964, as amended; Connecticut General Statutes §§52-190a, 7-465, 10-76a, 10-76b, 10-76d, and 10-76h et seq.; the Fourteenth Amendment to the United States Constitution; and Article Eight, §1 and Article One, §20, as amended, of the Connecticut Constitution.

20.     This Court has supplemental jurisdiction based upon 28 U.S.C. § 1367 over state law claims arising from the same transactions or occurrence.

21.     Venue is proper in this Court under 28 U.S.C. §1391 because all parties reside in this District.

22.     Notice has been provided to all municipal defendants pursuant to Conn. Gen. Stat. §7-465.

23.     A certificate of good faith pursuant to Conn. Gen. Stat. §52-190a is contained herein, indicating that the plaintiffs have made a reasonable inquiry that gave rise to a good faith belief that grounds exist for an action against each named defendant.

**C.     NATURE OF THE CASE:**

24.     This is a complaint in the nature of an original action for monetary, compensatory, punitive, and other appropriate relief for violations of minor plaintiff's rights,

5

under the federal and state constitutions and statutory and common law, to bodily integrity, a free and appropriate public education without discrimination due to his disabilities, and to attend public school without taking medication for attention deficit disorder.

25.    This is a complaint in the nature of an original action for monetary, compensatory, punitive, and other appropriate relief for negligence, lack of informed consent, medical malpractice and intentional, reckless and negligent infliction of emotional distress.

26.    This is a complaint in the nature of an original action for monetary, compensatory, punitive, and other appropriate relief for the defendants' failure to provide regular and/or special education and/or related aids and services designed to meet the educational needs of minor plaintiff as adequately as the needs of his non-disabled peers, and for the defendants' violations of the rights of the minor plaintiff, Travis Myslow, to be free from discrimination and disparate treatment based on his disabilities under the federal and state constitutions, statutory, and common law.

27.    This a complaint in the nature of an original action for monetary, compensatory, punitive and other appropriate relief for the defendants' failure to establish procedural safeguards to enable the Myslows to participate in an impartial hearing with representation by counsel and a review procedure as required under Section 504 of the Rehabilitation Act of 1973, federal and state constitutional, statutory and common law, and for the defendants' failure to provide prompt and equitable procedures to guarantee compliance with Section 504 and the Americans with Disabilities Act.

6

**D.     FACTS**

28.     The minor plaintiff, Travis Myslow, was born on July 17, 1990.

29.     In the fall 1997, Travis entered the School District in the second grade with a reading and writing level at about a 1.4 grade level equivalent.

30.     The School District's teachers in summer school noticed that Travis had problems writing and frequently wrote letters backwards.

31.     Travis had great difficulty reading and writing and became frustrated at being unable to read and write.

32.     In January 1998, Travis's teacher referred him for evaluation due to his inability to do grade level work, his difficulty focusing, his frustration and his obstinate behavior.

33.     Defendants Paddyfote, Mulvihill, Kelleher, Dolan, Malcolm, Rositano, Johnson, Shelley, Vikland, and Neu, at various times relevant hereto, were members of the Planning and Placement Team (hereinafter, "PPT Team") and/or Teams that made decisions regarding the evaluation, education, and/or medication of Travis including, but not limited to, recommending of certain physicians and evaluators to which the parents were directed to take Travis, developing lists of questions for the physicians and evaluators to answer during their examinations of Travis, developing and implementing behavioral plans for Travis, suggesting time frames for taking medication, developing and recommending other special education and related services for Travis, and/or implementing the Individual Education Program (hereinafter, "IEP") for Travis.

34.     Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education diagnosed Travis as having Attention Deficit Hyperactivity Disorder ("ADHD") and/or Attention Deficit Disorder ("ADD") and comorbid Oppositional Defiant and Dysthymic Disorders.

35.    In or about March/April 1998, defendant Rositano diagnosed Travis as being "a child with characteristics of an Attention Deficit/Hyperactivity Disorder (combined Type) and comorbid Oppositional Defiant and Dysthymic Disorders," and "encourage [the parents] to share the results of this evaluation with Travis' pediatrician." (See copy of Psychological Evaluation dated March 31, 1998 attached hereto and incorporated herein as Exhibit "A.")

