continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

      b.    Serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

    **WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest, costs of suit, and attorney's fees and bring this action to recover same.

## COUNT V – Violation of the Americans with Disabilities Act v. The School District Defendants and Alshansky, Kreminitzer, Martinez and Neu

    150.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

    151.    The defendants School District, Board of Education, PPT Team, Alshansky, Kreminitzer, Martinez, Neu and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

      a.    discriminated and/or caused discrimination against Travis on the basis of his disability;

      b.    excluded and/or caused Travis to be excluded from participation in and/or denied and/or caused him to be denied the benefits of services, programs, or activities;

      c.    caused Travis to suffer disparate treatment and impact; and/or

       d.     failed to make reasonable accommodations for Travis.

152.    As a direct and proximate result of the actions or inactions of the School District Defendants and their agents, including Kreminitzer, Alshansky, Martinez and Neu and each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

       a.     Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

       b.     The plaintiffs, Cindy and Matthew Myslow, were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

**COUNT VI – Violation of Constitutional Rights under 42 U.S.C. §1983 v.**
**The School District Defendants, Alshansky, Kreminitzer, Martinez and Neu**

153.  Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

154.  The School District defendants and Neu recommended and directed the Myslows to take Travis to Alshansky and/or Kreminitzer and/or Martinez.

155.  The School District defendants and Neu were liable for payment to Alshansky and Kreminitzer and Martinez.

156.  The School District defendants and Neu developed a series of questions for Alshanksy and Kreminitzer and Martinez to answer.

157.  In answering those questions posed by the School District defendants and Neu and misdiagnosing Travis Myslow's condition as ADD and/or ADHD, Drs. Alshansky and Kreminitzer and Martinez, effectively contributed to the School District defendants' discrimination of Travis Myslow.

158.  The School District defendants and Neu relied upon the misdiagnoses of Alshanksy and Kreminitzer and Martinez in order to perpetuate the discrimination against Travis Myslow and copntinue to fail to provide Travis Myslow with an appropriate education.

159.  The School District defendants, at all times relevant hereto, by virtue of their supervisory authority, approved of the actions of the PPT Team.

160.  The actions of the School District Defendants and Neu, each of them respectively, jointly and severally, by and through their separate and respective agents, including Kreminitzer andAlshansky, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees, taken under color of state law, resulted in the deprivation of the rights of Travis Myslow to personal liberty and bodily integrity, a free appropriate public education without discrimination, to equal protection,

31

to substantive and procedural due process, and to be free from discrimination on the basis of his

disabilities under the 14th Amendment to the United States Constitution and under article eighth,

§1 and article first, §20 as amended of the Connecticut Constitution.

161.   As a direct and proximate result of the actions or inactions of the defendants

School District, Board of Education, PPT Team, Alshansky, Kreminitzer, and Martinez and their

agents, each of them respectively, jointly and severally, by and through their separate and

respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists,

nurses, staff, contractors, medical personnel, medical assistants and employees:

a.    Travis Myslow was caused to sustain serious, severe, permanent and

disabling educational, physical, psychological, emotional, behavioral, and social injuries

the full extent of which have yet to be determined; he has in the past and may in the

future continue to require medical, educational, emotional, behavioral, psychological, and

psychiatric care, custodial care, maintenance and medical treatment; he has in the past

suffered and may in the future continue to require medical, educational, emotional,

behavioral, psychological, and psychiatric care, custodial care, maintenance and medical

treatment; he has in the past suffered and may in the future continue to suffer agonizing

aches, pains, psychological anguish, anxiety, educational, social and emotional distress;

and/or

b.    The Myslows were caused to sustain serious, permanent and disabling

psychological, emotional, and financial injuries the full extent of which have yet to be

determined; they in the past and may in the future continue to suffer psychological

anguish, anxiety, emotional, and financial distress.

32

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

### COUNT VII - Intentional Infliction of Emotional Distress v. The School District Defendants and Neu

162.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

163.    The School District Defendants and Neu, and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

      a.    knew or should have known that their actions and/or inactions would inflict emotional distress on Travis by not providing appropriate education without discrimination, by unduly delaying provision of appropriate education, and by discriminating against him due to his disabilities; and/or

      b.    acted with conduct that was extreme and outrageous conduct in failing to provide Travis with an appropriate education without discrimination.

