UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATTHEW AND CINDY MYSLOW, as Parents and natural guardian of minor Plaintiff TRAVIS MYSLOW<br>　　　　　Plaintiffs,<br><br>v.<br><br>NEW MILFORD SCHOOL DISTRICT, NEW MILFORD BOARD OF EDUCATION, RAYMOND AVERY, JEANANN PADDYFOTE, THOMAS MULVIHILL, PAULA KELLEHER, DENIS DOLAN, JEAN MALCOLM, JOSEPHINE ROSITANO, ADELE JOHNSON, DEBORAH SHELLEY, ROBYN VIKLAND, L. ROBERT RUBIN, M.D., ANNA ALSHANSKY, M.D., MARTIN KREMINITZER, M.D., DIANA BADILLO-MARTINEZ, Ph.D., AND TERRY NEU, Ph.D.<br>　　　　　Defendants | CIVIL ACTION NO.<br>3:03CV00496 (MRK)<br><br><br><br><br><br><br><br>August 15, 2005 |

**DEFENDANT L. ROBERT RUBIN, M.D.'S MOTION TO PRECLUDE PLAINTIFFS' EXPERT, PETER BREGGIN, M.D.**

Defendant L. Robert Rubin, M.D. respectfully submits this Motion to Preclude Plaintiffs' Expert, Peter Breggin, M.D. As is set forth more fully in the attached Memorandum of Law, Dr. Breggin, a psychiatrist, should be precluded from testifying as to the standard of care of a

**ORAL ARGUMENT REQUESTED/
TESTIMONY NOT REQUIRED**

407073

community-based pediatrician. Dr. Breggin is not a "similar health care provider" to Dr. Rubin, a pediatrician, as defined under Conn. Gen. Stat. § 52-184c(c). Nor does he possess the necessary training, knowledge and expertise in a related field of medicine, to be competent to testify as to the standard of care of a pediatrician, as contemplated under Conn. Gen. Stat. § 52-184c(d).

Furthermore, Dr. Breggin should be precluded from offering causation opinion testimony at trial, as not one of his causation opinions meets the minimum standards of reliability under <u>Daubert</u>. His proposed testimony is grounded in nothing more than unsupported speculation, conjecture and subjective assessments and beliefs, which is precisely the type of opinion evidence that should be precluded.

Dr. Breggin should be precluded from testifying at trial regarding the standard of care of a pediatrician, as he lacks the qualifications to proffer such testimony. Dr. Breggin should also be precluded from offering causation opinions, as each opinion lacks any reliable foundation.

WHEREFORE, Dr. Rubin respectfully requests that the Court grant his Motion to Preclude plaintiff's expert, Dr. Breggin.

407073

DEFENDANT,
L. ROBERT RUBIN, M.D.

By: _____
KATHERINE C. CALLAHAN, ESQ. (ct06216)
BENJAMIN J. BERGER, ESQ. (ct25555)
Updike, Kelly & Spellacy, P.C.
One State Street
Hartford, CT 06123
Tel. 860-548-2600
Fax 860-548-2680

407073

## **CERTIFICATION**

I hereby certify that a true copy of the foregoing was served this 15th day of August 2005, by first class United States mail, to the following counsel of record:

Deborah G. Stevenson, Esq.
226 East Flag Swap Road
Southbury, CT 06488

Thomas R. Gerarde
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114-1190

Alan C. Milstein
Derek T. Braslow
4300 Haddonfield Road
Suite 311
Pennsauken, NJ 08109

Richard A. O'Connor
Sachner & O'Connor
Crossroad West
765 Straits Turnpike
P.O. Box 1323
Middlebury, CT 06762-1323

Jack V. Genovese, II
Royce L. Vehslage
Genovese, Vehslage & LaRose
500 Enterprise Drive
Rocky Hill, CT 06067-4053

By: /s/ Benjamin J. Berger
BENJAMIN J. BERGER, ESQ.
Updike, Kelly & Spellacy, P.C.

