UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATHEW AND CINDY MYSLOW, as Parents and Natural Guardian of Minor Plaintiff, TRAVIS MYSLOW | : : : : |
| Plaintiffs | : Case No: 3:03CV496(MRK) : |
| v. | : : |
| NEW MILFORD SCHOOL DISTRICT, NEW MILFORD BOARD OF EDUCATION, RAYMOND AVERY, JEANNE PADDYFOTE, THOMAS MULVIHILL, PAULA KELLEHER, DENIS DOLAN, JEAN MALCOLM, JOSEPHINE ROSITANO, ADELE JOHNSON, DEBORAH SHELLEY, ROBYN VIKLAND, L. ROBERT RUBIN, M.D., ANNA ALSHANSKY, M.D., MARTIN KREMINITZER, M.D., DIANA BADILLO-MARTINEZ, Ph.D., TERRY NEU, Ph.D. | : : : : : : : : : : : |
| Defendants | : August 12, 2005 |

**DEFENDANTS' ALSHANSKY'S AND KREMINITZER'S
MOTION TO DISQUALIFY PLAINTIFF'S EXPERT, DR. PETER BREGGIN**

Dr. Alshansky and Dr. Kreminitzer, pediatric neurologists, are moving to preclude plaintiff's expert witness, Dr. Peter Breggin, a psychiatrist, on the grounds that he lacks the requisite training, skills and experience to testify against these defendants and is not qualified to render opinions regarding standards of care and causation. Further, Dr. Breggin's opinions regarding the plaintiff's alleged permanent damages are based entirely on speculation. He should not be permitted to present testimony to the jury.

**I.     BACKGROUND**

Plaintiffs have brought claims against a school system and multiple professionals who treated their minor son for alleged damages associated with perceived pressure to take medications for an allegedly incorrect diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"). They allege that the defendants' actions required their son to accept stimulant drug therapy from the second to fifth grade.[1]

Plaintiff's claims include allegations against the school district for allegedly misconstruing plaintiff's symptoms, and requiring him to take stimulant medication over a three year period. Plaintiff's pediatrician, Dr. Rubin, has also been sued. He allegedly improperly diagnosed Travis Myslow with ADHD and prescribed Ritalin to the plaintiff from March 27, 1998 to March 24, 2000.

Dr. Rubin testified at deposition that he referred the minor plaintiff to Dr. Alshansky for consultation on September 27, 2000 and additional evaluation. (Deposition of Dr. Rubin, May 12, 2005, p. 86, attached at Exhibit A.) Dr. Alshansky had one office visit with the minor plaintiff on October 27, 2000 and Dr. Kreminitzer had one office visit with the minor plaintiff on April 24, 2001. Shortly after Dr. Kreminitzer's treatment on April 24, 2001, Travis went on summer break. There was such contention between the school and the parents about an appropriate course for Travis that he did not return to school at the end of the summer of 2001, and instead received homebound instruction. In the fall of 2001,

---

[1] In the fall of 2005, Travis Myslow will be entering eleventh grade at New Milford High School.

2

administrative hearings were held resulting in Travis' placement in a private program for children with learning disabilities.

In context, for almost three years prior to his treatment with Dr. Alshansky, Travis Myslow had been diagnosed with ADHD and had been taking medication on and off. Further, Travis Myslow was in special education classes and was receiving special education services since the second grade. In the years prior to Travis Myslow's consultation with Dr. Alshansky in October of 2000, his parents and the New Milford School System had numerous meetings and tremendous dissention regarding whether he was getting appropriate services for his learning difficulties.

Dr. Breggin has opined that the two office visits with these defendants allegedly permanently harmed Travis Myslow because they continued the process of depriving the plaintiff of a proper education causing permanent damage. According to Dr. Breggin, this allegedly will lead to lifetime feelings of failure and underachievement as a result of having allegedly been (mis)diagnosed with ADHD. (See Exhibit B, Dr. Breggins' report, p. 25, 26.)

