S.Ct. 1708 (1998).  "[M]inor discomfort and hurt feelings do not make a federal case."

Wise v. Pea Ridge Sch. Dist., 855 F.2d 560, 565 (8th Cir. 1988).  The alleged wrongful

conduct must be "'arbitrary, conscience-shocking, or oppressive in a constitutional

sense,' and not merely 'incorrect or ill-advised.'"  Zandhri v. Dortenzio, 228 F. Supp.2d

167, 178 (D. Conn. 2002), citing, Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2nd

Cir. 1995).  Malicious and sadistic abuses of power that are intended only to oppress or

to cause injury and which serve no legitimate purpose are said to shock the conscience.

See Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 252 (2nd Cir. 2001).

There is nothing in this case that remotely rises to that level.  The evidence shows, at

most, a professional disagreement over Travis' diagnosis and how to provide him with

an appropriate education.  There is nothing in the record to indicate a malicious or

sadistic abuse of power, or otherwise conscience-shocking behavior, on the part of any

of the School Defendants.

> **4.    Claims Against The New Milford School District And The New Milford Board Of Education.**

In Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, (1978),

the United States Supreme Court held that "a local government may not be sued under

§1983 for an injury inflicted solely by its employees or agents."   In other words, a

municipality cannot be liable pursuant to a theory of respondeat superior for actions

committed by its employees.  On the contrary, a municipality may be sued only for the

execution of an official policy, regulation or custom that causes the plaintiff to be

subjected to a denial of a constitutional right, or for the actions of those municipal

officials who have final policy making authority.  See id.; City of St. Louis v. Praprotnik, 485 U.S. 112, 128, 108 S.Ct. 915, (1988), citing, Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, (1986); Zahra v. Town of Southold, 48 F.3d 674, 685 (2nd Cir. 1995). "The mere assertion … that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  Zahra, 48 F.3d at 685, quoting, Dwares v. City of New York, 985 F.2d 94, 100 (2nd Cir. 1993).

In this case, there are no allegations of fact supporting an official custom or policy that caused Travis to be subjected to a denial of a constitutional right. Accordingly, the New Milford School District and the New Milford Board of Education are entitled to summary judgment as to plaintiffs' §1983 claims in their entirety.

**G.    The Plaintiffs' 42 U.S.C. §1983 Claims Fail Because The Individual School Defendants Are Entitled To Qualified Immunity.**

The federal doctrine of qualified immunity will protect municipal employees acting in their official capacity against §1983 suits unless the following two conditions are met: (i) the employee's actions violate clearly established constitutional or statutory rights; and (ii) a reasonable official in the same position would have known that the challenged conduct violated that established right.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lennon v. Miller, 66 F.3d 416, 422 (2nd Cir. 1995); Saucier v. Katz, 533 U.S. 194, 202 (2001).  The defense is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously

permitted to go to trial." Saucier, 533 U.S. at 200-01, *quoting*, Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In this case, the individual School Defendants are entitled to qualified immunity because (i) they did not violate Travis' clearly established rights (see §F above), and (ii) it was objectively reasonable for the individual School Defendants to believe that they were not violating Travis' clearly established rights.

In Count Six, the plaintiffs appear to allege that the School Defendants violated Travis' constitutional rights when they worked with Dr. Neu to implement Travis' IEP. See Second Amended Complaint, ¶¶154-160. The due process hearing officer, however, ordered that Dr. Neu be the final decision-maker with respect to any disagreements regarding Travis' education plan for the 6th grade school year. As such, it was objectively reasonable for the School Defendants to believe that their actions in following Dr. Neu's recommendations, which were not discriminatory, did not violate any of Travis' constitutional rights.

Moreover, the plaintiffs have failed to articulate what constitutional right was allegedly violated, where as here, there is no evidence of a malicious intent, ill will, or an otherwise discriminatory motive. Where the official's conduct is objectively reasonable, the plaintiff cannot defeat a motion for summary judgment by simply alleging an unconstitutional, subjective intent. See Blue v. Koren, 72. F.3d 1075 (2nd Cir. 1995). The plaintiff must "proffer particularized evidence of direct or circumstantial facts, … supporting the claim of improper motive…." Id. There is no such evidence in this case.

### H.    The Plaintiffs Have Failed To State A Claim Under The Connecticut Constitution.

In addition to their §1983 claims set forth in Count Six, the plaintiffs also allege that the School Defendants violated Travis' rights under article eighth, §1, and article first, §20, as amended, of the Connecticut Constitution.  These claims likewise fail as a matter of law.

"The source of judicially created private causes of action seeking damage for constitutional violations is the United States Supreme Court case of <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)."  <u>Aselton v. Town of East Hartford</u>, No. X07-CV01 0079187S (Dec. 3, 2002) (Sferrazza, J.) (attached as **Exhibit W**).  In <u>Bivens</u>, the Court recognized a cause of action for money damages against federal agents for a violation of the Fourth Amendment's protection against unreasonable searches and seizures.

The Connecticut Supreme Court has consistently looked to *Bivens* and its federal progeny as a guide in determining whether to create a *Bivens* action for an alleged state constitutional violation.  <u>See</u> <u>Aselton</u>, *supra*; <u>Kelley Property Development, Inc. v. Lebanon</u>, 226 Conn. 314, 334-38 (1993); and <u>ATC Partnership v. Windham</u>, 251 Conn. 597, 613-14 (1999).  Thus far, the Court has been reluctant to create such private causes of action.  <u>See</u> <u>generally</u>, <u>ATC Partnership</u>; <u>Kelley Property</u>, 226 Conn. 314 (1993).

