EXHIBIT B

# DEBORAH G. STEVENSON
### ATTORNEY-AT-LAW
*226 East Flag Swamp Road*
*Southbury, CT 06488*
*(860) 354-3590*
*Fax: (860) 354-9360*
*Email: _____*

September 8, 2001

Thomas G. Badway
Due Process Unit
Department of Education
25 Industrial Park Road
Middletown, CT 06457-1543

**Re: Request for Due Process Hearing, Travis Myslow v. New Milford Board of Education**

Dear Mr. Badway:

    Currently there is a dispute between the New Milford Public School District and my clients, Cindy and Matthew Myslow, 3 Halletts Road, New Milford, CT 06776, regarding the education of their son, Travis. Travis was enrolled for the 2000-2001 school year in the John Pettibone elementary school. The Myslows have requested homebound instruction for the 2001-2002 school year due to his emotional condition affecting his mental welfare until such time as issues in this dispute have been resolved.

    Travis has been diagnosed as having a specific learning disability, i.e., dyslexia and dysgraphia. When Travis was enrolled in the Pettibone School, he was reading at a 1.8 grade level. After four years at that school, while in the fifth grade, Travis was reading at a 2.3 grade level. The New Milford School District wants to promote Travis to the sixth grade. His parents are opposed to this. Several years ago, the New Milford School district recommended that Travis be placed on Ritalin or similar drugs claiming he had ADD or ADHD. His parents acquiesced. For approximately three years he was on drugs, for three years the drugs were of little or no help, sometimes making him ill. A recent independent evaluation by Neuropsychologist Dr. Armin Thies of Yale Medical School revealed that Travis previously had been misdiagnosed and, in fact, does not have ADD or ADHD. Dr. Thies indicated that Travis' "inattention is a manifestation of his emotional condition, particularly in reaction to academic tasks" and that he suffers from "borderline significant depression and anxiety, indicating psychological distress".

    The Myslows are requesting due process regarding the following:

1. At a PPT meeting on June 14, 2001, the Myslows rejected the school district's proposed IEP promoting Travis to the sixth grade at Schaghticoke Middle School, New Milford.
2. At a PPT meeting on June 14, 2001, the Myslows disagreed that the evaluations completed as of that date were sufficient to diagnose Travis' learning disabilities, social, emotional or behavioral problems.
3. At a PPT meeting on June 14, 2001, the Myslows requested an independent psycho-educational evaluation and an independent reading evaluation of Travis.
4. On July 23, 2001 and July 26, 2001, Associate Clinical Professor at Yale Medical School, Clinical Neuropsychologist Dr. Armin Thies, conducted evaluations of Travis.
5. On or about August 15, 2001, Dr. Thies completed his report.
6. On August 31, 2001, the Myslows hand delivered Dr. Thies' report to the school district.
7. At a PPT meeting on August 23, 2001, the school district refused "to pay for an independent evaluation by Dr. Thies" after offering "50% payment of Dr. Thies' evaluation of $1680. (BOE offered to pay $840)."
8. At a PPT meeting on August 23, 2001, the school district "agreed to fund an evaluation by Dr. Mary White-Roath as amended on the 8/23/01 letter to Dr. Paddyfote."
9. At a PPT meeting on August 23, 2001, the school district "List of Recommendations" included one "to fund an independent reading evaluation as set forth in the letter (8/23/01) sent to Dr. Paddyfote with revisions made by PPT." Dr. Paddyfote added a notation to that letter, "The district agrees to fund the evaluations listed above as long as the parent grants permission for staff to speak to Dr. Mary White-Roath without conditions."
10. In a letter dated September 4, 2001, addressed to Dr. JeanAnn Paddyfote, Assistant Superintendent, New Milford Public Schools, the Myslows informed her that "because Travis has an appointment with Dr. White-Roath on September 8, 2001, and because [they] see no need to extend this process any longer than necessary, despite their continuing objection, [they] hereby grant permission for you to make your initial contact with Dr. White-Roath without conditions."
11. On September 8, 2001, Dr. White-Roath conducted an evaluation of Travis.
12. At a PPT meeting on August 23, 2001, the Myslows submitted a letter from Dr. L. Robert Rubin, Travis' pediatrician, recommending "a trial of homebound instruction for Travis due to his current emotional condition affecting his mental welfare."
13. At a PPT meeting on August 23, 2001, the Myslows requested that Travis receive homebound instruction for the 2001-2002 school year on a temporary basis.
14. At a PPT meeting on August 23, 2001, the school district claims to have refused "to place Travis on homebound instruction" due to "Insufficient medial information/request to speak to Dr. Rubin."
15. At a PPT meeting on August 23, 2001, after continued discussion regarding homebound instruction, the school district provided the Myslows with forms to complete requesting homebound instruction and providing for release of information from Dr. Rubin to the school district, which forms were signed by the Myslows.

16. At a PPT meeting on August 23, 2001, after continued discussion regarding homebound instruction, the school district requested to speak with Dr. Rubin about the need for the homebound instruction. The Myslows agreed to allow such a discussion to take place as long as they were included in that discussion whereupon the form for release of medical information from Dr. Rubin to the school was signed by the Myslows.
17. Shortly after the August 23, 2001, PPT meeting, the Myslows obtained Dr. Rubin's signature on the homebound instruction request form and returned the form to the school district.
18. On August 31, 2001, a letter was sent to the school district indicating not only that the form for homebound instruction was properly signed and filed with the school, but also requesting that tutoring from a qualified special education reading specialist begin immediately.
19. On September 6, 2001, a letter was written to the school district's attorney informing her of details concerning Travis' emotional condition and notifying her that the Myslows and Dr. Rubin would be available for a conference call to provide more information on Wednesday, September 13, 2001, if the school district determined it necessary.
20. As of the date of this letter, the school has refused to provide Travis with any homebound instruction.

Whereupon, the Myslows are requesting that the hearing officer:
1. Issue an order for the school district to provide Travis with homebound instruction by a qualified special education reading specialist immediately at a location acceptable to the Myslows with such instruction continuing until such time as the parties can agree upon an appropriate education for Travis.
2. Issue an order for the school district to reimburse the Myslows for independent evaluations conducted to date.

The above issues should be considered separately from those currently in dispute before your agency in Case #01-294.

My clients also hereby notify you that they are seeking attorney's fees with regard to this matter.

Sincerely,

Deborah G. Stevenson

Cc: JeanAnn Paddyfote
Assistant Superintendent
Director, Pupil Personnel
C/o Attorney Nicole Bernabo
Attorney Gail K. Mangs