**Westlaw.**

Not Reported in A.2d    Page 1
Not Reported in A.2d, 2002 WL 31875443
**(Cite as: Not Reported in A.2d)**

H
Not Reported in A.2d, 2002 WL 31875443
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut.
John ASELTON, Administrator,
v.
TOWN OF EAST HARTFORD et al.
No. X07CV010079187S.

Dec. 3, 2002.

Spinella A. Paul & Associates Law Office, Hartford and Eisenberg, Anderson, Michalik & Lynch, New Britain, for John Aselton.
Howd & Ludorf, Hartford, for Town of East Hartford, James Shay, Patricia Learned, Deborah Rataic, William Madore and John Doe.
Alex Sostre, Somers, pro se.

SFERRAZZA, J.
*1 The town of East Hartford moves for summary judgment with respect to those counts of the complaint filed by the plaintiff, John Aselton, administrator of the estate of Brian Aselton, which pertain to it. There are several other defendants including municipal employees. The court heard argument on this motion on November 12, 2002.

Summary judgment shall enter if the pleadings and documentary proof submitted demonstrates that no genuine dispute exists as to material fact and that the movant is entitled to judgment as a matter of law. Practice Book § 17-49.

For purposes of this motion, it is undisputed that on January 23, 1999, Brian Aselton was a police officer employed by the municipality; that at about 9:20 p.m. on that date he was dispatched to the scene of a burglary in progress; that his arrival and presence disrupted the burglary; and that one of the burglars, Alex Sostre, shot and killed Officer Aselton while he was performing his duties as a police officer.

I

In the first, third, and fifth counts of the complaint, the plaintiff asserts that the town negligently "hired, screened and retained" police dispatchers Patricia Learned, Deborah Rataic, and William Madore and that this negligence proximately caused Officer Aselton's death. These claims are barred by the exclusivity of our workers' compensation law. C.G.S. § 31-284(a) states that an employer "shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained ..."

The exclusivity provision is a "central feature" of Connecticut's statutory scheme of workers' compensation. *Melanson v. West Hartford,* 61 Conn.App. 683, 684 (2001), cert. denied, 256 Conn. 904 (2001). Our legislature has specifically designed our law to make it difficult for employees to avoid this prohibition against law suits seeking compensation for workplace injuries. *Id.,* at 687.

The exclusivity afforded by § 31-284(a) "manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation." *Driscoll v. General Nutrition Corp.,* 252 Conn. 215, 221 (2000). This trade-off reflects a compromise of the right to common-law remedies for workplace injury in exchange for "relatively quick and certain compensation." *Id.* Any ambiguities in the Act must be resolved to advance this remedial purpose. *Id.*

Consequently, summary judgment must be granted as to the first, third, and fifth count.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 2
Not Reported in A.2d, 2002 WL 31875443
**(Cite as: Not Reported in A.2d)**

II

The seventh count of the complaint alleges that the municipality is liable for "willful, serious and/or intentional misconduct" because its untrained and unsupervised dispatchers sent Officer Aselton to the active burglary site without proper inquiry and instruction, which conduct resulted in his death. This allegation is an attempt to bring this case within the exception to the exclusivity of workers' compensation as recognized in *Suarez v. Dickmont Plastics Corp., I and II,* 229 Conn. 99 (1994), and 242 Conn. 255 (1997), respectively.

*2 Before the decision in *Jett v. Dunlop,* 179 Conn. 215 (1979), our Supreme Court had consistently ruled that workers' compensation is the sole remedy available to employees for work-related injury. *Id.,* at 217. In that case, the Supreme Court recognized, in dictum, a possible exception to the exclusivity of workers' compensation where the employer intentionally directs or authorizes another employee to assault the injured party. *Id.,* at 218. An "employer" in this context means not merely an agent or one in a supervisory rule but one "of such rank" so as to "be deemed the alter ego" of the employer. *Id.,* at 219.

In *Mingachos v. CBS, Inc.,* 196 Conn. 91 (1985), our Supreme Court was asked to extend the exception mentioned in *Jett v. Dunlop, supra,* to the situation where the employer intentionally violates safety rules and regulations regarding safe ventilation, fails to correct such violations, and fails to warn employees of the dangers created, which conduct results in an explosion which kills an employee. The Supreme Court declined this invitation to expand the crack in the exclusivity shield. *Id.,* at 100. Instead, the Court held that " intentionally," for purposes of avoiding the exclusive remedy of workers' compensation, means to intend the consequent harm and not just the action which precipitated that harm. *Id.,* at 101. This intent is distinguishable from reckless behavior. *Id.,* at 102-03. High foreseeability or strong probability are insufficient to establish this intent. *Id.* Although such intent may be proven circumstantially, what must be established is that the employer *knew* that the injury was substantially certain to follow the employer's deliberate course of action. *Id.* To hold otherwise would undermine the statutory scheme and purpose of the workers' compensation law and usurp legislative prerogative. *Id.,* at 103-06.