36.    Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and/or other agents of the School District and Board of Education directed the Myslows to have Travis visit his pediatrician, defendant Dr. Rubin, to have the drug Ritalin prescribed.

37.    Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education completed checklists as part of a diagnostic process to determine whether Travis had ADD or ADHD.

38.    Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education directed the Myslows to complete checklists as part of a diagnostic process to determine whether Travis had ADD or ADHD.

39.    Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education directed the Myslows to bring the completed checklists and a report by defendant Rositano to defendant, Dr. Rubin, to have the drug Ritalin prescribed for Travis.

40.    Defendant Dr. Rubin, reviewed the completed checklists and/or report by defendant Rositano, and relying upon them without performing any physical examination, prescribed the drug, Ritalin, for Travis. (See medical records/notes of Dr. Rubin attached hereto and incorporated herein as Exhibit "B.")

8

41.    Dr. Rubin diagnosed Travis as suffering from ADD and/or ADHD and prescribed methylphenidate hydrochloride ("Ritalin") at a dosage of 10 mg (one pill) and 5 mg to be taken once in the morning and once at lunch-time.

42.    In or about February/March 1998, Travis began taking Ritalin and continued taking 15 mg/day for approximately three years. (See copy of School Health Summary, part VI, attached hereto and incorporated herein as Exhibit "C.")

43.    On June 19, 2001, Dr. Rubin confirmed by letter that Travis, "has been on Ritalin (methylphenidate) for the past three years", that "He originally started this medication at the suggestion of his school because of observed and perceived difficulties", and that "His parents feel there has been no real improvement since inception of the treatment."  (See copy of June 19, 2001 letter from Dr. Rubin attached hereto and incorporated herein as Exhibit "D.")

44.    Through the course of his treatment, Travis suffered adverse effects from the Ritalin and/or other medication prescribed by defendants, including, inter alia, physical illness, lethargy, gray-like in color, zombie-like in behavior, anxiousness, constipation, loss of appetite, inability to gain weight and fall asleep, numerous aches and pains, and feelings of withdrawal and isolation.

45.    In or about September 2000, Dr. Rubin halted prescription of Ritalin for Travis.

46.    After learning that Dr. Rubin halted prescription of Ritalin for Travis, Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education directed the Myslows to have Travis evaluated by Drs. Alshansky and Kreminitzer in order to obtain additional evaluation and medication.

47.    The PPT Team recommended Travis for evaluation specifically by Defendants Alshansky and Martinez.

9

48.     The PPT Team developed lists of questions directed to Defendants Alshansky and Martinez for them to answer as part of their evaluation of Travis.

49.     The Defendants School District and Board of Education were liable for payment of Defendants Alshansky and Martinez for their evaluations of Travis and did pay Martinez.

50.     Defendant Rositano recommended Travis for evaluation by Defendant Kreminitzer after medication prescribed by Alshansky resulted in severe negative side effects for Travis and after Alshansky failed to return telephone calls to the Plaintiffs in a timely manner.

51.     Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education directed the Myslows to bring the previously completed checklists to Drs. Alshansky and Kreminitzer.

52.     Defendant Dr. Rubin gave the Myslows an insurance referral slip for them to bring to Dr. Alshansky.

53.     Defendants School District, Board of Education, Rositano, Vikland and other agents of the School District and Board of Education repeatedly by telephone and in person urged the Myslows to make sure that Travis took his medication.

54.     Dr. Alshansky diagnosed Travis as having ADD and/or ADHD and prescribed "Adderal" and/or "Dexedrine".

55.     On October 27, 2000, Dr. Alshansky, by letter to defendant Dr. Rubin, confirmed that the diagnosis of ADD or ADHD was a direct result of the information contained in the completed checklists provided by Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education stating, "Behavior check lists filled out by the teachers were suggestive of inattentiveness, hyperactivity and impulsivity…On the basis of this evaluation, the patient was diagnosed with attention deficit hyperactivity…Given all the information provided to me, I agree

10

with the diagnosis of attention deficit hyperactivity disorder." (See copy of October 27, 2000 letter from Dr. Alshansky to Dr. Rubin attached hereto and incorporated herein as Exhibit "E.")