164.    As a direct and proximate result of the actions or inactions of the aforementioned defendants and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

      a.    Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries

33

the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

      b.    The plaintiffs, Cindy and Matthew Myslow, were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, punitive damages, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

### COUNT VII – Negligent/Reckless Infliction of Emotional Distress v. The School District Defendants and Neu

     165.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

     166.    The School District Defendants and Neu, and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

     a.    negligently inflicted emotional distress on Travis by not providing appropriate evaluation, identification of his disability, by not providing appropriate education without discrimination, by unduly delaying provision of appropriate education, and by discriminating against him due to his disabilities;

     b.    recklessly inflicted emotional distress on Travis by not providing appropriate evaluation, identification of his disability, by not providing appropriate education without discrimination, by unduly delaying provision of appropriate education, and by discriminating against him due to his disabilities; and/or

     c.    knew or should have known that their actions and/or inactions would inflict emotional distress on Travis.

167.    As a direct and proximate result of the actions or inactions of the aforementioned defendants and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

     a.    Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

35

b.    The plaintiffs, Cindy and Matthew Myslow, were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

## COUNT IX – Violation of Statutory Provisions

168.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

169.    The Defendants School District, Board of Education, PPT Team, Avery, Alshansky, Kreminitzer, and Martinez and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees violated and/or caused to be violated provisions of:

a.    §504 of the Rehabilitation Act of 1973, 34 C.F.R. Parts §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to provide a free appropriate public education without discrimination to Travis Myslow;

b.    §504 of the Rehabilitation Act of 1973, 34 C.F.R. §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to establish and implement an adequate and appropriate system of procedural safeguards including an impartial hearing and a review procedure;

36

c.      §504 of the Rehabilitation Act of 1973, 34 C.F.R. §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to provide to the plaintiffs their appropriate substantive and procedural due process rights while seeking a free appropriate public education without discrimination for Travis Myslow; and/or

d.      §504 of the Rehabilitation Act of 1973, 34 C.F.R. §§104.4, 104.32, 104.33, 104.34, 104.35, 104.36, 104.37, Connecticut General Statutes §§10-76b-4 by failing to provide reasonable accommodation to Travis Myslow for his physical and mental disabilities.

170.    As a direct and proximate result of the actions or inactions of the defendants School District, Board of Education, PPT Team, Avery, Alshansky, Kreminitzer, and Martinez and their agents, each of them respectively, jointly and severally, by and through their separate and respective agents, servants, workmen, representatives, physicians, psychologists, psychiatrists, nurses, staff, contractors, medical personnel, medical assistants and employees:

a.      Travis Myslow was caused to sustain serious, severe, permanent and disabling educational, physical, psychological, emotional, behavioral, and social injuries the full extent of which have yet to be determined; he has in the past and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to require medical, educational, emotional, behavioral, psychological, and psychiatric care, custodial care, maintenance and medical treatment; he has in the past suffered and may in the future continue to suffer agonizing aches, pains, psychological anguish, anxiety, educational, social and emotional distress; and/or

37

b.   The plaintiffs, Cindy and Matthew Myslow, were caused to sustain serious, permanent and disabling psychological, emotional, and financial injuries the full extent of which have yet to be determined; they in the past and may in the future continue to suffer psychological anguish, anxiety, emotional, and financial distress.

**WHEREFORE,** the Plaintiffs demand judgment against defendants in an amount in excess of $75,000.00, plus attorneys' fees, interest and costs of suit and bring this action to recover same.