407073

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATTHEW AND CINDY MYSLOW, as Parents and natural guardian of minor Plaintiff TRAVIS MYSLOW<br>Plaintiffs, | CIVIL ACTION NO.<br>3:03CV00496 (MRK) |
| v. | |
| NEW MILFORD SCHOOL DISTRICT, NEW MILFORD BOARD OF EDUCATION, RAYMOND AVERY, JEANANN PADDYFOTE, THOMAS MULVIHILL, PAULA KELLEHER, DENIS DOLAN, JEAN MALCOLM, JOSEPHINE ROSITANO, ADELE JOHNSON, DEBORAH SHELLEY, ROBYN VIKLAND, L. ROBERT RUBIN, M.D., ANNA ALSHANSKY, M.D., MARTIN KREMINITZER, M.D., DIANA BADILLO-MARTINEZ, Ph.D., AND TERRY NEU, Ph.D.<br>Defendants | August 15, 2005 |

**DEFENDANT L. ROBERT RUBIN, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO PRECLUDE PLAINTIFFS' EXPERT, PETER BREGGIN, M.D.**

L. Robert Rubin, M.D. submits this Memorandum of Law in support of his Motion to Preclude plaintiffs' expert, Peter Breggin, M.D.

407073

## BACKGROUND

The plaintiffs Matthew and Cindy Myslow (collectively "the Myslows") are the parents and natural guardians of the minor plaintiff, Travis Myslow ("Travis"). Only the minor plaintiff has asserted a claim against Dr. Rubin. The plaintiffs allege that various medical professionals, including Dr. Rubin, misdiagnosed Travis with Attention Deficit Hyperactivity Disorder ("ADHD") and/or Attention Deficit Disorder ("ADD"). According to the Complaint, defendants New Milford School District, New Milford Board of Education, Paula Kelleher, Denis Dolan, Josephine Rositano, and Robyn Vikland (collectively, the "School Defendants") urged the Myslows to have Travis treated by Dr. Rubin, see Second Amended Complaint, dated October 2003, ("Complaint") ¶36, and later Dr. Alshansky, Dr. Kreminizer and Diana Badillo-Martinez (collectively "the Other Medical Professionals"), see Complaint ¶51, for ADHD and/or ADD. Plaintiffs allege that Dr. Rubin prescribed the prescription drug Ritalin for treatment of Travis' ADHD and/or ADD. See Complaint ¶41. The Other Medical Professionals similarly prescribed Ritalin or other drugs for treatment of Travis' ADHD and/or ADD. See Complaint ¶¶56-57. The plaintiffs allege that the various diagnoses of ADHD and/or ADD were incorrect and Travis suffered instead from dyslexia, dysgraphia and Situational Anxiety Disorder. See Complaint ¶77.

Counts II and III against Dr. Rubin, a board-certified pediatrician, include medical negligence and lack of informed consent. The plaintiffs have disclosed Peter Breggin, M.D., a non board-certified psychiatrist, to testify as to standard of care and causation. Dr. Breggin is expected to testify

2

407073

that Dr. Rubin misdiagnosed Travis with ADHD and improperly medicated him with Ritalin causing him injury. Specifically, Dr. Breggin will testify that Dr. Rubin's alleged negligence resulted in Travis' inability to read, humiliation, feeling stigmatized, a loss of friends and various psychological and physical problems, none of which Travis currently suffers. Dr. Breggin's opinions are not supported by scientific, objective and reliable data. Additionally, Dr. Breggin is unqualified to testify as to the standard of care of a community-based pediatrician. Because Dr. Breggin is not competent to testify as to the standard of care and because his opinions are unreliable, he should be precluded from testifying at trial.

## ARGUMENT

**I.  Plaintiff's Expert is Not Qualified to Testify as to the Standard of Care of a Pediatrician**

Psychiatrist, Peter Breggin, M.D., plaintiff's expert, should be precluded from testifying at trial, as he lacks the necessary credentials to testify as to the applicable standard of care for a community-based pediatrician. Under Connecticut law a plaintiff must present expert testimony to prove a claim of medical negligence. Law v. Greenwich Hosp., 116 F. Supp. 2d 295, 305 (D. Conn. 2000). The credentials of an expert qualified to testify regarding medical malpractice are governed by Connecticut General Statutes § 52-184c (c) and (d).