There is no absolutely no support for Dr. Breggin's opinion that the pediatric neurologists' diagnoses, based upon two office visits, and recommendations for limited trials of medication for ADHD/possible ADD, at the very end of a three year process, caused the minor-plaintiff any educational deficits or that the two office visits led to lifetime personal stigmatization of the minor plaintiff as alleged by Dr. Breggin. On their face, Dr. Breggin's opinions are pure speculation and have no factual basis or underpinnings.

Plaintiff has withdrawn all but one expert, Dr. Peter Breggin. Dr. Breggin is expected to offer testimony at the time of trial that these defendants misdiagnosed Travis Myslow with ADHD and improperly prescribed a trial of medication that made him temporarily physically ill. In addition, Dr. Breggin is expected to testify that the alleged misdiagnosis of ADHD caused Travis Myslow permanent harm because by these defendants recommending that he continue treatment for his diagnosis of ADHD, they continued the process of "stigmatizing" the minor-plaintiff and discouraged his educators from determining the real obstacles to his learning. This allegedly delayed his opportunity to develop an effective educational plan causing permanent stigmatization and attendant damages. (Excerpts of Dr. Breggin's deposition, November 4, 2004 and April 8, 2005, pp. 326, 327, 353, 354, 356 attached at Exhibit C.)

      I.    **Dr. Breggin's specialty and practice are different from these defendants; he should not be permitted to offer expert testimony against them.**

There is no federal statute that differs or preempts the Connecticut Statute regarding expert qualifications. Law v. Camp, 116 F.Supp.3d 295 (2000). Pursuant to C.G.S. §52-184c, Dr. Breggin lacks the qualifications to testify against these defendants. Section 52-184c(d) provides: "Any health care provider may testify as an expert in any action if he: (1) is a 'similar health care provider' pursuant to subsection (b) or (c) of this section, or (2) is not a similar health care provider pursuant subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert

4

testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five year period before the incident giving rise to the claim."

Further, Section 52-184c(c) provides in relevant part: a "'similar healthcare provider' is one who: (1) is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty…." (Emphasis added.)  Dr. Breggin does not qualify under Section (c) because he is not a "similar health care provider" as defined in the statute because has no training in pediatric neurology and is not certified by any, much less the appropriate, American Board.  Consequently, he must try to qualify under 52-184c(d)(2).

Dr. Breggin is a general psychiatrist and sees approximately 10 patients per week who come with a range of psychiatric problems.  (Exhibit C, p. 19.) He does not hospitalize patients; he does not maintain hospital privileges.  (Exhibit C, p. 301.)  His clinical practice is limited to two days per week; the rest of his practice and over 60% of his income, is derived from forensic work.  (Exhibit C, p. 29.)

Dr. Breggin's alleged "training and practice" in the field of general neurology is limited to a two month rotation during his residency that occurred forty years ago, at a time when little, if anything, was known about the diagnosis and treatment of ADHD.  (Exhibit C, p. 91.)

5

These defendants are board-certified pediatric neurologists, a specialty separate and apart from Dr. Breggin's claimed area of expertise, psychiatry. Dr. Breggin has a different clinical focus than Drs. Alshansky and Kreminitzer. The majority of his practice consists of lecturing to the media and to juries about his opinion that medications are overused. Pursuant to C.G.S. §52-184c, Dr. Breggin should not be allowed to testify to issues of standards of care as against Drs. Alshansky and Kreminitzer.

## II.    Dr. Breggin's theory of causation related to permanent harm is based entirely on speculation.

Dr. Breggin maintains that the minor-plaintiff suffered permanent harm to his educational progress because of these defendants' diagnoses. (Exhibit C, pp.251-253.) He further claims Travis Myslow suffered permanent stigmatization from the diagnosis of ADD. *Id.* There is no evidence to support Dr. Breggin's opinion that Dr. Alshansky's and Dr. Kreminitzer's limited participation of two visits on October 27, 2000 and April 24, 2001 and the limited amount of trial medication actually ingested at the tail end of his treatment had any affect whatsoever on his educational course. Specifically, plaintiff took the Adderall for two-three days. (Exhibit C, p. 315.) The Dexedrine was administered for less than a month. (Deposition of Cindy Myslow, May 24, 2005, p. 270 attached at Exhibit D.) The plaintiff took 13 doses of Concerta. (Exhibit C, p. 328.)