A cause of action for money damages under the Connecticut Constitution has been created in only one limited circumstance.  <u>See</u> <u>Binette v. Sabo</u>, 244 Conn. 23

(1998).  In <u>Binette</u>, the Court allowed a claim for violations of article first, §§7 and 9 of the state constitution for an unreasonable search and seizure and unlawful arrest by municipal police officers.  <u>Id</u>. at 49-50.  The allegations in that case were compelling and included a claim that the Chief of Police grabbed the plaintiff's head and deliberately banged it on the roof of a police cruiser.[1]  The Court emphasized that, "our decision to recognize a … remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." <u>Id</u>. at 47.  The Court held that "whether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis."  <u>Id</u>. at 48.

In the instant case, the plaintiffs allege that Travis was deprived of his rights under the Connecticut Constitution.  <u>See</u> Second Amended Complaint, ¶160.  Article eighth, §1 of the state constitution provides that: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation."  Article first, §20, as amended, provides that: "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political

---

[1]  In <u>Binette</u>, the defendants, a police chief and one of his officers, allegedly entered the plaintiffs' home without permission or a warrant.  <u>Id</u>. at 26.  The chief allegedly threatened the wife with arrest and imprisonment and pushed her into a wall and over a table.  <u>Id</u>.  Then, outside the home, the chief allegedly slammed the husband's head repeatedly against a car, and the other officer then struck the husband in the head and kicked him while he was on the ground experiencing an epileptic seizure.  <u>Id</u>.

rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

No court in Connecticut has recognized a private cause of action for money damages under either article eighth, §1, or article first, §20, of the state constitution. Moreover, the Connecticut Supreme Court has exhibited a reluctance to create a private cause of action under the state constitution. See generally, ATC Partnership and Kelley Property. In Kelley Property, *supra*, the Court noted that, as a general rule, a plaintiff should not be able to maintain a *Bivens* action unless he can establish that he would otherwise be without any remedy. 226 Conn. at 337-38, 339. Assuming *arguendo* that the School Defendants discriminated against Travis on account of his disability, then Travis has remedies available to him under §504 of the Rehabilitation Act and the ADA. Indeed, he has brought claims pursuant to both statutes. Similarly, to the extent Travis was otherwise denied a FAPE, he has remedies pursuant to the IDEA. As such, a private cause of action should not be recognized in this case.

In addition, the New Milford School District and the New Milford Board of Education are entitled to summary judgment because even if a private cause of action existed against the individuals, such an action could not be maintained against them as municipal entities. In Aselton, *supra*, the superior court held that a *Bivens* action for an alleged constitutional violation is not cognizable against a municipality. In rendering its decision, the court followed the Connecticut Supreme Court's lead and looked to federal precedent for guidance. See id. at *13, *citing*, Kelley Properties, *supra*, and ATC Partnership, *supra*. Specifically, the court referred to the United States Supreme

31

Court's holding in <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994).  In <u>FDIC</u>, the Supreme Court

unanimously held that a *Bivens* action could not be maintained against a federal

agency.  <u>Id</u>. at 485-86.  The Supreme Court noted that the purpose of *Bivens* was to

deter the *officer* from committing a constitutional violation.  <u>See</u> <u>id</u>. at 485.

The plaintiffs' claims under the Connecticut Constitution should also fail because

there is no evidence to support a violation of the cited provisions.  Article eighth, §1

requires that there be free schools in the state.  No violation of this provision has

occurred as Travis has always been afforded a free education.  There is also no

evidence of discrimination on account of a disability.  Assuming *arguendo* that Travis

was denied a FAPE, that fact alone does not equate to discrimination.  <u>See</u> §D above.

The plaintiffs have set forth no evidence of discriminatory animus.

**I.      The Plaintiffs' Common Law Tort Claims Fail Because The School
Defendants Are Entitled To Sovereign Immunity.**

The School Defendants are entitled to sovereign immunity as to Counts One

(negligence), Two (malpractice), Seven (intentional infliction of emotional distress), and

Eight (negligent infliction of emotional distress) because their alleged wrongful conduct

stemmed from their actions as agents of the state.

A local body carrying out a state mandated function as an agent of the state

enjoys sovereign immunity in certain circumstances.  <u>See</u> <u>Heigl v. Board of Education</u>,

218 Conn. 1, 3-4 (1991); <u>R. A. Civitello Co., v. New Haven</u>, 6 Conn. App. 212, 218

(1986).  The doctrine of sovereign immunity "protects the state, not only from ultimate

liability for alleged wrongs, but also from being required to litigate whether it is so liable."

See Shay v. Rossi, 253 Conn. 134, 165 (2000).  Because the state can act only through its officers and agents, a suit brought against an officer or agent of the state is, in essence, a suit against the state.  See id. at 158.