Definitive explication of the intentional injury exception to workers' compensation exclusivity came in *Suarez v. Dickmont Plastics Corp., I,* 229 Conn. 99 (1994). There, our Supreme Court explained that the substantial certainty test differed from a pure intent test in that the employee need only show that the employer believed there was a substantial certainty that the employee would suffer injury from its deliberate conduct rather than a requirement that the employer intended the injury to occur. *Id.,* at 109-11.

It is not the gravity of the employer's conduct which comes under scrutiny but rather the employer's subjective belief. *Suarez v. Dickmont Plastics Corp., II, supra,* at 279. The "mere failure to provide appropriate safety or protective measure" cannot alone imply this belief. *Suarez v. Dickmont Plastics Corp. I, supra,* at 111. The substantial certainty standard necessitates a showing that the activity producing the injury to the employee "was intentional or deliberate and the resulting injury, from the standpoint of the employer was substantially certain to result from the employer's acts or conduct." *Ramos v. Branford,* 63 Conn.App. 671, 680 (2001).

*3 "Failure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that causes personal injury." *Melanson v. West Hartford, supra,* at 689. Such delinquencies as the failure to train or supervise dispatchers properly is not circumstantial evidence of a subjective *belief* by his employer that Officer Aselton was substantially certain to be shot when sent to investigate a complaint. *Id.*

This count fails on at least three grounds. First, this allegation merely avers that the town allowed untrained and unsupervised dispatchers to perform police dispatch duty. Absent is any allegation or evidence that any highly placed town official actually harbored the belief that the lack of such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

training and oversight would proximately result in Sostre's murder of Officer Aselton. Again, it is not the gravity of the employer's conduct or the employee's injury which is the focus under *Suarez, I and II*, but rather the subjective belief of the employer that the particular injury claimed was substantially certain to occur.

Secondly, the plaintiff's claim in this count also fails because there is no allegation nor any proof satisfying the alter ego liability test articulated in *Jett v. Dunlop, supra,* at 219. In that case our Supreme Court held that, under workers' compensation law, an employer is not liable for common-law torts based on the intentional misconduct of an employee, even one occupying a supervisory role, such as a foreman. See *Melanson v. West Hartford, supra,* at 690. In order for an employer to incur liability, the wrongdoer who causes intentional injury must be of such high rank as to be an alter ego of the employer.

It is doubtful that a municipal corporation can ever have such an employee. But even if that proposition is legally possible, the pleadings lack the requisite specific allegations. Certainly, the dispatchers and their supervisors fail to have the alter ego status set forth in *Jett v. Dunlop, supra.*

The third, and perhaps most significant, basis militating against *Suarez, I and II,* liability results from the operation of C.G.S. § 52-557n.

Municipalities enjoy governmental immunity from suit for tortious injuries unless statutory law removes that protection. *Williams v. New Haven,* 243 Conn. 763, 766 (1998). Section 52-557n is a statute which codifies and limits the common-law regarding governmental immunity and municipal liability. *Sanzone v. Board of Police Commissioners,* 219 Conn. 179, 192 (1991). Subsection (a) of § 52-557n delineates the general principles of municipal liability, and § 52-557n(a)(2) expressly retains governmental immunity as to towns for damages arising from the malicious or willful misconduct of municipal officers, employees, or agents.

A municipal corporation cannot act except through the conduct of its officers, employees, and agents. A priori, any willful or malicious action by a municipality can exist only in the malicious or willful acts of an officer, employee, or agent. But because § 52-557n(a)(2) explicitly exempts municipalities from such liability, and because the holdings in *Suarez, I and II, supra, require* actual intent or actual belief that Officer Aselton was substantially certain to be shot by Sostre, which belief and action would necessarily constitute malice or willful misconduct, the town cannot incur liability under a *Suarez* theory. Indeed, it is logically impossible for a municipality to incur liability, except through indemnification, perhaps, under *Suarez I* and *II* because of § 52-557n(a)(2).

IV

*4 The eighth count of the plaintiff's complaint purports to state a claim pursuant to 42 U.S.C. § 1983 against the town of East Hartford. Section 1983 provides an individual with a cause of action where a person, acting under color of law, causes another to be deprived of rights secured by the federal Constitution or laws of the United States.