56.     On October 27, 2000, Dr. Alshansky, by letter to defendant Dr. Rubin, recommended "a trial of Adderall since Travis had unpleasant side effects on the Ritalin. We will proceed with 5 mg. of Adderall in the morning for one week with a further gradual increase to 7.5 mg. And 10 mg....I also suggested to be in close contact with the teachers for evaluation of the most effective dose for Travis."

57.     In December 2000, Dr. Alshansky and/or Dr. Kreminitzer added Adderal 5 mg/day and/or Dexedrine to the medications Travis was taking. (See copy of December 3, 2000 school medical authorization attached hereto and incorporated herein as Exhibit "F.")

58.     In or about March 2001, Defendants School District, Board of Education, Kelleher, Dolan, Rositano, Shelley, Vikland and other agents of the School District and Board of Education directed the Myslows to have Travis evaluated by Dr. Badillo-Martinez for another psychological evaluation in order to keep Travis medicated.

59.     In or about March 2001, Dr. Badillo-Martinez diagnosed Travis as having generalized anxiety disorder, oppositional defiant disorder and possible ADD or ADHD and recommended medication for Travis for impulse control and anxiety. (See copy of March 29, 2001 Psychological Evaluation Report attached hereto and incorporated herein as Exhibit "G.")

60.     In April 2001, after reviewing Dr. Badillo-Martinez' report, Dr. Kreminitzer prescribed the drug Concerta for Travis after concluding that the Ritalin, Adderal and Dexedrine made Travis hyperactive. (See copy of April 24, 2001 report by Dr. Kreminitzer attached hereto and incorporated herein as Exhibit "H.")

61.     Neither Travis nor the Myslows gave voluntary informed consent to the excessive and gross overmedication of Travis.

62.    Defendant Martinez was found by a Due Process Hearing Officer to have failed to answer the questions posed to her by the PPT Team regarding her evaluation of Travis.

63.    Defendant Martinez failed to properly diagnose Travis as having dyslexia and dysgraphia.

64.    At a Due Process Hearing, Defendant Martinez testified in favor of the position of Defendants School District, Board of Education and PPT Team to have Travis undergo a psychiatric evaluation for the purpose, inter alia, of the prescription of medication.

65.    Defendants Alshansky, Kreminitzer, and Martinez acted under color of state law as agents of Defendants School District, Board of Education, and PPT Team when they evaluated Travis and/or prescribed medication for him.

66.    Defendants Alshansky, Kreminitzer, and Martinez and Defendants PPT Team acted in such a manner as to lead the Plaintiffs to believe that they were acting under color of state law as agents of Defendants School District and Board of Education when they evaluated Travis and/or prescribed medication for him.

67.    The defendants School District and Board of Education and their agents, not including Alshansky and/or Kreminitzer, are and were the recipients of federal and state financial assistance.

68.    The defendants School District, Avery, Paddyfote, Mulvihill, Malcolm, Dolan, Johnson, and/or Neu, at certain times relevant hereto, approved or otherwise authorized the actions of the agents of the School District and Board of Education.

69.    The defendants Paddyfote, Mulvihill, Dolan, and Neu at certain times relevant hereto, acted as administrative designee at PPT meetings in which accommodations for Travis Myslow were developed and approved.

12

70.    The defendants Avery, Paddyfote, Mulvihill, Dolan, and Neu at all times relevant hereto, approved or otherwise authorized the actions of the planning and placement team.

71.    The defendant Neu, per order of the due process hearing officer, was authorized to, and at times did, make any final decisions in the event that the plaintiffs and the defendants School District and their agents could not agree.

72.    Travis Myslow, is a "handicapped person" as defined under Section 504 of the Rehabilitation Act of 1973 and otherwise qualifies for accommodation under the statute.

73.    Travis Myslow, qualifies as having a disability within the meaning of the Americans with Disabilities Act of 1990 ("ADA").

74.    The defendants School District, Board of Education, PPT Team, and their agents, not including Alshansky and/or Kreminitzer, are and were at all times relevant hereto obligated to provide a free and appropriate education to Travis, free from discrimination due to his disabilities.

75.    The defendants School District, Board of Education, PPT Team, and their agents identified Travis as having a specific learning disability.