By: _Deborah G. Stevenson_

**Deborah G. Stevenson, CT 22946**
**226 East Flag Swamp Road**
**Southbury, CT  06488**
**Tel.:  (860) 354-3590, Fax: (860) 354-9360**

**Pro Hac Vice:**

By: _____

Alan C. Milstein,
**Derek T. Braslow,**
**4300 Haddonfield Road, Suite 311**
**Pennsauken, New Jersey 08109**
**Tel.: (856) 662-0700, Fax: (856) 665-0322**
**Attorneys for plaintiffs**

## CERTIFICATE OF REASONABLE INQUIRY AND GOOD FAITH

I hereby certify that I have made a reasonable inquiry, as permitted by the circumstances, to determine whether there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant.  This inquiry has given rise to a good faith belief on my part that grounds exist for an action against each named defendant.

By: _Deborah G. Stevenson_

**Deborah G. Stevenson, CT 22946**

38

# EXHIBIT "A"

## Department of Pupil Personnel and Special Services

# PSYCHOLOGICAL EVALUATION

**Name:** Travis Myslow
**D.O.B.:** 7-17-90
**Parents:** Cindy and Matthew Myslow
**Address:** 3 Hallets Rd
**Telephone:** (860) 350-6569
**School:** John Pettibone Elementary
**Grade:** 2
**C.A.:** 7-7

**Dates of Testing:** March 35, 1998
**Examiner:** Josephine Rositano, NCSP

**Reason for Referral:** Travis was referred for a psychological evaluation by the Planning and Placement Team as part of a multidisciplinary assessment of his current educational functioning. Results from this evaluation will aid the team in determining his eligibility for Special Education Services. Travis is functioning approximately two years below grade level in all academic areas. He entered New Milford School in October 1997 from Sherman School. He received occupational therapy service for a short time.

**Background Information:** The following information was compiled from Mrs. Myslow's completion of the Developmental Case History questionnaire, review of Travis' school records and interview of his teachers. Travis resides with his natural mother, adopted father and two older siblings. Travis is the product of a full-term uncomplicated pregnancy. Birth was unremarkable and he experienced no health or feeding problems during early infancy. Developmental milestones were reached within normal limits. Travis is being treated by Dr. Draper for a lazy eye. He has difficulty falling asleep at night.

Mrs. Myslow describes her son as being a kindhearted child who is easily frustrated and obstinate. Travis enjoys outdoor activities such as fishing.

Mrs. Church, the classroom teacher, describes Travis as an affectionate boy who is extremely activity and inattentive. She has implemented many classroom modifications to reduce his frustration level and avoid obstinate behaviors.

**Behavioral Observations:** Travis presented as a friendly boy with a good sense of humor. Throughout the testing his activity level was high and his attention span was short. Travis continuously moved in his seat. He often touched the boxes of the testing material and the testing manual. He was impulsive in his approach to task. He did not wait until the directions were given before starting a task. During tasks, he rushed through too quickly without giving time to efficiently problem solve the answer. His attention to task was also redirected many times. Testing was concluded in short intervals of time.

## TESTS ADMINISTERED AND RESULTS:

**Instrument:** *Wechsler Intelligence Scale for Children-Third Edition  (WISC-III)*

| Verbal Subtests | S.S. | Performance Subtests | S.S. |
|---|---|---|---|
| Information | 11 | Picture Completion | 5   (w) |
| Similarities | 15   (s) | Coding | 12   (s) |
| Arithmetic | 12 | Picture Arrangement | 7 |
| Vocabulary | 12 | Block Design | 9 |
| Comprehension | 13 | Object Assembly | 6 |
| (Digit Span) | (12) | (Symbol Search) | (8) |

| | |
|---|---|
| Verbal IQ Score | |
| Performance IQ Score | 86 |
| Full Scale IQ Score | 108 |
| | |
| Verbal Comprehension Index | 116 |
| Perceptual Organization Index | 75 |
| Freedom From Distractibility Index | 112 |
| Processing Speed Index | 101 |

**Discussion:** The WISC-III is a standardized test of general intellectual ability. It employs two scales to assess a child's intelligence. The Verbal scale is made up of subtests in which the child must formulate verbal responses to the examiner's questions. The skills taped by this scale are the kind that stand out in traditional academic settings. The Performance scale is made up of subtests in which the child must formulate a visual-motor response to task demands. The Performance subtests emphasize *doing* something rather than saying something.