Conn. Gen. Stat. 52-184c defines the minimum qualifications one must possess to testify as an expert. One may testify as an expert if he is considered a "similar health care provider." Conn. Gen. Stat. § 52-184c (c). A similar health care provider is defined as one who is "(1) trained and

experienced in the **same specialty**; and (2) is **certified by the appropriate American board in the same specialty**…. Id. (emphasis added).   One may also testify as to the prevailing professional standard of care in a given field of medicine even if he is not a "similar health care provider" if "to the satisfaction of the court, possesses sufficient, training, experience and knowledge as a result of practice or teaching in a **related field of medicine**…" Conn. Gen. Stat. § 52-184c (d) (emphasis added).

Dr. Breggin is not a "similar health care provider" qualified to testify as to the prevailing standard of care applicable to Dr. Rubin, a board-certified pediatrician, who has been practicing general medical pediatrics since 1964.  Unlike Dr. Rubin, Dr. Breggin, is a non-board certified psychiatrist, with a self-proclaimed subspecialty in psychopharmacology.  See Breggin Deposition, dated Nov. 30, 2004, pp. 94-95 (attached as Exhibit A) and Breggin Deposition, dated Apr. 8, 2005, pp. 305-06 (attached as Exhibit B).  Furthermore, Dr. Breggin's only experience in general medical pediatrics is limited to a two-month pediatric rotation while an intern in a hospital in the early 1960's.  See Exhibit A, p. 91.  Because Dr. Breggin is not board-certified in pediatrics and has never practiced as a community-based pediatrician, he cannot testify as to the prevailing standard of care of a pediatrician under the "similar health care provider" provision of Conn. Gen. Stat. § 52-184c (c).

Dr. Breggin also does not possess the necessary training, knowledge and expertise to be competent to testify as to the standard of care of a community-based pediatrician.  Dr. Breggin holds himself out as a psychiatrist whose practice, between 1968 and November 2002, included psychiatric

4

care for families. Id. at 102. During that time, only 50% of his practice involved the psychiatric care of children. Id. Additionally, Dr. Breggin's two-month training and experience in pediatrics in the early 1960s is far too limited and remote to provide him with the fundamental knowledge of a pediatrician. Id. at 91. Consequently, Dr. Breggin's practice of psychiatry is not similarly related to pediatrics and does not provide him the necessary training, experience and knowledge that would qualify him to testify as to the prevailing standard of care of a community-based pediatrician under the provisions of Conn. Gen. Stat. § 52-184c (d).

Dr. Breggin lacks the credentials to be considered a "similar health care provider." Similarly, his psychiatry practice is not sufficiently related to Dr. Rubin's pediatric practice. Dr. Breggin has nothing more than a causal familiarity with pediatrics and he is not competent testify as an expert regarding the standard of care for a community-based pediatrician. Thus, Dr. Breggin should be precluded from testifying as an expert at trial.

II.     **Dr. Breggin's Testimony is Unreliable and Should Be Precluded Under Daubert**

Dr. Breggin should be precluded from testifying at trial because his expected causation testimony regarding causation is based purely on speculation, conjecture and subjective assessments, which lack any scientific underpinnings to ensure its reliability. Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), a district court is required to " ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589. Indeed, the Court' s " 'gate-keeping function applies not

5

407073

just to scientific expert testimony as discussed in Daubert, but also to testimony based on technical and other specialized knowledge . . . including damage experts . . ..' " MTX Communications Corp. v. LDDS/Worldcom, Inc. 132 F. Supp. 2d 289, 290 (S.D.N.Y. 2001). A trial court's discretion to admit or exclude expert testimony is broad and will stand unless a determination is "manifestly erroneous." United States v. Aminy, 15 F.3d 258, 261 (2d Cir. 1994). Initially, a court must consider whether the expert is proposing to testify to scientific knowledge, meaning a "grounding in the methods and procedures of science," and not merely a subjective belief or unsupported speculation. Daubert, supra, 509 U.S. at 590. Next, the court, as gate-keeper, must determine whether the testimony is relevant and reliable. Johnson Elec. N. America v. Mabuchi Motor America, 103 F. Supp. 2d 268, 279 (S.D.N.Y. 2000). The court must also take into account the "expert's background and practical experience when deciding whether an expert is qualified to render opinion testimony." Id.