However, Dr. Breggin testified that "they did contribute to the long-term stigmatization, that they could have interrupted. . . ." notwithstanding that "we don't have any reason to believe that that particular exposure (of the medication) had any permanent

6

effect on him." (Exhibit C, pp. 298, 316) Even plaintiff's own counsel, at deposition, objected to an inquiry regarding what long term affect the diagnosis ADHD had on the minor-plaintiff's curriculum or educational plan on the basis that any answer would be "speculative." (Exhibit C, p. 359) Indeed, Dr. Breggin has no training in education at all. (See also, Motion to Preclude filed on behalf of the School defendants, dated August 10, 2005.) Dr. Breggin is not qualified to offer the opinion that any diagnosis or alleged misdiagnosis of ADHD resulted in any change of the educational course for the minor-plaintiff or any damages flowing from same.

The Federal Rules of Evidence require that expert testimony be relevant to the issues and rest on a reliable foundation. Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579, 113S. Ct. 2786 (1993). Dr. Breggin's conclusions regarding permanent harm as a result of Dr. Alshansky's and Dr. Kreminitzer's treatment is entirely speculative. Expert testimony regarding causation must rest on a reliable foundation by pertaining to "scientific . . . knowledge." Daubert, 509 U.S. at 590, 113 S.Ct. at 2794. The term, scientific, "implies a grounding in the methods and procedures of science" and knowledge "connotes more than subjective belief or unsupported speculation." Id. Yet subjective beliefs and unsupported speculation are the only basis for Dr. Breggin's opinion.

There is no objective evidence for Dr. Breggin's opinions that the medication or diagnosis of ADHD, or questionable ADHD, by these defendants caused the minor-plaintiff any harm with respect to his educational course or beyond. Dr. Breggin's testimony has no scientific basis. It will not assist the jury in its task.

"Rule 702 requires a determination of whether the underlying reasoning or methodology of a witness' opinion testimony is scientifically valid and properly can be applied to the facts in issue. <u>Daubert</u>, 509 U.S. at 591, 113 S.Ct. at 2795-96. Considerations which bear on the inquiry include whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error rate, the existence and maintenance of standards controlling its operation, and to some extent, whether it has attracted acceptance within a relevant scientific community." <u>Zuchowitz v. U.S.</u>, 870 F. Supp. 15 (D.Conn. 1994) (Dorsey, J.), aff'd, 140 F.3d 381 (2d Cir. 1998) *citing* <u>Daubert</u> at 591, 113 S.Ct. at 2795. Dr. Breggin's theories regarding causation meet none of these criteria. Dr. Breggin's opinions are impervious to verification or testing. They are based purely on his subjective opinions about this case and should not be presented to the Myslow jury.

WHEREFORE, based upon the foregoing, Dr. Breggin should be precluded from offering any opinions at the trial of this matter.

DEFENDANTS,
MARTIN KREMINITZER, M.D.
ANNA ALSHANSKY, M.D.

_____

Leslie Gold McPadden
Fed. Bar No. 17525
SACHNER & O'CONNOR
The Crossroads West
765 Straits Turnpike, Bldg. 2, Ste. 1001
P.O. Box 1323
Middlebury, CT 06762-1323
Telephone: 203-598-7585
Fax: 203-598-7595

Case 3:03-cv-00496-MRK    Document 126    Filed 08/15/2005    Page 9 of 10

## **CERTIFICATION OF SERVICE**

This is to certify that the foregoing was mailed on this date to the following:

Sherman, Silverstein, Kohl, Rose & Podolsky
Fairway Corporate Center
4300 Haddonfield Road, Ste. 311
Pennsauken, NJ 08109

Deborah G. Stevenson, Esquire
226 East Flag Swamp Road
Southbury, CT 06488

Melinda Powell, Esquire
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

Katherine C. Callahan, Esquire
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123-1277

_____
Leslie Gold McPadden