"[L]ocal boards of education are agents of the state for some purposes and agents of the municipality for others."  Purzycki v. Fairfield, 244 Conn. 101, 112, 708 A.2d 937 (1998).  To the extent a local board of education is acting as an agent of the state, that board and its employees, are entitled to sovereign immunity from suit.  See id.  "[T]he furnishing of an education for the public is a state function and duty," as set forth by article eighth, §1 of the Connecticut Constitution, which provides that "[t]here shall always be free public elementary and secondary schools in the state."  Town of Cheshire v. McKenney, 182 Conn. 253, 257-58, 438 A.2d 88 (1980).  Boards of education are further mandated by the state to identify and determine the eligibility of children requiring special education and to develop and maintain suitable educational programs.  See Conn. Gen. Stat. §10-76d.

Because boards of education are acting as agents of the state when they provided special education services, they are entitled to sovereign immunity as to any common law claims stemming from the provision of those services.  See Todd M. v. Richard L., 44 Conn. Supp. 527, 539, 696 A.2d 1063 (Conn. Super. Ct. July 14, 1995) (held that sovereign immunity applied to defendants who were providing transportation services to a student as part of the student's IEP); M.H. v. Bristol Bd. of Educ., 169 F. Supp.2d 21, 38 (D. Conn. 2001) (granting summary judgment for defendants on claims of assault, infliction of emotional distress and negligence, where claims stemmed from

the provision of special education services); <u>Milhomme v. Levola</u>, 14 Conn. L. Rptr. 517 (Conn. Super. Ct. July 14, 1995); <u>Crandall v. Groton Bd. of Educ.</u>, 10 Conn. L. Rptr. 430 (Conn. Super. Ct. Nov. 26, 1993) (unpublished cases attached as **Exhibit X**).

In this case, Travis Myslow was entitled to special education services. The Myslows' claims stem from one or more of the School Defendants' conduct in developing, implementing, and maintaining in inappropriate IEP for Travis, and/or otherwise failing to educate their son. All of the alleged conduct, from suggesting an ADHD diagnosis and recommending medication to promoting Travis to the 6th grade over the parents' objection, falls within the scope of the defendants' state duties to identify children requiring special education services and to implement a plan to provide those services. As such, the School Defendants are entitled to summary judgment as to the negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress claims. In addition, Josephine Rositano is entitled to summary judgment as to the malpractice claim.

J.    **The Plaintiffs' Common Law Tort Claims Fail Because The School Defendants Are Entitled To Governmental Immunity.**

1.    **The New Milford School District And The New Milford Board Of Education Are Entitled To Governmental Immunity As To Counts One, Two, Seven And Eight.**

The New Milford School District and the New Milford Board of Education are entitled to governmental immunity as to the plaintiffs' claims of negligence (Count One), malpractice (Count Two), intentional infliction of emotional distress (Count Seven) and negligent infliction of emotional distress (Count Eight) because: (a) the plaintiffs have

failed to advance any statutory basis for abrogating the municipal School Defendants

governmental immunity; and (b) the plaintiffs have failed to state a claim pursuant to

Connecticut General Statutes §7-465.

> **a.    The plaintiffs have failed to advance any statutory basis for abrogating the municipal School Defendants' governmental immunity.**

Under Connecticut law, municipalities are provided with immunity from liability for

their arguably tortious acts, even where their employees are exposed to tort liability.

See Williams v. New Haven, 243 Conn. 763, 766, 707 A.2d 1251 (1998); Gordon v.

Bridgeport Housing Authority, 208 Conn. 161, 165, 544 A.2d 1185 (1988); Ryszkiewicz

v. New Britain, 193 Conn. 589, 593, 479 A.2d 793 (1984).  Common law governmental

immunity may, however, be abrogated by statute.  See Shore v. Stonington, 187 Conn.

147, 154, 444 A.2d 1379 (1982).  The general rule developed in Connecticut's

jurisprudence is that a municipality is immune from liability in tort unless the legislature

has enacted a specific statute abrogating that immunity.  See Williams, 243 at 766-67;

Pane v. City of Danbury, 267 Conn. 669, 677-78, 841 A.2d 684 (2004).  In other words,

a plaintiff cannot prevail in a direct action against a municipality, unless the plaintiff cites

to a statutory authority to abrogate that immunity.  See Williams, 243 Conn. at 769

(holding that plaintiff's negligence action was barred as she failed to advance any

statutory basis to abrogate the City's immunity); Pane, 267 Conn. at 677-78 (affirming

summary judgment in favor of City on common law invasion of privacy claim where

plaintiff failed to cite any statute abrogating governmental immunity).

As in <u>Williams</u> and <u>Pane</u>, the plaintiffs in this case have likewise failed to cite any statute that abrogates the New Milford School District's or the New Milford Board of Education's immunity.  The School District and the Board of Education are political subdivisions of the state, similar to a municipality, and are entitled to the same protection as a municipality.  <u>See</u> <u>e.g.</u>, <u>Caruso v. Milford</u>, 75 Conn. App. 95, 815 A.2d 167, *cert. denied*, 263 Conn. 907, 819 A.2d 838 (2003); <u>Heigl v. Bd. of Educ.</u>, 218 Conn. 1, 3, 587 A.2d 423 (1991).  Accordingly, the doctrine of governmental immunity is fatal to the plaintiffs' common law tort claims, and the municipal School Defendants are entitled to summary judgment in their favor.