A municipality may not be sued under § 1983 for an injury afflicted solely by its employees or agents. It is well settled that a municipality may not be held liable under § 1983 solely on a respondeat superior basis. It may be held liable when the complained of actions are the result of the government's policy or custom. *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978); *Davis v. Zirkelback,* 149 F.3d 614 (7th Cir.1998); *Auriemma v. Rice,* 957 F.2d 397 (1992); *Baxter v. Vigo County School Corp.,* 26 F.3d 728 (1994); *Amati v. Woodstock,* 829 F.Supp. 998 (N.D.Ill.1993); *Abbott v. Village of Winthrop Harbor,* 205 F.3d 976 (2000). The plaintiff alleges that inadequate training, guidelines, supervision and disciplinary measures existed within the East Hartford Police Department so as to constitute a policy of that Department, and that said policy caused the death of Officer Aselton. Only where a failure to train reflects a deliberate or conscious choice by the municipality can the failure be properly thought of as an actionable city policy. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                       Page 4

Not Reported in A.2d, 2002 WL 31875443
**(Cite as: Not Reported in A.2d)**

(1989).

The plaintiff here must demonstrate either that the actions of the various individual defendants resulted from the official written policy of the government regarding dispatching procedures or that such actions were widely accepted and constituted the known custom of the city. It is axiomatic that the lack of a policy cannot constitute a policy. The plaintiff also fails to submit any evidence that the shortfalls complained of were customary. The only documentation submitted by the plaintiff in opposition to the motion for summary judgment is a report by his purported expert stating that there are deficiencies within the East Hartford dispatch department and that said deficiencies have been existent for at least nine years. This fails to establish a governmental policy or custom.

Even if the plaintiff had proven the existence of a municipal policy, the plaintiff must also prove that the actions of the municipality amounted to constitutional violations. The plaintiff claims that his rights were violated under the Fourth and Fourteenth Amendments to the U.S. Constitution. FN1

> FN1. In his complaint, the plaintiff also alleged First and Sixth Amendment violations. These claims have been withdrawn.

The Fourth Amendment to the U.S. Constitution " prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous. see *Carter v. Buscher,* 973 F.3d 1328, 1332 (7th Cir.1992)." *Medeiros v. O'Connell,* 150 F.3d 164, 167 (2d Cir.1998). The plaintiff claims that Officer Aselton's rights were violated when the defendant intentionally placed him into a zone of foreseeable danger. The U.S. Supreme Court has stated "that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo,* 489 U.S. 593, 596-97, 109 S .Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). Assigning an employee to work in a certain place is not a seizure contemplated by the Fourth Amendment. Accordingly, Officer Aselton's Fourth Amendment rights were not implicated in this case.

\*5 The due process clause of the Fourteenth Amendment is a limitation on the state's power to act. It forbids the state to deprive individuals of life, liberty, or property without due process of law. The due process clause, however, is not a guarantee of certain minimum levels of safety and security and it cannot be extended to impose an affirmative obligation on the town to ensure that those interests are not harmed through other means. "As a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process, because guideposts for responsible decision-making in this uncharted area are scarce and open-ended." *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992). The conduct alleged must be arbitrary or conscience-shocking to constitute an abuse of due process. *Id.*

The plaintiff's Fourteenth Amendment claim is based upon the assertion that the defendant made Officer Aselton's work environment more dangerous by creating an increased risk of harm. In *Walker v.. Rowe,* 791 F.2d 507 (7th Cir.1986), the estates of three deceased prison guards brought claims against the Department of Corrections and an assistant warden after they were killed by inmates. The allegations included inadequate training, defective phone systems and cells, failure to control the inmates who had formed groups and taken charge of the prison, many of whom were known to make weapons in the metal shop. The Seventh Circuit Court of Appeals stated that even assuming that these acts and omissions increased the risk of injury facing the guards, there were no constitutional violations giving rise to § 1983 liability. The Court stated "The defendants did not kill or injure the guards; prisoners did, and this makes all the difference. To see why, consider the language of the due process clause of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                  Page 5

Not Reported in A.2d, 2002 WL 31875443
**(Cite as: Not Reported in A.2d)**

Fourteenth Amendment, on which the guards rely: ' Nor shall any State deprive any person of life, liberty or property, without due process of law ...' The constitution requires the state to grant 'process' before it deprives people of life, liberty or property. It is a constraint on the state's power to act, a prohibition on the misuse of official power. It does not require the state to guarantee life, liberty or property against invasion by private actors; it requires only that the state not act, unless with due process, when life, liberty or property are in the balance." *Id.,* at 509.