76.    The defendants School District, the Board of Education, PPT Team, and their agents implemented one or more behavior plans for Travis.

77.    Travis Myslow, at all times relative hereto, did not have ADD or ADHD but had a physical and/or mental impairment of dyslexia, dysgraphia, and Situational Anxiety Disorder that substantially limited one or more major life activities, including inter alia, his ability to read, write, learn, and socialize with his peers.

78.    Travis Myslow, at all times relative hereto, was a qualified student with a disability who had a physical and/or mental impairment which substantially limited one or more of his major life activities, including, inter alia, his ability to read, write, communicate, and learn.

13

79.    Travis Myslow, at all times relative hereto, had a record of his impairment and is and was regarded as having such an impairment.

80.    Travis Myslow, at all times relative hereto, qualifies for special education and accommodations under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act of 1990, and other federal and state constitutional and statutory provisions.

81.    The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents excluded Travis and/or caused him to be excluded from the participation in, denied him and/or caused him to be denied the benefits of and/or subjected him and/or caused him to be subjected to discrimination in the programs and activities provided by the defendant School District, Board of Education and their agents.

82.    The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents excluded Travis and/or caused him to be excluded from the participation in, the benefits of, and/or subjected him and/or caused him to be subjected to discrimination in the programs and activities provided by the defendants in a severe, pervasive, and ongoing manner from 1997 and continuing through 2002.

83.    Defendants School District, Board of Education, Neu, Avery, Paddyfote, Mulvihill, Johnson, Kelleher, Dolan, Malcolm, PPT Team, and their agents failed to take sufficient corrective measures to prevent Travis from being excluded from participation in, from being denied the benefits of, and/or from being subjected to discrimination in the programs and activities provided by the defendants.

84.    Cindy and Matthew Myslow, repeatedly requested that the defendants School District, Board of Education, Avery, Paddyfote, Mulvihill, Johnson, PPT Team, and their agents to test Travis for dyslexia and to provide him with an appropriate education.

14

85.    The defendants School District, Board of Education, Dolan, Rositano, Kelleher, and their agents advised the Myslows that there was no test for dyslexia.

86.    Defendants School District, Board of Education, PPT Team and their agents failed to properly identify his specific learning disability and resulting frustration and anxiety, and instead implemented one or more behavior plans for Travis that included punishment of varying kinds.

87.    While he was enrolled in the fifth grade, defendants School District, the Board of Education, Shelley, Kelleher and their agents assigned Travis to a class that did not contain his peers and that met in a kindergarten hallway.

88.    Defendants School District, Board of Education, PPT Team and their agents repeatedly during the course of his enrollment assigned Travis to classes that did not contain his peers and that effectively denied him participation in and the benefits of the programs and activities provided to his peers.

89.    Defendants School District, Board of Education, PPT Team and their agents approved of, authorized and/or enabled teachers to read and write for Travis and to give him false and misleading "passing" grades.

90.    Defendants School District, Board of Education, PPT Team and their agents repeatedly promoted Travis to successive grades over the objections of the Myslows.

91.    The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents and their agents, by their actions or inactions, prevented Travis and/or caused him to be prevented from being able to participate in classroom work as non-disabled students are able to do so.

92.    The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, by their actions or inactions, prevented

Travis and/or caused him to be prevented from being able to participate in gym class and/or other activities as non-disabled students are able to do so.

93.     The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, by their actions or inactions humiliated Travis and/or caused him to be humiliated and/or made to "feel stupid", and otherwise caused him psychological and emotional harm because of his disabilities.

94.     The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, by their actions or inactions, humiliated Travis and/or caused him to be humiliated and/or made to "feel stupid", and otherwise caused him psychological and emotional harm by implementing inappropriate behavior plans for Travis because of his disabilities.

95.     The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, by their actions or inactions, failed to prevent other students from humiliating Travis, making him "feel stupid", and otherwise causing him psychological and emotional harm because of his disabilities.

96.     The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents discriminated against the plaintiff, Travis Myslow, and/or caused him to be discriminated against based on his disabilities in a continuing, severe, and pervasive manner causing his exclusion from participation in school and related activities and denying him the benefits of what the other non-disabled students have accessible to them.