The average subtest score is 10 and the standard deviation is 3, which defines the average range between 7 and 13. The average IQ and Index score is 100 and the standard deviation is 15, which defines the average range between 85 and 115. Relative strengths and weaknesses are indicated by an (s) or (w) next to the score.

Travis' Full Scale IQ score indicates current functioning in the Average range of general intellectual endowment. The 29 point difference between his Verbal and Performance IQ scores does reach statistical significance, indicating Travis' competence in answering questions verbally. This discrepancy also indicates that he has poor perceptual organizational skills and inflexible thinking skills. Travis approaches problems in a rigid and concrete manner. The individual subtests within each scale are discussed below.

**Verbal Subtests:**
The Information subtest taps a child's fund of factual knowledge that is not specific to any one field. Among the factors that influence a child's performance on this subtest are the child's long-term memory skills, which influence a child's ability to store and retrieve information, the child's exposure to information, and the child's attention to and/or interest in information. Travis obtained an average score on this subtest.

The Similarities subtest taps a child's ability to reason with verbal concepts. Children are asked to say how two things are alike. Responses that highlight categorical or conceptual similarities are worth more points than responses that highlight concrete or functional similarities. Travis obtained a superior score on this subtest.

The Arithmetic subtest taps a child's ability to compute arithmetic problems without the use of paper and pencil. Among the factors that influence a child's performance on this subtest are short-term auditory memory, freedom from distractibility, level of anxiety, and mathematical aptitude. Travis obtained an average score on this subtest.

The Vocabulary subtest taps a child's breadth and depth of word knowledge. Among the factors that influence a child's performance on this subtest are exposure to words through reading and oral language, understanding of words, and the child's ability to organize and verbally express that understanding as a coherent definition. Travis obtained an average score on this subtest.

The Comprehension subtest taps a child's common sense understanding, reasoning, and judgment about social predicaments and every day activities. Among the factors that influence a child's performance on this subtest are cultural opportunities in the child's home, social awareness, and understanding of cause-effect relationships. Travis obtained a high average score on this subtest.

The Digit Span subtest taps a child's short-term auditory memory. Among the factors that influence a child's performance on this subtest are attention span, freedom from distractibility, and level of anxiety. Travis obtained an average score on this subtest.

**Performance Subtests:**

The Picture Completion subtest taps a child's awareness of essential visual details. Among the factors that influence a child's performance on this subtest is the ability to organize visual perceptions without essential motor activity. Travis obtained a borderline score on this subtest. This was his area of weakness.

The Coding subtest taps a child's psycho-motor speed and accuracy. Among the factors that influence a child's performance on this test are level of anxiety, freedom from distractibility, and short-term visual memory. Travis obtained an average score on this subtest. This was his area of strength.

The Picture Arrangement subtest taps a child's ability to integrate discrete visual images into a logical story sequence. Among the factors that influence a child's performance on this subtest are awareness of essential visual details, social judgment, and understanding of cause-effect relationships as depicted by representational drawings. Travis obtained a low average score on this subte.

The Block Design subtest taps a child's ability to geometrically analyze and reconstruct abstract visual designs. Among the factors that influence a child's performance on this subtest are the ability to organize visual perceptions, apply logic and reasoning to problems involving spatial relationships (i.e. spatial concept formation), and the application of visual-motor integration in constructional tasks. Travis obtained a average score on this subtest.

The Object Assembly subtest taps a child's ability to integrate disparate visual elements into a meaningful whole. Among the factors that influence a child's performance on this subtest are the ability to anticipate the relationship among parts, generate and evaluate alternative solutions, attend to visual details, plan, organize, and monitor ones problem solving activities. Travis obtained a borderline score on this subtest. Travis' difficulty on this subtest appeared to be related to executive functioning. His problem solving style was random, illogical, and impulsive.

The Symbol Search subtest taps a child's perceptual speed and accuracy. Among the factors that influence a child's performance on this subtest are level of anxiety, freedom from distractibility, and speed of visual discrimination. Travis obtained a low average score on this subtest.