Wet Seal, Inc., 179 F. Supp. 2d 291, 301 (S.D.N.Y. 2001). The Supreme Court, in Daubert, enumerated a non-exclusive list of factors a trial court may consider in evaluating whether an expert's methodology is reliable:

    (1)    Whether the expert's method is a subjective or conclusory approach, which cannot be tested for reliability;

    (2)    Whether the method or theory has been subjected to peer review and publication;

407073

(3) The known or potential rate of error of the method when applied;

(4) The existence and maintenance of standards controlling the technique's operation; and

(5) Whether the theory or method has been generally accepted by the expert community.

Daubert, supra, 509 U.S. at 593-94.

The Supreme Court has cautioned that the test of reliability is a flexible one and the Daubert factors do not constitute a definitive checklist. Id. at 597. Although the court must focus on the expert's principles and methodology and not his conclusions, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." Trouble, supra, 179 F. Supp. 2d at 302.

"The second gate-keeping function of the Court is to determine whether [the expert's] proffered testimony is relevant and will 'assist the trier of fact to understand the evidence or to determine a fact in issue.' Fed. R. Evid. 702. It must not only have a reliable foundation but also be relevant in that it 'fits' the facts of th[e] case." Trouble, supra, 179 F. Supp. 2d at 302. "'A court may conclude that there is simply too great an analytic gap between the data and the opinion proffered.'" Id.

Dr. Breggin should be precluded from testifying at trial, as his opinions regarding causation lack any objective analysis and are not grounded upon any scientific or factual basis. Instead, Dr. Breggin's opinion evidence is based entirely on subjective assessments, speculation and conjecture. Dr. Breggin's expected testimony, that Dr. Rubin's alleged misdiagnosis of ADHD and medication with Ritalin caused Travis to suffer a " severely impaired educational experience," (i.e. an inability to read), lacks any factual support. See Breggin Report, p.25 (attached as Exhibit C). Dr. Breggin testified at his deposition that diagnosing Travis with ADHD and medicating him with Ritalin was an organized effort to " [play] the cover-up game, [to shove Travis] under the school rug. The school says let's gets [sic] the dustpan out and dust him over to the pediatrician rather than address his reading problems and his writing problems, which were apparent from the evaluation and the education and the doctor goes along with." Exhibit B, p. 279. There is nothing in Travis' medical or educational records to support Dr. Breggin's "conspiracy" theory. Dr. Breggin's opinion is nothing more than his unsupported subjective belief, which lacks even the slightest hint of reliability.

Similarly, Dr. Breggin's anticipated testimony, that Dr. Rubin's alleged misdiagnosis of ADHD and medication with Ritalin caused Travis to feel humiliated, also lacks objective or scientific support. See Exhibit C, p. 25. Dr. Breggin testified in his deposition that he relied on conversations with Travis and his parents in forming his opinion. See Exhibit B pp. 280-81. There

is nothing in the medical or educational records to support Dr. Breggin's opinion. Furthermore, he did not conduct a full psychiatric examination of Travis to arrive at his opinion. See Id., p. 284. Dr. Breggin testified, however, that he knows that Travis was humiliated because "[he knows that humiliation is] the case for all of these children, you know, how they feel about their circumstances of what they're exposed to and also talking to the parents." Exhibit B, p. 282. This opinion evidence simply relies on subjective assessments unsupported by objective data. It is also based upon personal beliefs, instead of reliable scientific evidence, such as validated, peer-reviewed research. See Id. 367.