### b.    The plaintiffs have failed to state a claim against pursuant to Connecticut General Statutes §7-465.

In the instant action, the plaintiffs appear to invoke the municipality indemnification statute, Conn. Gen. Stat. §7-465.  <u>See</u> Second Amended Complaint, ¶19.  Notice of an intention to commence suit, however, was not filed until January 3, 2003, more than six months after any cause of action accrued, and the complaint sets forth no actual claim for indemnification.  As such, any claim pursuant to §7-465 fails as a matter of law.

Connecticut General Statutes §7-465 provides that a political subdivision of the state indemnify its employees, officers or agents under certain circumstances.  In order to bring an action pursuant to §7-465, a plaintiff must direct one count against the individual employee, officer or agent setting forth the alleged negligent acts or omissions and another count against the political subdivision for indemnification.  A

claim for indemnification pursuant to Conn. Gen. Stat. § 7-465 must be pled in two counts: "the first, alleging the facts essential to the legal liability of the employee, and the second, the facts essential to the legal liability of the municipality under the Statutes." See Martyn v. Donlin, 148 Conn. 27, 32 (1961); see also, Wu v. Town of Fairfield, 204 Conn. 435, 438 (1987).  In this case, the plaintiffs have failed to plead two separate counts, one against one or more individual defendants, and one against the New Milford School District or the New Milford Board of Education.  The plaintiffs fail to even mention a claim for indemnification.   Accordingly, the plaintiffs have failed to plead a cause of action pursuant to §7-465, and as such, any claim for indemnification fails as a matter of law.

In addition, the municipal School Defendants are entitled to summary judgment because the plaintiffs failed to provide timely notice of intent to sue pursuant to §7-465. Connecticut General Statutes §7-465 provides, in pertinent part, that:

> No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly . . . <u>unless written notice of the intention to commence such action</u> and of the time when and the place where the damages were incurred or sustained <u>has been filed with the clerk of such municipality within six months after such cause of action has accrued</u>.

See Conn. Gen. Stat. §7-465 (a) (underline added).  Written notice of the intention to commence an action is a condition precedent to bringing an action against a municipality for indemnification of its employees.  "When a plaintiff seeks to take advantage of the statute, the liability of the municipality . . . is dependent upon the giving of proper statutory notice."  See Fraser v. Henninger, 173 Conn. 52, 56 (1977).

In this case, the plaintiffs failed to give notice of their intention to commence suit until January 3, 2003, more than six months after Travis was evaluated by Josephine Rositano, more than six months after medication was prescribed, more than six months after Travis stopped taking any medication, more than six months after Dr. Neu was brought on board to direct Travis' IEP, and more than six months after Travis completed the sixth grade.  As such, any claim for indemnification pursuant to §7-465 must fail.

     **2.    The School Defendants Are Entitled to Governmental Immunity As To Counts One, Two And Eight Both At Common Law And Pursuant To Connecticut General Statutes §52-557n.**

All of the School Defendants are also entitled to governmental immunity as to the plaintiffs' claims of negligence (Count One), malpractice (Count Two), and negligent infliction of emotional distress (Count Eight) because they were engaged in public, discretionary acts.

It is well-established at common law that municipalities and their employees were immune from liability for actions taken in discharging their public duties, so long as their actions were discretionary in nature.  See Heigl, *supra*, 218 Conn. at 4; Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131 (1989); Gordon, *supra*, 208 Conn. at 167. In addition, there is also statutory immunity that bars claims against municipalities, boards of education and their employees, for negligence in the performance of discretionary governmental acts.  See Conn. Gen. Stat. §52-557n(a)(2)(B).  Connecticut General Statutes §52-557n reads, in pertinent part, as follows:

> (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: … (B) negligent acts or omissions which require the exercise of judgment or

discretion as an official function of the authority expressly or impliedly granted by law.

<u>See</u> Conn. Gen. Stat. §52-557n(a)(2)(B).

The availability of governmental immunity as a defense depends on two factors: (1) whether the employee's action was public or private in nature, and (2) whether the employee was engaged in a discretionary or governmental act, or a ministerial act.  <u>See</u> <u>Gordon</u>, <em>supra</em>, 208 Conn. at 167-70; <u>see</u> <u>also</u>, <u>Heigl</u>, <em>supra</em>, 218 Conn. at 4-5; <u>Shore</u>, <em>supra</em>, 187 Conn. at 152.   "A municipal employee ... has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act."  <u>Evon</u>, <em>supra</em>, 211 Conn. at 505; <u>Burns v. Board of Education</u>, 228 Conn. 640, 645 (1994).

### a.     The School Defendants' actions were public in nature.

The first step in determining the applicability of the doctrine of governmental immunity is to ascertain whether the defendant employees were engaged in a public or private duty.  <u>See</u> <u>Gordon</u>, <em>supra</em>, 208 Conn. at 167-70.  If the duty imposed upon the employee is such that its performance or omission affects an individual in a manner different in kind than the general public, then the action is private in nature, and an action may be maintained against the public official.  <u>See</u> <u>Roman v. Stamford</u>, 18 Conn. App. 213, 220, 547 A.2d 97, <em>affirmed</em>, 211 Conn. 396 (1989); <u>see</u> <u>also</u>, <u>Shore</u>, <em>supra</em>, 187 Conn. at 152.  Conversely, an act that affects an individual in the same manner as it would the general public is public in nature.  <u>See</u> <u>Roman</u>, 18 Conn. App. at 220.   A public duty serves and affects the public generally.