The plaintiff has alleged that inadequate training, lack of protocol, supervision and oversight within the East Hartford dispatch department increased the danger to Officer Aselton, thereby violating his Fourteenth Amendment right to due process. Based on the information before the court, the defendant's conduct does not rise to the level of conduct that is arbitrary or shocks the conscience, the standard necessary to maintain a due process claim.

V

Turning to the ninth count of the complaint, the plaintiff claims damages against the municipality directly arising from purported violations of §§ 4 , 7 , 8 , 9 and 14 of the Connecticut Constitution. This claim is untenable on at least two grounds.

A.

*6 Common-law causes of action for constitutional violations are cognizable only against individuals and are disallowed against municipalities. An analysis of the evolution of common-law constitutional claims is necessary at this point. The source of judicially created private causes of action seeking damage for constitutional violations is the United States Supreme Court case of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In that case the United States Supreme Court permitted a civil damages suit against federal officers for certain violations of the federal constitution for which no other remedy existed. Such common-law actions seeking monetary damages for constitutional infringements have come to be called *Bivens* actions.

In *Kelley Property Development, Inc. v. Lebanon,* 226 Conn. 314 (1993) , our Supreme Court rejected adoption of *Bivens* liability in Connecticut where the plaintiff contended that state substantive and procedural due process rights were derogated by the action of local zoning officials. While the Court in that case found no cognizable cause of action, it employed the analysis and criteria set forth in the *Bivens* case in arriving at that conclusion. In using this approach, our Supreme Court implicitly suggested that, in an appropriate matter which satisfied the *Bivens* criteria, such a cause of action might be viable.

Five years later, our Supreme Court found a case where the facts and constitutional violations claimed fulfilled the *Bivens* requirements, and the Court created a common-law cause of action. *Binette v. Sabo,* 244 Conn. 23 (1998). However, our Supreme Court has been constant in stating that in deciding whether a *Bivens* action ought to be permitted for a given state constitutional violation, the *Bivens* case and its federal progeny would guide Connecticut courts. *Kelley Property Development, Inc. v. Lebanon, supra,* at 338; *ATC Partnership v. Windham,* 251 Conn. 597, 613 (1999).

In 1994, the United States Supreme Court held that *Bivens* actions apply only to individuals and not governmental agencies. *FDIC v. Meyer,* 510 U.S. 471, 486 (1994). Recently, that Court has reiterated and expanded the restriction holding that *Bivens* actions are available only against individuals and not private corporate entities engaged in governmental business. *Correctional Services Corp. v. Malesko,* 534 U.S. 61 (2001).

Applying the limitations pertaining to *Bivens* actions as announced by the United States Supreme Court, no *Bivens* action can be maintained directly against the town of East Hartford for any violations of the state constitution.

B.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 6

Not Reported in A.2d, 2002 WL 31875443
**(Cite as: Not Reported in A.2d)**

Even if municipalities were susceptible to *Bivens* actions, this particular case would be barred because of the exclusivity of our workers' compensation law. Courts cannot create causes of action for damages where the legislature has expressly forbidden them. This principle pertains even as to *Bivens* actions which assert constitutional violations. *FDIC v. Meyer, supra,* at 475. Put another way, *Bivens* actions can exist only in the absence of a legislative restriction forbidding such suits. Indeed, our Supreme Court in *Binette v. Sabo, supra,* acknowledged that the *Bivens* decision itself was premised on the fact that Congress had not provided a remedy "nor had it prohibited an award of damages." *Id.,* at 36.

*7 In the present matter, our legislature *has* prohibited an employee from suing an employer for work related injuries and "abolished" "all rights and claims" other than those conferred under workers' compensation. See C.G.S. § 31-284(a). A court would trespass on the separation of powers by allowing municipal employees to sue under *Bivens* where our legislature has forbidden suit. *Kelley Property Development, Inc. v. Lebanon, supra,* at 339. Permitting a *Bivens* action against the town because of a work related death would undermine the fundamental purposes of the workers' compensation system which is to provide the exclusive remedy for such deaths. *Melanson v. West Hartford, supra,* at 684.

VI

The twenty-sixth count is a catch-all claim of liability under respondeat superior incorporating all of the counts against the municipal employee defendants. Based on the exclusivity of the workers' compensation law as explained above, the town can incur no liability under the theory of respondeat superior.

For these reasons, the summary judgment is granted as to the town of East Hartford on all counts pertaining to it.

Conn.Super.,2002.
Aselton v. Town of East Hartford

Not Reported in A.2d, 2002 WL 31875443

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.