97.     Particularly during the beginning of fourth grade, Travis began showing signs of severe anxiety, and his social abilities showed significant deterioration, but were normal for a boy his age prior to taking the Ritalin.

16

98.    Travis became even more physically ill on new medications, so they were discontinued.

99.    Travis had been misdiagnosed and does not have ADHD or ADD and has never had ADHD or ADD.

100.    Travis has been diagnosed as having, not ADHD or ADD, but the specific learning disability of dyslexia and dysgraphia.

101.    Defendants Neu, School District, Board of Education, Avery, Paddyfote, Mulvihill, Johnson, Malcolm, PPT Team, and their agents required Travis to undergo "diagnostic placement" at the Schaghticoke Middle School.

102.    Defendants Neu, School District, Board of Education, Avery, Paddyfote, Mulvihill, Johnson, Rositano, Dolan, Kelleher, Malcolm, PPT Team, and their agents required Travis to undergo a psychiatric evaluation.

103.    As a result of the psychiatric evaluation and other evaluations, it was determined that Travis did not have ADHD or ADD.

104.    Because of this misdiagnosis, after four years in the School District, while in the Fifth Grade, Travis was still reading at a Second Grade level or lower.

105.    The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents provided Travis and/or caused him to be provided with inappropriate education that denied him any meaningful benefit.

106.    The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents, by their actions and inactions, delayed provision of a free appropriate education to Travis Myslow.

107.    In October and November 2001, a Due Process Hearing was held to determine the appropriateness of the education provided to Travis.

17

108.     In November 2001, the Due Process Hearing Officer issued her decision concluding, inter alia, that the Myslows were prevailing parties; that the evaluation prepared by Dr. Martinez was inappropriate; that the defendants School District, Board of Education, and their agents provided Travis with instruction "in an increasingly restrictive environment that did not meet his needs and provided negligible educational benefit"; and implemented an individual education program ("IEP") that did "not meet [Travis's] individual needs and therefore is not calculated to provide educational benefit as required by Rowley". (See copy of Final Decision and Order attached hereto and incorporated herein as Exhibit "I.")

109.     The Due Process Hearing Officer ordered the defendants to hire an "independent educational consultant…to assist…in planning an appropriate IEP" for Travis and that the independent consultant "shall remain in place until both the Board and Parents agree that his or her services are no longer needed…but at least through the 2001-2002 school year."

110.     Travis Myslow, is still in need of continuing support from health and education professionals because of adverse reactions to the medications he was compelled to take because of the willful, negligent, and reckless actions of the defendants.

111.     In February 2002, defendants School District, Board of Education, Neu, Avery, Paddyfote, Mulvihill, Johnson, Malcolm, PPT Team, and their agents ordered the plaintiff, Travis Myslow, to attend Schaghticoke Middle School for an eight week "diagnostic placement" over the objections of the Myslows.

112.     Cindy and Matthew Myslow, repeatedly requested that the defendants School District, Board of Education, Neu, Avery, Paddyfote, Mulvihill, Johnson, Rositano, Dolan, Kelleher, Malcolm, PPT Team, and their agents investigate out of district placement as appropriate education for Travis.

113.    Defendants School District, Board of Education, Neu, Avery, Paddyfote, Mulvihill, Johnson, Rositano, Dolan, Kelleher, Malcolm, PPT Team, and their agents unduly delayed investigation of out of district placement for Travis.

114.    In April 2002, defendants School District, Board of Education, Neu, Avery, Paddyfote, Mulvihill, Johnson, Malcolm, PPT Team, and their agents ordered that Travis undergo a psychiatric evaluation.

115.    In August 2002 an independent evaluation by Dr. A. Herbert Schwartz concluded that Travis currently suffers from "Situational Anxiety Disorder, secondary to inability to read and write with repeated stressful experiences in the educational setting", including psychological distress, as a result of previous misdiagnosis. (See copy of August 22, 2002 Report from A. Herbert Schwartz, MD attached hereto and incorporated herein as Exhibit "J.")

116.    Dr. Schwartz determined that "Travis is a 12 year old boy who is allegedly going into 7th grade who reads far below grade level and writes almost illegibly who has been in the New Milford Schools since second grade with apparently little change in his ability in these areas who is now easily frustrated, oppositional, angered and anxious when attention is given to his inabilities...and the lack of progress...in both the nature and setting may have added to his anxiety and have created a Situational Anxiety Disorder akin to an Adjustment Reaction with both emotional and conduct components..."