**Instrument:** *Bender Visual-Motor Gestalt Test*
   **Visual-Motor Integration Skills: A.E.  5-6 to 5-8**
   **Visual-Motor Memory Skills: poor (below norm)**
**Discussion:** Travis placed the nine geometric design in a confused order on paper. He also reproduced several of the designs on top of each other. He showed poor organizational skills and impulsivity. Travis' visual-motor skills are significantly delayed, approximately two years below his chronological age. Visual-motor memory skills are also significantly delayed

## SOCIAL EMOTIONAL ASSESSMENT:

**Instrument:** *Child Symptom Inventories  (CSI)*
   *Parent Checklist*
   *Teacher Checklist*
**Discussion:** The *CSI* are designed to be a screening instrument for the behavioral, affective and cognitive symptoms of over a dozen childhood psychiatric disorders. Items in the *CSI* are based on the diagnostic criteria specified in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (*DSM*).

The Parent Checklist results indicate that Travis meets the criteria for the following disorder:
   Attention Deficit/Hyperactivity Disorder (NOS)
The Teacher Checklist results indicate that Travis meets the criteria for the following disorders:
   Attention Deficit/Hyperactivity Disorder (Combined Type)
   Oppositional Defiant Disorder
   Dysthymic Disorder

Within the classroom, Travis shows significant levels of impulsive and hyperactive behaviors. He also loses his temper quickly, argues with adults and refuses what the teacher tells him to do. Travis is irritable for most of the day. He has little confidence and feels that things never work out right.

## Attention Deficit Disorders Evaluation Scale - Home Version Rating Form

| Scale | S.S. | Normal | Moderate | Significant |
|-------|------|--------|----------|-------------|
| Inattentive | 9 | X | | |
| Hyperactive-Impulsive | 7 | X | | |

**Discussion:** The A.D.D. Evaluation Scales are standardized rating scales that utilize the observations of parents or teachers to rate the child along two specific dimensions of behavior. The results of the Home Version Rating Form indicate no significant problems with Travis' inattentive and hyperactive-impulsive behaviors. However his mother reports that Travis has difficulty concentrating needs oral directions frequently repeated and constant reminders.

## Attention Deficit Disorders Evaluation Scale - School Version Rating Form

| Scale | S.S. | Normal | Moderate | Significant |
|-------|------|--------|----------|-------------|
| Inattentive | 1 | | | X |
| Hyperactive-Impulsive | 6 | | X | |

**Discussion:** The results of the School Version Rating Form indicate problems with Travis' inattentive and hyperactive-impulsive behaviors. Within the classroom, he is easily distracted by other activities, other students and the teacher. He needs oral directions frequently repeated and constant reminders. He is disorganized and loses material for class. He fails to perform assignments independently and rushes through assignments with no regard for accuracy and quality of work. During instruction, Travis often interrupts the teacher by blurting out an answer or a question. He is easily angered and argues with the teacher and students. Travis is restless in class. He leaves his seat without permission, hops, skips and jumps when moving from one place to another instead of walking and twirls pencils and plays with things in his desk.

## ADD-H Comprehensive Parent's Rating Scale (ACTeRS)

| Scale | %ile | Normal | Moderate | Significant |
|-------|------|--------|----------|-------------|
| Attention | 60 | X | | |
| Hyperactivity | 23 | | | |
| Social Skills | 42 | X | | X |
| Oppositional | 23 | | | |
| Early Childhood | 50 | | | X |

**Discussion:** The ACTeRS Parent Rating Scale is the companion to the ACTeRS Teacher Rating Scale and utilizes the parents observations of the child. The resulting scores indicate a child exhibiting significant behaviors in the Hyperactivity and Oppositional Scales. Within the home setting, Travis is fidgety, restless and is frustrated easily. He argues when told what to do and challenges authority.