Likewise, Dr. Breggin's proposed testimony, that because of Travis' alleged misdiagnosis of ADHD, he was labeled as mentally ill and that taking Ritalin caused him to feel stigmatized, relies only on Dr. Breggin's subjective beliefs. See Exhibit C, p 25. Dr. Breggin testified in his deposition that Travis did not know that he was mentally ill because he was told so but because "[a]s soon as you take a drug, you know there's something the matter with you and you've got some sort of mental problem, mental illness. *I might think* in those terms he has to know that he has a mental problem." Exhibit B, p. 283 (emphasis added). Again, Dr.Breggin's opinion evidence is not supported by any scientific evidence or objective data in Travis' medical or educational records. It is merely Dr. Breggin's unsubstantiated viewpoint.

9

407073

Finally, Dr. Breggin's testimony that the alleged misdiagnosis of ADHD and medication with Ritalin caused Travis to lose his friends and caused him to suffer adverse drug effects lacks objective support. See Exhibit C, pp. 25-26. Dr. Breggin testified in his deposition that the only source of information regarding Travis' loss of friends was from Travis' parents but not Travis. See Exhibit B, p. 286. Similarly, Dr. Breggin's testimony that Travis suffered adverse drug effects from taking Ritalin, including social withdrawal, fatigue, depression, suppressed growth, anxiety, agitation, impaired sleep, gastrointestinal problems and headaches was based solely on Travis' parents' subjective assessment. See Exhibit B, pp. 288-294. Dr. Breggin failed to consider objective data such as Travis' medical record, which he admits does not contain any documentation that Travis experienced any of these side effects, except gastrointestinal problems, which were pre-existing. Id. Dr. Breggin also did not examine Travis for the presence of such side effects. Dr. Breggin's opinion simply disregards objective evidence and is based upon unreliable, subjective assessments.

Not one of the opinions held by Dr. Breggin's meets the minimum standards of reliability, as each is only based upon unsupported speculation, conjecture and subjective assessments and/or beliefs. Furthermore, his questionable opinions will not assist the trier of fact to understand the evidence or to determine a fact in issue. This is precisely the type of unreliable evidence that

407073

Daubert and Federal Rules of Evidence 702 seek to prevent. Thus, Dr. Breggin should be precluded from testifying at trial.

IV.   **Conclusion**

Dr. Breggin should be precluded from testifying at trial both because he lacks the necessary credentials to testify as to the standard of care of a community-based pediatrician, and because his opinion evidence regarding causation, which lacks any scientific or objective underpinnings, is unreliable. Therefore, Dr. Rubin respectfully requests that the Court grant his Motion to Preclude.

>DEFENDANT,
>L. ROBERT RUBIN, M.D.
>
>By: _/s/_____
>      KATHERINE C. CALLAHAN, ESQ. (ct06216)
>      BENJAMIN J. BERGER, ESQ. (ct25555)
>      Updike, Kelly & Spellacy, P.C.
>      One State Street
>      Hartford, CT 06123
>      Tel. 860-548-2600
>      Fax 860-548-2680

407073

## CERTIFICATION

I hereby certify that a true copy of the foregoing was served this 15th day of August 2005, by first class United States mail, to the following counsel of record:

Deborah G. Stevenson, Esq.  
226 East Flag Swap Road  
Southbury, CT  06488

Alan C. Milstein  
Derek T. Braslow  
4300 Haddonfield Road  
Suite 311  
Pennsauken, NJ  08109

Jack V. Genovese, II  
Royce L. Vehslage  
Genovese, Vehslage & LaRose  
500 Enterprise Drive  
Rocky Hill, CT  06067-4053

Thomas R. Gerarde  
Howd & Ludorf  
65 Wethersfield Avenue  
Hartford, CT  06114-1190

Richard A. O'Connor  
Sachner & O'Connor  
Crossroad West  
765 Straits Turnpike  
P.O. Box 1323  
Middlebury, CT  06762-1323

By: /s/ BsB  
BENJAMIN J. BERGER, ESQ.  
Updike, Kelly & Spellacy, P.C.

407073