The issue of whether an employee was engaged in a public or private duty is a question of law for the court to decide.  See Redfearn v. Ennis, 28 Conn. at 398, 401, 610 A.2d 1338 (1992); Colon v. City of New Haven, 60 Conn. App. 178, 181-82, cert. denied, 255 Conn. 908 (2000); see e.g., Heigl, supra, 218 Conn. at 5-6; Evon, supra, 211 Conn. at 506-07.

"Municipalities, by providing public education, are engaged in government duties."  Couture v. Board of Education, 6 Conn. App. 309, 312 (1986); see e.g., Heigl, supra, 218 Conn. at 8 (implementation of open campus policy is a public act).  As set forth in §H above, the furnishing of a public education and the provision of special education services are state actions, mandated by statute.  As such, the actions of the School Defendants in this case involved public duties.

**b.      The School Defendants were engaged in discretionary acts.**

The second step in assessing municipal liability is to determine whether the municipal employee was engaged in a discretionary or ministerial act.  "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature....  On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action."  Gauvin v. New Haven, 187 Conn. 180, 184 (1982).  The doctrine of governmental immunity will protect municipal employees from liability for their negligent performance of governmental acts, unless those acts are ministerial in nature.  See Heigl, supra, 218 Conn. at 4.  Where the duty to act involves the exercise of discretion,

40

the municipal employee enjoys a qualified immunity, "unless the duty to act is clear and unequivocal."  Shore, *supra*, 187 Conn. at 153.

The determination of whether an act is discretionary or ministerial may be decided as a matter of law.  See Evon, *supra*, 211 Conn. at 505-07; Gordon, *supra*, 208 Conn. at 170; Colon v. City of New Haven, 60 Conn. App. 178, 181-183 (2000); Segreto v. City of Bristol, 71 Conn. App. 844, 855 (2002).  Where a complaint contains no allegations that the municipality was required to perform the duties alleged in a prescribed manner and failed to do so, it is deemed apparent from the complaint that the plaintiff has not alleged the performance of a ministerial duty.  See Colon, 60 Conn. App. at 182-83.  In the absence of mandatory procedures or a directive, the defendants' duties must be regarded as discretionary.  See Beach v. Regional School District No. 13, 42 Conn. App. 542, 554, 682 A.2d 118, *cert. denied*, 239 Conn. 939 (1996) (finding that the determination as to when to clear a school sidewalk of snow and ice was discretionary where there was no policy of inspecting and keeping the walkways clear); see also, Heigl, *supra*, 218 Conn. at 8-9 (implementation of open campus policy is discretionary).

In the present case, the School Defendants were engaged in discretionary acts. The gravaman of the plaintiffs' complaint is that the School Defendants failed to implement an appropriate educational program and misdiagnosed Travis' condition. These actions necessarily involve discretion.  Neither the New Milford School District nor the New Milford Board of Education had a policy or directive in place regarding the specific steps that should be taken to educate and promote students receiving special

education services.  Quite to the contrary, federal law requires that boards of education implement individualized education plans for such students.  The specific method or approach utilized to educate a student receiving special education services is left to the discretion and judgment of the student's PPT.  As such, the plaintiffs' claims are barred by the doctrine of governmental immunity as a matter of law.

> **3.    The New Milford School District And The New Milford Board Of Education Are Entitled To Governmental Immunity As To Count Seven Pursuant To Connecticut General Statutes §52-557n.**

In addition, the New Milford School District and New Milford Board of Education are also entitled to governmental immunity as to the plaintiffs' common law claim of intentional infliction of emotional distress (Count Seven) because Connecticut General Statutes §52-557n expressly immunizes political subdivisions of the state from liability for damages caused by the intentional acts of its employees.  As explained above, the New Milford School District and New Milford Board of Education are both political subdivisions of the state.

Section 52-557n(a)(2) of the General Statutes states, in pertinent part, that:

> [A] political subdivision of the State shall not be liable for damages to person or property caused by: (A) acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct.

Conn. Gen. Stat. §52-557n(a)(2).  The statute is unequivocal.  A political subdivision of the State shall not be liable for willful misconduct.  The terms willful and intentional are interchangeable.  See O'Connor v. Bd. of Educ. of the Town of Wethersfield, 90 Conn. App. 59, _ A.2d _ (2005); Pane v. City of Danbury, 267 Conn. 669, 685 (2004); Bauer v.

Waste Management of Connecticut, Inc., 239 Conn. 515, 527 (1996); Dubay v. Irish, 207 Conn. 518, 533 n.8 (1988).  As such, the Connecticut Supreme Court has held that Connecticut General Statutes §52-557n precludes an intentional tort claim against a municipal entity.  See Pane, 267 Conn. at 685; see also, O'Connor, *supra*.

Therefore, the New Milford School District and New Milford Board of Education are entitled to summary judgment as to the plaintiffs' claim of intentional infliction of emotional distress.

**K.    The Plaintiffs Have Failed To State A Claim Of Negligence Or Malpractice Against Any Of The School Defendants.**

**1.    The Plaintiffs Cannot Establish Negligence Or Malpractice Against The School Defendants Absent Expert Testimony.**

The plaintiffs' common law negligence claim against the School Defendants, and their malpractice claim against Josephine Rositano, must also fail because the plaintiffs have failed to offer admissible expert testimony as to the applicable standard of care, and the alleged breach of that standard.