117.    On September 12, 2002, after evaluating the plaintiff, neuropsychologist, Dr. Armin Thies, issued a supplemental report, which indicated that the individual education program developed by the defendants for the plaintiff "does not address the fundamental concern of Dr. Schwartz that the previous failure of the school system to provide appropriate instruction to remedy Travis' learning difficulties has resulted in a psychological condition such that Travis would be exposed to unnecessary and harmful psychological distress if he were to remain in the

19

school environment to which he is presently assigned." (See Reports of Armin Paul Thies, PhD dated August 10, 2001 and supplemental comments attached hereto and incorporated herein as Exhibit "K.")

118.    Plaintiff, Travis Myslow, currently takes no medication for ADHD or ADD and attends the Ben Bronz Academy.

119.    On numerous occasions, Cindy and Matthew Myslow, notified the defendant School District, Board of Education, Avery, Paddyfote, Malcolm, PPT Team, and their agents of the discrimination against Travis based on his disability.

120.    For some time since 1997, defendants School District, Board of Education, Avery, Paddyfote, Mulvihill, Dolan, Kelleher, Rositano, Johnson, PPT Team, and their agents failed to notify the plaintiffs, Cindy and Matthew Myslow, of their procedural due process rights under Section 504 of the Rehabilitation Act of.1973.

121.    In August 2001, the plaintiffs, Cindy and Matthew Myslow, notified defendant Avery of the discrimination against Travis based on his disability.

122.    In August 2001, and repeatedly thereafter, the plaintiffs, Cindy and Matthew Myslow, requested that defendant Avery investigate the discrimination against Travis and act to halt it.

123.    In March 2002, the plaintiffs, Cindy and Matthew Myslow, requested that defendant Avery schedule a meeting in accordance with Section 504 of the Rehabilitation Act of 1973 for the purpose of accommodating Travis to halt existing and prevent future discrimination against him based on his disabilities.

124.    In August 2002, the plaintiffs, Cindy and Matthew Myslow, filed a Grievance Complaint against the defendants School District, Board of Education, Avery, Paddyfote, Mulvihill, Malcolm and their agents to halt discrimination against Travis.

125.    The plaintiffs, Cindy and Matthew Myslow, repeatedly requested that the defendants School District, Board of Education, Avery, Paddyfote, Mulvihill, Dolan, Kelleher, Malcolm, Johnson, Rositano, PPT Team, and their agents halt discrimination against Travis.

126.    In September 2002, defendant, Jean Malcolm, Principal of Schaghticoke Middle School in New Milford issued a report dismissing the grievance complaint filed by the plaintiffs, Cindy and Matthew Myslow, based on her finding of no discrimination.  (See copy of September 19, 2002 letter from Jean Malcolm to the Myslows attached hereto and incorporated herein as Exhibit "L.")

127.    In September 2002, the plaintiffs, Cindy and Matthew Myslow, appealed defendant Malcolm's decision to the New Milford Superintendent of Schools, JeanAnn Paddyfote.

128.    In November 2002, the defendant Board of Education met "in an attempt to resolve the grievance" and "determined that it could not resolve the grievance to the satisfaction of [Travis]" and "Accordingly, by a unanimous vote, the Board denied the grievance."  (See copy of Grievance Denial attached hereto and incorporated herein as Exhibit "M.")

129.    On November 14, 2002, the plaintiffs, Cindy and Matthew Myslow, requested that the defendant Board of Education provide them with information as to the proper administrative procedures to appeal the Board's denial of the grievance.

### COUNT I – Negligence v. The School District Defendants–
### School District, Board of Education, Avery, Paddyfote, Mulvihill, Kelleher, Dolan, Rositano, Malcolm, Johnson, Shelley and Vickland ("School District Defendants")and Neu

130.    The plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

131.    Defendants School District, Board of Education, Avery, PPT Team, and their agents, each of them respectively, jointly and severally, by and through their separate and

21

respective agents, servants, workmen, representatives, physicians, nurses, staff, contractors, medical personnel, medical assistants and employees had a duty to Travis Myslow and did not exercise the degree of care or skill ordinarily exercised by those engaged in their practice, and were negligent and/or reckless in demanding that the Myslows have their minor child Travis Myslow medicated with Ritalin and/or other drugs, without making independent investigation of the hazards attendant hereto, and while making representations of their competency to supervise the treatment of minor child Travis Myslow.