## ADD-H Comprehensive Teacher's Rating Scale (ACTeRS)

| Scale | %ile | Normal | Moderate | Significant |
|-------|------|--------|----------|-------------|
| Attention | <1 | | | X |
| Hyperactivity | 1 | | | X |
| Social Skills | 12 | | | X |
| Oppositional | 19 | | | X |

**Discussion:** The ACTeRS Teacher Rating Scale is a standardized behavior rating scale which utilizes the observations of teachers to rate their student along a broad spectrum of behaviors. Within the classroom setting, Travis does not function well. He is unable to work independently, persist with task for reasonable amount of time and complete assigned task satisfactorily with little additional assistance. He is extremely overactive and 'on the go". He squirms in his seat and his hands are always busy. His impulsive behaviors affect his social interactions. He does not behave positively with his peers. Travis is noncompliant. He makes malicious fun of people and picks on others. He defies the teacher.

**Projective Instruments:**
*Sentence Completion Drawing*
*Interview*

**Discussion:** Travis struggles with his impulsive behaviors. He needs outer limits and controls to help him regulate his behavior. He generally feels rejected by his peers and view himself as a "clown". He is also frustrated by his academic demands and is happiest in non-academic activities like recess or art. A poor self-esteem is evident. He feels that he is always in "trouble".

## SUMMARY AND RECOMMENDATIONS

Travis is a 7 year, 7 month old second grade student who was referred for an evaluation by the Planning and Placement Team. The results of this evaluation find Travis to be functioning in the Average to High Average range of general intelligence. His overall verbal skills are better development that his perceptual-motor skills. Travis shows poor problem solving skills and approaches situations in a rigid, concrete manner. His strengths are in his verbal abstract reasoning skills and timed paper and pencil tasks. His weaknesses are in his visual alterness to his environment and visual-motor integration skills.

The results also indicate a child with characteristics of an Attention Deficit/Hyperactivity Disorder (Combined Type) and comorbid Oppositional Defiant and Dysthymic Disorders.

The parents are encouraged to share the results of the this evaluation with Travis' pediatrician.

Travis would respond best to a predictable and flexible school environment. Suggestions for the classroom:

- Seat Travis away from distractions and close to where the teacher is giving the lesson
- Cue him to stay on task i.e. using a private signal
- Break long assignments into smaller parts
- Give assignments one at a time
- Set up behavior contract
- Ignore calling out without raising hand
- Praise Travis when his hand is raised
- Look for signs of frustrations and provide encouragement or reduced work load

Josephine Rositano, School Psychologist

EJ.M. : 4/9/98.

## SUMMARY OF TRAVIS MYSLOW'S
## LEVEL OF PERFORMANCE
## 1998-2001

|  | '98 (grade 2) | '98-99 (grade 3) | '99-00 (grade 4) | '00-01 (grade 5) |
|---|---|---|---|---|
| Math | $1.9^1$ | $3.6^2$ | $5.3^2$ | $4.0^1$ |
| Reading Comp. | $1.4^1$ | $2.5^2$ | $4.2^3$ (accuracy 2.3) | $2.2^1$ Broad Reading $2.1^1$ Basic Reading $3.5^3$ (accuracy >1.9) |
| Wr.Exp. | $1.4^1$ |  |  |  |
| Spelling |  | $2.0^2$ | $2.6^2$ | $1.8^1$ Broad Written Exp. |

[1] Woodcock Johnson – Revised
[2] Kaufman Test of Educational Achievement
[3] Gray Oral Reading Test

# EXHIBIT "B"

# PEDIATRIC ASSOCIATES OF WESTERN CONNECTICUT, L.L.C.
41 Germantown Road, Danbury, CT 06810
(203) 744-1680

Name Myslow, Travis          Address 1 Cedar Lane  3 Hallets Rd.
D.O.B. 7-17-90     Sex (Male) Female        Sherman, Ct 06784   New Milford,    Phone 860-350-6569
Mother Cindy       Father Matthew                                CT
                                                                06776

Major Diagnosis/Chronic Medications or Treatments/Dates

| ALLERGIES | DATE | REACTION |
|---|---|---|
| (None) | 10-31-97 | — |

L. Robert Rubin, M.D., F.A.A.P.
John B. Ertl, M.D., F.A.A.P.
Leon A. Baczeski, Jr., M.D., F.A.A.P.
David B. Gropper, M.D., F.A.A.P.
Bruce W. Cohen, M.D., F.A.A.P.
Maureen R. Burke, M.D., F.A.A.P.
Rachel R. Rothschild, M.D.
Kevin F. Ferguson, M.D.
Jamie L. Alon, M.D.
Kathleen M. Hogan, P.A.-C.