"A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence." Santopietro v.City of New Haven, 239 Conn. 207, 225 (1996), *quoting*, Catz v. Rubenstein, 201 Conn. 239, 44, 513 A.2d 98 (1986).  In a negligence case where the defendant is alleged to have particular skill and expertise that is beyond the knowledge of an ordinary trier of facts, expert testimony is required. See Santopietro, 239 Conn. 226; Monterose v. Cross 60 Conn. at 655, 658, 760 A.2d 1013 (2000).

In <u>Santopietro</u>, the plaintiff sought to recover damages for personal injuries sustained when he was struck by a baseball bat during an umpired softball game. The plaintiff sued the individual who threw the bat as well as the two umpires. As to the negligence claim against the umpires, the trial court set aside the jury verdict in favor of the plaintiff. <u>See id</u>. at 210. On appeal, the Supreme Court analyzed the plaintiff's claim in terms of *professional negligence* or malpractice. <u>See id</u>. at 226.[2] The Court concluded that an umpire possesses knowledge that is beyond the experience and understanding of the ordinary fact finder, and that expert testimony was required to establish whether the defendant umpires breached the standard of care. <u>Id</u>. at 227, 229. Finding that the plaintiffs failed to prove by expert testimony that the umpires breached the applicable standard, the Court affirmed the directed verdict. <u>Id</u>. at 232.

In <u>Matyas v. Mink</u>, 37 Conn. App. 321 (1995), the plaintiff filed a negligence suit against the engineer who designed his septic system. The jury returned a verdict in favor of the plaintiff, but the trial court set aside the verdict. On appeal, the Appellate Court affirmed the trial court's decision to set aside the verdict on the ground that the plaintiff failed to establish a breach of the standard of care through expert testimony. <u>Id</u>. at 329. The Court noted that the issues in the case were technical and required training and technical expertise. <u>See id</u>. at 327. The Court specifically rejected the plaintiff's

---

[2] The Court had previously defined professional negligence as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." <u>Id</u>. at 226, *quoting*, <u>Davis v. Margolis</u>, 215 Conn. 408, 415 (1990).

argument that the evidence presented was so obvious as to be clear to a layperson without expert assistance.  <u>See</u> <u>id</u>. at 329.

In <u>LePage v. Horne</u>, 262 Conn. 116 (2002), the Connecticut Supreme Court required expert testimony on the standard of care for attending to a sleeping infant in order to prevent SIDS.  In so doing, the Court rejected the plaintiff's argument that "tending to sleeping infants" was a common experience that required no expert testimony.  <u>See</u> <u>id.</u> at 125-26.

In this case, the plaintiffs have sued ten individual School Defendants for failing to "exercise the degree of care or skill ordinarily exercised *by those engaged in their practice*."  <u>See</u> Second Amended Complaint, ¶131 (emphasis added).  Expert testimony is required "when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors."  <u>Bader v. Methodist Orthodox Synagogue</u>, 148 Conn. 449, 454, 172 A.2d 192 (1961).  In the instant case, the plaintiffs' claims question the appropriateness of the assessment, evaluation, and provision of special education services for Travis.  The issues involved are beyond the ordinary knowledge and experience of jurors, and as such expert testimony is required.  <u>See</u> <u>Santopietro</u>, *supra*.

The plaintiffs have disclosed Dr. Peter Breggin as their "expert witness" against the School Defendants.  Dr. Breggin has no opinions as to the claimed negligence of Raymond Avery, Thomas Mulvihill, Paula Kelleher, Denis Dolan, Jean Malcolm, Adele Johnson, Deborah Shelley and Robyn Viklund, and the plaintiffs have not offered any other expert testimony as to these defendants.  As such, Mr. Avery, Mr. Mulvihill, Ms.

Kelleher, Mr. Dolan, Ms. Malcolm, Ms. Johnson, Ms. Shelley and Ms. Viklund are entitled to summary judgment as to the plaintiffs' negligence count (Count One).

Dr. Breggin does find fault with Josephine Rositano, JeanAnn Paddyfote and the New Milford School System. As the former school nurse, Ms. Rositano is the only one of the School Defendants who has been sued for malpractice. As set forth in the School Defendants' motion to preclude, however, Dr. Breggin is not qualified to testify as an expert witness in this case. Accordingly, his opinions are inadmissible. The plaintiffs have not offered any other expert testimony as to the claimed negligence of the School District and the two remaining individual defendants or as to the claimed malpractice of Ms. Rositano. Accordingly, Ms. Rositano, Ms. Paddyfote, the New Milford School District and the New Milford Board of Education are likewise entitled to summary judgment in their favor as to Counts One (negligence) and Two (malpractice).

### 2. Educational Malpractice Is Not A Recognized Cause Of Action In Connecticut.

The plaintiffs' negligence claim also fails because it is premised on a theory of educational malpractice. Connecticut does not recognize an educational malpractice claim sounding in tort. See Gupta v. New Britain General Hosp., 239 Conn. 574, 687 A.2d 111 (1996); Vogel v. Maimonides Academy of Western Connecticut, Inc., 58 Conn. App. 624, 754 A.2d 824 (2000). "[T]hese claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached." Gupta, 239 at 591. Courts have almost universally refused to recognize a cause of action under such circumstances.