132.    The Defendants School District, Board of Education, PPT Team, and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, nurses, staff, contractors, medical personnel, medical assistants and employees had a duty to Travis Myslow and were negligent in their duty to provide a free appropriate public education when they knew or should have known Travis Myslow suffered from dyslexia and dysgraphia.

133.    Defendant Neu did not properly investigate alternative placement in private school for Travis as requested by the Myslows, and improperly assisted the school in delaying the provision of a free appropriate public education and private placement for nearly one year.

134.    Defendant Neu should have immediately assisted in obtaining an Independent Educational Program for Travis, but Neu delayed and placed Travis in the system for an eight week "diagnostic" evaluation.

135.    As a direct and proximate result of the negligence of the defendants, Travis suffered pain, illness, discomfort, discrimination, and extreme emotional and academic damage.

**WHEREFORE**, the Myslows demand judgment against defendants in an amount in excess of $75,000.00 plus interest and costs of suit and brings this action to recover same.

**COUNT II – Medical Malpractice v. Rositano, Rubin, Alshansky, Kreminitzer, Martinez**

136.    The plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

137.    Defendants Rositano, Alshansky, Rubin, Kreminitzer, Martinez and each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, nurses, staff, contractors, medical personnel, medical assistants and employees had a duty to Travis Myslow, breached the standard of care or skill ordinarily exercised by those engaged in their practice for treating minors like Travis Myslow and were careless, negligent and reckless in:

    a.    failing to properly diagnose minor plaintiff's condition;

    b.    failing to properly and adequately evaluate minor plaintiff's condition;

    c.    failing to perform proper and adequate testing for minor plaintiff's condition;

    d.    failing to properly and adequately treat minor plaintiff's condition;

    e.    failing to properly and adequately care for minor plaintiff's condition;

    f.    failing to properly monitor plaintiff's medication and the dosages and amounts thereof for Travis' condition;

    g.    failing to perform proper and careful medical practices and procedures upon minor plaintiff in accordance with the standards prevailing in the community in which defendants practiced at the time;

    h.    failing to properly care for minor plaintiff's condition under all of the circumstances;

    i.    caring for minor plaintiff in a negligent and improper manner;

j.      failing to properly monitor minor plaintiff's condition during the course of treatment performed by defendants;

k.      failing to inform the plaintiffs, Cindy and Matthew Myslow, regarding the risks of treating minor plaintiff with Ritalin so as to afford the plaintiffs, Cindy and Matthew Myslow, with the opportunity to make an informed decision on whether to prescribe the aforementioned medications;

l.      failing to inform the plaintiffs, Cindy and Matthew Myslow, of the fact that the use of stimulant medication in children has been known to cause severe physical and physiological impairments, including the injury occurred upon minor plaintiff, Travis Myslow;

m.      failing to properly and timely observe, discover, diagnose, treat and care for minor plaintiff's condition;

n.      failing to conform to the standard of care and treatment prevailing in the medical community in which defendants practiced at the time in administering medical care and treatment to minor plaintiff; and/or

o.      failing to exercise reasonable care under all of the circumstances, in accordance with the accepted practices and procedures in the medical community in which defendants practiced.

138.    As a direct and proximate result of the carelessness, negligence, gross negligence and recklessness of defendants, as aforesaid, and each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, nurses, staff, contractors, medical personnel and employees, minor plaintiff, Travis Myslow, was caused to sustain serious, permanent and disabling personal and psychological injuries the full extent of which have yet to be determined; he has in the past been and may in the

future continue to require medical care and treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, mental anguish and emotional distress.

**WHEREFORE**, the Myslows demand judgment against defendants in an amount in excess of $75,000.00, plus interest and costs of suit and brings this action to recover same.