| Date | Water Source | Fluoride Given |
|---|---|---|
|  | city / well | yes / no |
|  | city / well | yes / no |

## MEDICAL HISTORY

Full Term  yes / no        NSVD / C-SECTION
Breast / Bottle            Neonatal Problems        Birth wt.        D/C wt.
Medical Hx/Hospitalizations
Surgical/Trauma Hx
Social/Behavioral History
Other Hx

## IMMUNIZATIONS/LABS

| DTP/Hib | DTaP | Td | OPV/IPV | HBV | Varivax | MMR | Hib |
|---|---|---|---|---|---|---|---|
| 9-18-90 |  |  | 9-18-90 | 10-1-99 | 10-31-97 | 1-31-92 | 5-15-91 |
| 12-10-90 |  |  | 12-10-90 | 12-10-99 |  | 5-8-02 | 1-31-92 |
| 6-27-95 |  |  | 9-9-92 | 5-12-00 |  |  |  |
| 9-9-92 |  |  | 6-27-95 |  |  |  |  |
| Monovacc | PPD | Pb | Hgb | Influenza | HAV |  |  |
| 6-27-95 | 3-19-02 |  | 10.6 gm 3-19-02 |  |  |  |  |
| 10-31-97 |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Myslow, Tracy    7 3/12 yrs

10-31-97

wt 42#
ht 46 1/2

In the past has been had
a childhood disorder
hearing ...

treatment Cause constipa-
tion which continued
& was stopped

PE: HEENT; NECK; LUNGS; HEAR.
ABDOMEN; GENITALIA; EXTREMITIE.
SPINE; AND NEUROSCREEN
NORMAL EXCEPT AS NOTED BELO

nevus
side. a
pairs

Plan - CBC

T.B. Monteux
Varivax

CBC + Hgb. electro-
phoresis ordered

Advice re Hgb.
Vaccine

Refernel to Dr.
Turn re nevus

long 1-2 yrs.
Mineral Oil
retraining

Rubin

12-23-97    Mo. informed
has Thalasse-
mia Trait.

Rubin

3-27-98    p.m.

see recent school
evaluations!

Will use 2 wk
trial of ritalin 10 mg.
daily.

Rubin

7/15/98  School form completed
mailed home

10/16/98  Ritalin 5 mg #30  1 tab
@ noon - 10 mg #30 1 tab dose
Mom ... dye up @
Ritalin 10 mg #30 1 tab
each AM @ for Dr. Rubin

2/16/99  Ritalin 5 mg
#30  1 tab ab 12N  Ritalin
10 mg #30  1 tab in AM
Will pt ab office  S. Rubin

3/31/99  Ritalin 5 mg #30
1 tab at noon daily
per Dr. Rubin
Ritalin 10 mg  1 tab
8 am daily per Dr. Rubin
@ script be mailed home

5/18/99  Ritalin 10mg
#30  1 tab 8am
Ritalin 5mg #30
1 tab at noon
per request  S. Rubin

8/24/99  Ritalin 10 mg 2 tab @ am
5 mg @ noon  #90  for Dr. Ru
Script called in mailed
home @



10-1-99

Ht    4' 5"        (53")    2/12 yr.    10/20/99
Wt    56 lb.      (sL-1-0)
BP    98/38

PE: HEENT; NECK; LUNGS; HEART;
ABDOMEN; GENITALIA; EXTREMITIES
SPINE; AND NEUROSCREEN
NORMAL EXCEPT AS NOTED BELOW:

On Ritalin 10 mg AM
+ 5 mg @ noon
Also being ___ for
___

Plan - 2nd opinion
    ē Dr. Matthias

    Given Rx for
2 mos. for ritalin

    Hep B. Vacc #1
    Rt 2 mo for
HBV #2.

12-10-99
HBV #2
Hep B vacc (#2) 0.5cc im ___
@ deltoid — Aldser (RN)

KARIN E. CHOY M.D.
DEA # BC 1653927