**L.     The Plaintiffs Have Failed To State A Claim Of Intentional Infliction Of Emotional Distress Against Any Of The School Defendants.**

In Count Seven, the plaintiffs allege intentional infliction of emotional distress.  In order to prevail on a cause of action for intentional infliction of emotional distress, the plaintiffs must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  1 RESTATEMENT (SECOND) OF TORTS §46, p. 73, comment (d).  In addition, the conduct must be "especially calculated to cause, and does cause mental distress of a very serious kind."  DeLaurentis v. New Haven, 220 Conn. 225, 266 (1991); W. Prosser & W. Keeton, Torts (5th Ed. 1984) §12, p. 64.

The question of whether the alleged conduct rises to the level of extreme and outrageous conduct is to be determined, in the first instance, by the Court.  See Campbell v. Town of Plymouth, 74 Conn. App. 67, 78 (2002); Armstead v. Stop & Shop Co., Inc., No. 3:01cv1489 (JBA) (D. Conn. 2003); Schug v. The Pyne-Davidson Co., No. 3:99cv1493 (CFD) (D. Conn. 2001); Reed v. Town of Branford, 949 F. Supp. 87, 91 (D.

Conn. 1996); RESTATEMENT (SECOND) OF TORTS §46, comment (h) (1965).  In this case, the question should be resolved in favor of the School Defendants.

In Appleton v. Board of Educ. of Stonington, 254 Conn. 205, 211 (2000), the plaintiff, a teacher, alleged that the defendants made condescending comments to her in front of colleagues; alerted her daughter that she "had been acting differently" and that she should take a few days off; called the police, who escorted the plaintiff from the building; subjected the plaintiff to two psychiatric examinations; and forced the plaintiff to take a suspension and leave of absence, and ultimately forced her to resign.    The Appellate Court determined that the plaintiff alleged sufficient facts to support a claim for intentional infliction of emotional distress.  See Appleton v. Board of Educ., 53 Conn. App. 252, 266 (1999).  The Supreme Court reversed, however, holding that the Appellate Court improperly determined that the defendants were not entitled to summary judgment.  See Appleton, 254 Conn. at 207.  The Supreme Court concluded that the alleged occurrences, although distressing, did not constitute extreme and outrageous conduct for purposes of an intentional infliction of emotional distress claim. Id. at 211.

In the years since *Appleton*, the Connecticut Appellate Court has repeatedly thrown out claims of intentional infliction of emotional distress where the conduct does not exceed all bounds of decency.

In Dollard v. Board of Education, 63 Conn. App. 500, 552 (2001), the plaintiff alleged that the defendants orchestrated a plan to force her to resign.  As part of said plan, the defendants hypercritically scrutinized every aspect of the plaintiff's work and

personal life, transferred her to a school where she did not want to be assigned, publicly admonished her for chewing gum, being habitually late and disorganized, and ultimately forced her to resign.  See id. at 552-53.  The Appellate Court held that the conduct was not extreme and outrageous as a matter of law, and affirmed the trial court's granting of the defendant's motion to strike.  Id. at 554.

In Bator v. Yale-New Haven Hospital, 73 Conn. App. 576, 577 (2002), the plaintiff alleged that he was subjected to abusive and disparate treatment during the course of his employment.  Specifically, the plaintiff alleged that: his supervisor scheduled him to report to work when he was under a physician's care, and then, when the plaintiff failed to report, the supervisor recommended discipline; the plaintiff received less compensation than other less experienced employees in his position; a supervisor falsely accused him of endangering a patient's life after a nurse had complained that the plaintiff was rude; a supervisor suggested that the plaintiff seek psychiatric help when he complained about his schedule and assignments; another supervisor recommended that the plaintiff attend anger management classes after he had a confrontation with a nurse; the plaintiff was given a written warning in response to a complaint about a change in his monthly rotation assignment; and a supervisor gave the plaintiff a final written warning for violence after another altercation with a nurse about a patient's care. See id. at 577-78.  The Appellate Court held that the conduct was not extreme and outrageous, and affirmed the trial court's granting of the defendant's motion to strike. Id. at 579.

In <u>Heim v. California Federal Bank</u>, 78 Conn. App. 351 (2003), the plaintiff sought to recover damages from the law firm that instituted a mortgage foreclosure action against him on behalf of three banks.  The plaintiff alleged that: the attorney blamed the plaintiff on the record for causing the delay in the case; the banks, through the attorney, filed an action without having the deed to the premises; the defendants refused attempts to resolve the matter, causing the debt to increase by $20,000; the attorney withheld certain discoverable documents; the defendants refused to litigate the motion for a deficiency judgment, which had been filed solely to punish the plaintiff or to force him to remain in the state; the attorney sent the plaintiff a letter than contained several falsehoods; the attorney refused to withdraw the motion for deficiency judgment after it was dismissed by the court, thereby requiring the plaintiff to remain in the state for an additional four months in case the banks attempted to open the judgment; and the plaintiff was required to appear in court on numerous occasions.  <u>See</u> <u>id</u>. at 369-70. The Court held that the alleged conduct was not extreme and outrageous, and affirmed the trial court's decision granting the defendant's motion to strike.  <u>Id</u>. at 371.