## COUNT III – Lack of Informed Consent v.
## Rubin, Alshansky and Kreminitzer.

139.   The plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

140.   Defendants Rubin, Alshansky and Kreminitzer and each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, nurses, staff, contractors, medical personnel, medical assistants and employees recklessly and/or negligently medicated and/or caused Travis Myslow to be medicated without the informed consent of Travis or his parents.

141.   The lack of informed consent includes, but is not limited to:

a.    failing to disclose to the Myslows the theoretical aspects of an ADD and/or ADHD diagnosis;

b.    failing to inform the Myslows that there is no scientific confirmation to ADD and/or ADHD as a "disease" that requires medication;

c.    failing to inform the Myslows of the subjective nature of an ADD and/or ADHD diagnosis;

d.    failing to inform the Myslows what reasonable alternatives were available and what the probable outcome would be in the absence of any treatment;

e.    failing to provide any kind of adequate behavioral treatment while medicating Travis;

25

      f.     recommending to the Myslows that medical treatment was in Travis' best therapeutic interest;

      g.     failing to comprehend Travis' regression as a product of his medication as opposed to an indication for stronger doses; and/or

      h.     failing to offer a choice on whether to drug Travis without fear of reprisal.

142.   As a direct and proximate result of the negligence of defendants, Travis Myslow suffered pain, discomfort, and extreme emotional damage.

**WHEREFORE,** the Myslows demand judgment against defendants in an amount in excess of $75,000.00, plus interest and costs of suit and brings this action to recover same.

### COUNT IV – Failure to Provide a Free Appropriate Public Education Without Discrimination, inter alia, under §504 of the Rehabilitation Act of 1973

### v. The School District Defendants, Alshansky, Kreminitzer, Martinez and Neu

143.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

144.   Plaintiffs repeatedly wrote and asked Avery for an investigation but their pleas were ignored.

145.   Plaintiffs repeatedly requested Paddyfote and Mulvihill to end the discrimination against their son but their pleas were ignored and Paddyfote and Mulvihill continued to approve of the discrimination.

146.   After great delay, Malcolm and the Board of Education improperly found that there was no discrimination.

147.   The Defendants School District, Board of Education, PPT Team, Rubin, Alshansky, Kreminitzer, and Martinez and their agents assisted in perpetuating the discrimination.

26

148. The Defendants School District, Board of Education, PPT Team, Avery, Neu, Alshansky, Kreminitzer, and Martinez and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

a. denied and/or caused Travis Myslow to be denied and/or excluded and/or caused him to be excluded from benefits and/or services solely because of his handicap;

b. denied and/or caused Travis Myslow to be denied and/or excluded and/or caused him to be excluded from the benefits of a program or activity of a public entity receiving federal funds;

c. discriminated and/or caused discrimination against Travis Myslow solely because of his handicap;

d. did not offer to Travis more suitable accommodations even though they were available;

e. did not establish nondiscriminatory evaluation and placement procedures to avoid the inappropriate education that resulted from the misclassification or misplacement of Travis;

f. did not provide regular or special education and related aids and services designed to meet his individual needs as adequately as the needs of non-disabled persons;

g. did not ensure that he was educated with nondisabled persons to the maximum extent appropriate;

h. did not afford him with an equal opportunity to participate in nonacademic and extracurricular services and activities.

27

  i.  did not establish adequate policies and/or procedures for Travis under §504 of the Rehabilitation Act of 1973 for identification, evaluation, placement, accommodation, due process complaints, impartial hearings, and appeals;

  j.  did not establish adequate policies and/or procedures for prompt resolution of violations of §504 of the Rehabilitation Act of 1973;

  k.  did not have prompt and equitable procedures in place, to guarantee compliance with §504 of the Rehabilitation Act of 1973;

  l.  did not have a properly designated Section 504 Coordinator;

  m.  did not provide prompt notice to the Myslows of their Section 504 rights;

  n.  refused to investigate complaints of severe pervasive discrimination against Travis; and/or

  o.  failed to provide and/or caused the failure to provide an appropriate public education to Travis free from discrimination.

  149. As a direct and proximate result of the actions and/or inactions of the defendants School District, Board of Education, PPT Team, Avery, Neu, Alshansky, Kreminitzer, and Martinez and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees, Travis sustained the following injuries:

  a.  Serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future