In <u>Alexandru v. West Hartford Obstetrics & Gynecology</u>, 78 Conn. App. 521 (2003), the plaintiff alleged that the defendant improperly released her medical records that contained information regarding her emotional and psychological condition.  The plaintiff further alleged, that in so doing, the defendant "acted toward [the] plaintiff with malice, oppression, willful and conscious disregard of [the] plaintiff's rights, entitling the plaintiff to an award of punitive damages."  <u>Id</u>. at 526.  The Court affirmed the trial court's granting of the defendant's motion for summary judgment, noting that the

plaintiff's allegation "falls well short of setting forth a cause of action for intentional infliction of emotional distress."  Id. at 527.

In Armstead, supra, the plaintiff took a medical leave of absence due to a physical impairment.  The plaintiff alleged that when he tried to return to work, subject to bending and lifting restrictions, the defendant "refused to accommodate [his] restrictions although similar accommodations had been made for other employees, and would not permit plaintiff to return to work unless completely recovered."  The plaintiff further alleged that he was constructively discharged when the defendant refused to schedule the plaintiff for work.  The District Court (Arterton, J.), applying Connecticut law, held that the alleged conduct was not extreme and outrageous as a matter of law, and granted the defendant's motion to dismiss.  The Court stated that "claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is itself outrageous or extreme."  Id.

In this case, the plaintiffs have likewise failed to set forth a claim for intentional infliction of emotional distress.  The plaintiffs' claims against the School Defendants stem from the alleged misdiagnosis of Travis Myslow as having ADHD and/or ADD and the suggestion that Travis be medicated, and/or a failure to educate.  The majority of the School Defendants are being sued solely because of their involvement in Travis' PPT meetings.  As a matter of law, the plaintiffs have failed to set forth any evidence of conduct by any of the School Defendants that reasonable minds could find atrocious and utterly intolerable to a civilized society.

**M.    The Plaintiffs Have Failed To State A Claim Under Connecticut General Statutes §10-76b-4.**

Connecticut General Statutes §10-76b-4 does not provide for a private cause of action.  Section 10-76b-4 is entitled "compliance," and reads, in pertinent part, as follows:

> So long as it complies with the requirements set forth in these regulations and subject to the powers of the state board of education, a board of education shall receive payment for the cost of special education and related services according to the terms of sections 10-76a to 10-761, inclusive, of the General Statutes.
> (a)    Monitoring.    The state board of education shall conduct such monitoring activities, program audits and/or fiscal audits as it deems necessary to ensure that each board of education complies with the requirements of these regulations.
> (b)    Compliance procedures.    The following procedures shall apply in the determination of compliance with the requirements of these regulations.

Conn. Gen. Stat. §10-76b-4.  The penalty for a board's failure to comply with the requirements of these regulations is specifically identified within the statute itself.

> (3)    In the event that a board of education does not comply with the requirements of these regulations or does not implement plans for such compliance within a reasonable period of time, the state board of education shall take such action as it may deem appropriate pursuant to its authority as set forth in sections 10-4a and 10-4b of the General Statutes.

Conn. Gen. Stat. §10-76b-4(b)(3).  The statute does not set forth any rights of an individual to bring a direct action for money damages against a board of education or its employees.  Accordingly, summary judgment should enter in favor of the School Defendants.

VI.    **CONCLUSION**

For the reasons set forth above, the School Defendants, New Milford School

District, New Milford Board of Education, Raymond Avery, JeanAnn Paddyfote, Thomas

Mulvihill, Paula Kelleher, Denis Dolan, Jean Malcolm, Josephine Rositano, Adele

Johnson, Deborah Shelley and Robyn Viklund, are entitled to summary judgment in

their favor as to the plaintiffs' Second Amended Complaint in its entirety.

DEFENDANTS,
NEW MILFORD SCHOOL DISTRICT, NEW
MILFORD BOARD OF EDUCATION,
RAYMOND AVERY, JEANANN
PADDYFOTE, THOMAS MULVIHILL,
PAULA KELLEHER, DENIS DOLAN, JEAN
MALCOLM, JOSEPHINE ROSITANO,
ADELE JOHNSON, DEBORAH SHELLEY,
and ROBYN VIKLUND

By/s/Alexandria L. Voccio
    Alexandria L. Voccio, ct21792
    Howd & Ludorf, LLC
    65 Wethersfield Avenue
    Hartford, CT  06114
    (860) 249-1361
    (860) 249-7665 (Fax)
    E-Mail:  avoccio@hl-law.com

**<ins>CERTIFICATION</ins>**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 15th day of August, 2005.

Deborah G. Stevenson, Esquire
226 East Flag Swamp Road
Southbury, CT  06488

Alan C. Milstein, Esquire
Michael Dube, Esquire
4300 Haddonfield Road, Suite 311
Pennsauken, NJ  08109

Richard A. O'Connor, Esquire
Christine A. Robinson, Esquire
Leslie Gold, Esquire
Sachner & O'Conner
The Crossroads West
765 Straits Turnpike, Bldg 2, Ste, 1001
Middlebury, CT  06762-1323

Katherine C. Callahan, Esquire
Benjamin J. Berger, Esquire
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT  06123-1277

/s/Alexandria L. Voccio
Alexandria L. Voccio

54