Westlaw.

Not Reported in A.2d

Page 1

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

C

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Windham.
Todd MILHOMME, PPA Sharon Milhomme and Sharon Milhomme
v.
Richard LEVOLA, et al.
No. CV 94 0048326S.

July 14, 1995.

*DECISION ON THE PLAINTIFFS' MOTION TO STRIKE THE DEFENDANTS FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH SPECIAL DEFENSES*

FOLEY, Judge.

I.

*1 The Plaintiffs claim that on or about June 6, 1988, and for some time prior thereto, the minor plaintiff was a student at Killingly Memorial School in Killingly, Connecticut. During the 1987-1988 school year, while being transported to and from school on School Bus Number 108, the minor plaintiff, Todd Milhomme, was allegedly subjected to repeated physical and sexual abuse, by other students being similarly transported, whereby he was forced, through the threat and use of physical violence, to engage in sexually self-abusive conduct. This alleged conduct caused him to suffer the severe personal and emotional injuries set forth in the plaintiff's complaint.

The several defendants in this action were responsible for providing, selecting and/or conducting all or part of the transportation of Todd Milhomme and the other students to and from Killingly Memorial School. The defendant, Richard Levola, as the Director of Transportation for the Killingly Board of Education, was responsible for securing and supervising the transportation of children to and from Killingly public schools. The defendant, Jody Orr, was an employee of the Killingly Board of Education, acting within the scope of his duties as the driver of bus number 108 for the Killingly Board of Education, which transported the minor plaintiff to and from school.

The plaintiff brought this claim by amended complaint, dated November 7, 1994, in which it is alleged that the defendants were negligent in the provision, selection and/or conduct of Todd's transportation. The complaint further alleges that as a result of this negligence Todd Milhomme was subjected to abuse and injuries suffered as a result thereof. On March 28, 1995, the defendants filed an "Amended Answer to Plaintiff's Amended Complaint" in which they asserted several special defenses. These defenses are the subject of this motion to strike.

The first special defense asserts that the plaintiff's claim is barred by the limitations period provided in General Statute § 52-584 [FN1]. The second special defense asserts that this claim is barred by the limitations period provided in General Statute § 52-577. [FN2] The defendants' third special defense claims that "[l]iability of these defendants is barred by General Statutes § 52-557n [FN3]." The fourth special defense alleges governmental immunity and the fifth special defense maintains the claims are barred by the doctrine of governmental immunity. The sixth special defense raises the doctrine of laches. The seventh special defense asserts that the conduct of the other students involved in this incident is a superseding cause of the plaintiff's injuries.

FN1. CGSA § 52-584 "Limitation of action for injury to person or property"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 2

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

FN2. CGSA § 52-577 "Action founded upon a tort."

FN3. CGSA § 52-557n "Liability of political subdivision and its employees, officers and agents. Liability of members of local boards and commissions."

II.

A special defense is a pleading used by a defendant who seeks the admission of evidence which is not inconsistent with the claim by the plaintiff but nevertheless tends to show that the plaintiff has no cause of action. Practice Book § 164; *Pawlinski v. Allstate Insurance Co.,* 165 Conn. 1, 6 (1973).

*2 A motion to strike challenges the legal sufficiency of the allegations of a complaint, or any one or more counts thereof, to state a claim upon which relief may be granted. Practice Book 152(1). "In deciding upon a motion to strike ... a trial court must take the facts to be those alleged in the complaint and 'cannot be aided by the assumption of any facts not therein alleged.'" *Liljedahl Bros., Inc. v. Grisby,* 215 Conn. 345, 348 (1990) (citations omitted). The facts are to be construed in the light most favorable to the pleader. *Bouchard v. People's Bank,* 219 Conn. 465, 471 (1991). If the facts provable under the allegations of the pleadings would support a cause of action, the motion to strike must fail. *Mingachos v. CBS, Inc.,* 196 Conn. 91, 109 (1985). A defendant may raise the doctrine of sovereign immunity on a motion to strike. See *Heigl v. Board of Education,* 218 Conn. 1, 2 (1991).

III.

In the first and second special defenses, the defendants invoke Sections 52-584 and 52-577 respectively in asserting that the plaintiff's claims are time-barred. The plaintiff maintains, however, that the applicable statute of limitations is provided in Section 52-577d of the General Statutes, in which case the plaintiff's claim is timely.

Section 52-577d of the General Statutes states:
"Limitation of action for damages caused by sexual abuse, exploitation or assault."

Notwithstanding the provisions of section 52-577, no action to recover damages for personal injuries to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than seventeen years from the date such person attains the age of majority.

The plain language of this section provides that this period of limitations applies to all claims for personal injuries to a minor caused by sexual assault or sexual exploitation. The statute provides that, regardless of the general limitations period for torts, such as those relied upon by the defendants, no action seeking redress for injuries suffered as a result of misconduct of a sexual nature may be brought later than seventeen years from the date of majority. This action, brought on behalf of this minor plaintiff, seeks redress for personal injuries caused by a sexual assault. Under this statute as long as this action was brought within seventeen years from the date that the minor plaintiff attains the age of majority, it is timely.

The defendants argue that § 52-577d only applies to actions brought against the actual perpetrators of the sexual assault.

A review of the legislative history of § 52-577d is instructive. This extended statute of limitations was originally enacted in 1986 as part of An Act Concerning Victims Rights (P.A. 86-401) which was intended to assure that victims of crime and their families were educated as to their rights and to facilitate the exercise of these rights.

The portion of the victims' rights bill that was later codified as § 52-577d was authored and introduced by Representative Richard Tulisano who remarked upon the legislation after moving for its adoption:
*3 Mr. Speaker, this amendment effectively tolled the statute of limitations in civil cases in which a minor who has been victimized by sexual assault could bring an action against the offender--a civil action against the offender.
Remarks Representative Richard Tulisano, 29 H.R.Proc., Part 12, 1986 Sess. pp. 4387-88.

A review of the record of debate on this bill

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 3

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

demonstrates that it was intended to provide minor victims of sexual abuse with an opportunity to exercise their rights against the offender once they had attained the age of majority and could exercise control over their lives. See generally, 29 H.R.Proc. Part 12, 1986 Sess., pp. 4387-4397.

The legislature revisited the issue in 1991 when the period of limitations was extended from seven years from the date of the alleged abuse to seventeen years from the age of majority. P.A. 91-240. At that time the Judiciary Committee heard extensive testimony from professionals and victims about the frequency of repressed memories of abuse and the need to "redress a fundamental inequity and hardship that is worked upon adult victims of childhood incest abuse when traditional rules of actual accrual are applied to the civil claims. Remarks, Margaret Carson Clark, Judiciary Committee Proceedings, Part 4, April 12, 1991, pp. 1125-1147; Remarks, Representative Bolster, 34 H.R.Proc., Part 13, 1991 Sess. pp. 4704-4707.

In describing the amended legislation, its chief author, Representative Tulisano, once again noted that "Connecticut was among the first states to recognize that minor victims of sexual assault often do not have the independence and the opportunity to bring civil actions against the perpetrators of crimes against them...." *Id.* at 4705 (emphasis added). Representative Tulisano elaborated that in these cases the only way it was thought the legislature might be able to help a victim become whole was to be able to bring a civil cause of action against the perpetrator. *Id.,* at 4706-07.

The defendants further argue that of all of the states having extended statutes of limitations for civil actions for sexual abuse, only one, Minnesota, specifically provides for an action against a person who negligently permitted sexual abuse to occur. Minn.Stat. § 541.073. By contrast, a clear majority of states specifically provide for an action against a perpetrator *only* and thereby exclude an action against a non-perpetrator, such as these defendants, from the scope of their extended statutes. [FN4] The remaining state statutes, including Connecticut are silent as to the definition of "an action based on childhood sexual abuse."

> FN4. *See,* Alaska Stat. § 9.10.140; Cal.Civ.Code Proc. § 340.1; Ga.Code Ann. § 3-1004.5; La.Rev.Stat.Ann. § 9:2800.9; Mo.Rev.Stat. § 537.046; Mont.Code Ann. § 27-2-216; N.J.Rev.Stat. § 2A:61B-1; Okla.Stat. tit 12 § 95; R.I.Gen.Laws § 9-1-51; S.D.Codified Laws Ann. § 26-10-25; Utah Code Ann. § 78-12-25.1; Vt.Stat.Ann. title 12 § 522; Wash.Rev.Code § 4.16:340

This issue has been considered in a thoughtful and well reasoned opinion of U.S. District Court Judge Alan Nevas in *Almonte v. New York Medical College,* 851 F.Supp. 34 (D.Conn.1994), wherein the court determined that § 52-577d was not limited in application to perpetrators only. The court found that the unambiguous language of the statute indicated that the focus is on the particular type of harm that is the basis of the action rather than the parties that are involved. In so holding, the court pointed out that:

> *4 [I]n defining the scope of the statute, courts should look to whether the underlying harm was allegedly 'caused by sexual abuse, sexual exploitation or sexual assault' ... rather than whether the named defendants are potentially primarily or secondarily liable for the alleged harm.

*Id.* at 37. In the court's opinion, such a "harm-based" approach was consistent with the intent of the legislature. Citing the Supreme Court case of *Roberts v. Caton,* 224 Conn. 483, 493 (1994), Judge Nevas stated that one of the purposes of § 52-577d was to allow plaintiffs sufficient time to recall the traumatic offenses. *Id.* The legislature recognized that victims of abuse and exploitation may take an extended period of time to bring an action. Accordingly, the *Almonte* court determined that limiting § 52-577d to offenders would virtually immunize an entire class of prospective and potentially liable parties. The court determined that such a result was both contrary to public policy and inconsistent with the Connecticut legislature's intent to broaden the remedies available to victims of child sexual assault, abuse or exploitation. [FN5]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 4

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

*Id.* at 38. This court agrees with that analysis.

> FN5. Representative Richard Tulisano stated that the statute was "designed to give [victims] some sort of self-help." *See* Conn.General Assembly, House Proceedings 1986 6336. "It provides an opportunity for those who have been victimized to step forward, to try to seek a chance to win something back, which although they never could, it at least, provides them with the opportunity to speak up, to talk about it, and to make sure that their voice and their concerns are heard." *Id.* at 6353.

The facts of the *Almonte* case involve an individual who, while a psychiatric post-graduate student at the defendant, New York Medical College, sexually assaulted and threatened a ten year old boy. *Almonte,* 851 F.Supp. at 36. As a result of the sexual assaults, the child suffered severe personal injury. The child's parents filed a lawsuit on behalf of their son against the perpetrator, against the perpetrator's analyst [FN6] as well as the medical school. The analyst subsequently moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure from which the court rendered the decision above.

> FN6. As part of the training regimen, students wishing to become psychoanalysts must themselves undergo analysis. The facts of this case revealed that the perpetrator in fact told his analyst that he was a pedophile.

The Connecticut state courts have infrequently addressed this issue. On several occasions the issue was raised by motion to strike or as a challenge to the constitutionality of the statute. [FN7] On both of these occasions, the trial courts did not reach the precise issue presented by the first and second special defenses in this case. However, one published superior court case has dealt with the issue raised by the defendant in this case and has ruled that § 52-577d applies to non-perpetrators. *See v. Bridgeport Roman Catholic Diocesan Corp.,* 10 Conn.L.Rptr 51 (October 18, 1993, Freedman, J.). [FN8]

> FN7. In *Little v. Booth,* the defendant, Board of Education, argued that the complaint should be dismissed because the 17 year statute of limitation period of § 52-577d does not apply to actions based on negligent conduct which permits the abuse to occur. The court held that objections to the statute of limitation period of § 52-577d must be brought by special defense. The court based its holding strictly on procedural grounds when it held that pursuant to § 164 of the Practice Book, objections to the Statute of Limitation provision of Conn.Gen.Stat. § 52-577d can only be raised by special defense. *Little v. Booth,* 10 Conn.L.Rptr. No. 9, 290, 292 (December 13, 1993). (*citing Forbes v. Ballaro,* 31 Conn.App. 235, 239 (1993)). Thus, the court dismissed the defendant's argument without reaching the merits of the defendant's claim.

Another case in which the court reviewed § 52-577d of the Connecticut General Statutes, is *Giordano v. Giordano,* 1993 Ct.Sup. 5835 (June 14, 1993, Hodgson, J.).

In *Giordano,* the Court was asked to review the constitutionality of § 52-577d of the Connecticut General Statutes. The defendant argued that § 52-577d is unconstitutional because the passage of time had deprived him of the ability to present some witnesses. *Id.* at 5836. The court, however, dismissed the defendant's argument because "the defendant had not demonstrated a likelihood that he will prevail on the merits of his claim that § 52-577d C.G.S., as amended, is, as a matter of law, unconstitutional". *Id.*

> FN8. The Court also decided the companion case *Rosado v. Bridgeport Roman Catholic Diocesan Corp.* CV93-0302072S in the same opinion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

Page 5

The plaintiffs in *See* and *Rosado* brought personal injury claims against the perpetrators of the sexual assaults and the Bridgeport Diocesan Corporation. The Diocesan Corporation moved for summary judgment on the ground that the claims against it were barred by § 52-584, the general negligence statute of limitations, which it claimed was the applicable limitations period. The court denied the defendant's motions. The court determined that the two statutes "should be harmoniously construed so the more specific statute controls." *Id.* (quoting *McKinley v. Musshorn,* 185 Conn. 616, 624 (1981) ). Thus, the court held that § 52-577d, the specific statute, provided the applicable statute of limitations for the claims against the Diocesan Corporation. *Id.* at 52.

*5 The facts of the present case are analogous to both the *Almonte* case and the *Bridgeport Diocese* cases. The facts include actions by individuals over which the defendants have supervision and control. These individuals allegedly perpetrated abuse of a sexual nature against a minor which, in the exercise of reasonable and proper care, the non-perpetrator defendants, it is maintained, could and should have prevented. The courts in those cases determined that the applicable statute of limitations was provided by § 52- 577d which specifically addresses actions for personal injuries caused by sexually abusive behavior.

Accordingly, the motion to strike the first and second special defense is granted.

IV.
The defendant's third special defense alleges that the "[l]iability of the defendants is barred by General Statutes § 52-557n." However, the plain language of the § 52-557n which is designed at once to both confer and limit the liability of persons serving in political subdivisions, local boards and commissions includes an exception ("except as otherwise provided by law ...") which nullifies the use of this section as a special defense. One of the statutes which fall under the exception is General Statute § 52-557 "Injury to children being transported to school." This statute provides, in part "... it shall be no defense that such transportation is in the line of governmental duty." The section explicitly eliminates the defense relied on by the defendants in this action.

Therefore, the motion to strike the defendants' third special defense is granted as § 52-557 is the controlling statute not § 52-557n.

V.
The defendants fourth special defense raises the issue of governmental immunity. A lawsuit against a town is not a suit against a sovereign. Unlike the state, towns do not benefit from sovereign immunity and may sue or be sued in any action. *Murphy v. Ives,* 151 Conn. 259, 264 (1963). Municipalities and their employees have only a qualified immunity in the performance of a governmental duty. *Burns v. Board of Education,* 228 Conn. 640, 645 (1994). In certain circumstances, municipalities do enjoy governmental immunity from liability for their tortious acts. *Id.; Ryskiewicz v. New Britain,* 193 Conn. 589, 593 (1984). In order to receive this qualified immunity, the actor must necessarily be engaged in a governmental duty. Section 52-557 prevents a town, school district, or municipality from claiming that transportation of school children is a governmental duty and thus exempting them from liability. For this reason, the fourth special defense is unavailable to the defendant.

Additionally, governmental immunity may be abrogated by statute. *Ryskiewicz,* 193 Conn. at 593 . A second facet of § 52-557 is that it abrogates governmental immunity in the area of transportation of school children. For these two reasons the plaintiff's motion to strike the defendants fourth special defense must be granted.

VI.
*6 The fifth special defense raises the issue of **sovereign immunity**. A few specific facts are necessary for a resolution of this issue. The plaintiff, Todd Milhomme, during the 1987-1988 school year, was a **special education** student in the Killingly School District. He was transported to school in accordance with the individualized education program developed for him as mandated by statute. See generally, General Statutes § 10-76a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 6

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

, et seq.

In developing and maintaining a special education program, a board of education acts under state mandate and, thus, acts as an agent of the state. *See, Cheshire v. McKenney,* 182 Conn. 253, 258 (1980). Administrative regulations adopted pursuant to § 10-76 specifically mandate that:
> Each board of education shall provide, as a related service, safe and appropriate transportation as required to implement the individualized education program for each child requiring special education and related services ...

Connecticut General Administrative Regulations § 10-76d-19.

The transportation of Todd Milhomme to the Killingly Memorial School involved duties and activities for which the Board was responsible as an agent of the state. The doctrine of sovereign immunity, it is maintained, should apply in this instance.

This question was addressed by the court in *Crandall v. Groton Board of Education,* No. 102935 (Nov. 26, 1993); 1993 Ct.Sup. 10229 9 CSCR (January 17, 1994). In that case, the court, Hendel, J., granted defendants' motion to strike plaintiff's claims of negligence against the Board arising from alleged verbal and physical abuse by aides on the **special education** bus. The court reviewed the distinction between a local board of **education** as agent of the state and as agent of a municipality. When fulfilling statutory duties imposed upon them pursuant to the constitutional mandate of article eight, § 1, boards of education act as agents of the state and are protected by the doctrine of **sovereign immunity**. *Id.* quoting *Cheshire v. McKenney,* supra. But when acting on behalf of a town in maintaining control over the town's public schools, a local board of education is an agent of the town and not afforded **sovereign immunity**. Id.
> "A local board of education can be an agent of the state for some purposes and an agent of the municipality for others. Id., 3-4 (1991). Thus, a local board of education potentially enjoys **immunity** under two different theories of

**immunity** for acts carried out within its governmental capacity, **sovereign immunity** and governmental **immunity**. Id., 4.

"There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate of article eighth, 1." [FN1] Cheshire v. McKenney, 182 Conn. 253, 258 (1980). They are also agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality's limits. Id., 258-59. When acting on behalf of the town, local boards of education are not shielded by the doctrine of **sovereign immunity**.
   See, e.g., Kosloff v. Fairfield City Council of Boy Scouts of America, 6 Conn.L.Rptr. 88 (February 25, 1992, Spear, J.) (**sovereign immunity** does not bar a claim against school board by minor plaintiff who was injured when several older and larger children fell on him during a roller-skating event sponsored by a Boy Scouts Council and held at a school, since board was not acting as a state agency in maintaining control over the school with respect to the conduct of the skating event). But see Arvoy v. City of Stamford, 2 Conn.L.Rptr. 317 (August 21, 1990, Lewis, J.) (**sovereign immunity** bars claim against school board by plaintiff student who was assaulted by another student on the grounds of a high school, since board of education while performing its educational functions is a state agent).

*7 Accordingly, plaintiff's claims in *Crandall* were stricken.

The cases cited by plaintiffs in opposition to this principle, are inapposite. In *Belanger v. Glastonbury,* 3 Conn.L.Rptr. No. 19, 623 (May 6, 1991) plaintiff alleged that the school bus which had struck a minor student was owned by the Town of Glastonbury. The court reasoned that since maintenance of school property is not included within the educational activities of the state, the board was acting as an agent of the municipality and the court rejected the sovereign immunity argument

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 7

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

in that instance. In *Nunes v. Blake Bus Service, Inc.* 3 Conn.L.Rptr. 149 (January 4, 1991), the court relied upon General Statutes § 10-220, which is not the controlling statute in this matter.

Since the provision of **special education** services, which specifically include transportation as a part of an individualized **education** plan (IEP), is carried out by a board of **education** pursuant to a specific educational mandate of the state, the doctrine of **sovereign immunity** applies and bars plaintiffs' claims of negligence in this case. The plaintiff's motion to strike the defendant's fifth special defense is denied.

### VII

The defendant's sixth special defense raises the issue of laches in the following manner: "[P]laintiff's claims are barred by the doctrine of laches". The Connecticut courts have held that a special defense of laches must be stricken if it fails to plead facts sufficient to support the legal conclusion that the claim is barred by laches. *D'Addario v. Bergman,* 1992 Ct.Sup. 55 (January 17, 1992, Spear, J.); *Hydro-Kem Services v. United Illum.,* 1992 Ct.Sup. 9870 (October 30, 1992 Celotto, J.); *Shawmut, N.A. v. Concord Steel Corp. of Conn.,* 1993 Ct.Sup. 5406 (June 2, 1993, Walsh, J.). In *Shawmut,* the Middlesex Superior Court, Walsh, J., struck the defendant's special defense of laches for failure to plead sufficient facts to show that the defendant was indeed prejudiced by the plaintiff's delay in bringing the action. *Id.* at 5411. Similarly, in *Hydro-Kem,* the New Haven Superior Court, Celotto, J., granted the plaintiff's motion to strike the defendant's special defense when it held that the laches defense contains no more than conclusions and is demurrable. *Id.* citing *Warner v. Liimatainen,* 153 Conn. 163 (1965).

The defendant's sixth special defense merely states that "[P]laintiff's claims are barred by the doctrine of laches." As such, this defense fails to allege any facts to support the contention that the plaintiff's delay is prejudicial to the defendant.

In addition, the Supreme Court has held that the equitable defense of laches is barred in an action at law. *Sangiavanni & Sons v. F.M. Floryan & Co.,* 158 Conn. 467 (1969); *Weil v. Poulen,* 121 Conn. 281 (1936). In *Sangiavanni,* the court held that "laches is purely an equitable defense and is not imputed to one who has brought an action at law within the statutory time period." *Sangiavanni,* 158 Conn. at 474. Similarly, in *Weil v. Poulen,* 121 Conn. at 286, the court stated that the equitable defense of laches cannot be asserted in an action at law seeking damages. The defendant's sixth special defense is insufficiently and inappropriately pleaded, the motion to strike is granted.

### VIII

*8 The defendants' seventh special defense states that "[a]ny alleged injuries sustained by plaintiffs were the result of the intentional, intervening tortious conduct of the other students on bus # 108 which conduct was a superseding cause of plaintiffs' injuries."

Section 315 of the Restatement of Torts provides that there is generally no duty to control the conduct of a third person to prevent harm to others unless there is a special relationship giving the injured party a right to such protection. Restatement 2d of Torts § 315. The types of relationships that impose a duty because of the relation of the actor to a third person include parents, employers, and landowners. *Id.* at § 316-319. The types of relationships that impose a duty based on the relation of the actor to the victim include that of innkeeper, common carrier, police, etc. *Id.* at § 314. Where one of these special relationships exists, there is a duty to so control the intentional conduct of third persons. *Kargal v. Sandpiper Dunes Limited Partnership,* 6 CSCR 243 (January 28, 1991, Axelrod, J.).

In the present case, there are elements of both types of "special relationship." Here the defendants had a duty imposed by law to protect the minor plaintiff from harm and to prevent the intentional harm to the school children in their care. Members and employees of Boards of Education stand as surrogate parents to their pupils. *See Sansone v. Bechtel,* 180 Conn. 96, 98 (1980); *Andreozzi v. Rubano,* 145 Conn. 280, 282 (1958). Part of this special relationship includes the duty to maintain

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

**(Cite as: 1995 WL 441685 (Conn.Super.))**

Page 8

order and discipline. *Id.* There are, therefore, two bases for finding that the defendants' special defense is improper. First, the defendants stood in the shoes of the parents of the children on school bus number 108 and thus, had a duty to protect them from the intentional acts of others, including other school children. Second, the duty of the defendants also extended to an obligation to maintain discipline and order. Having failed in that regard, the defendants may not now claim that their failure to prevent the very conduct they had a duty to prevent relieves them of liability. The motion to strike the seventh special defense is granted.

1995 WL 441685 (Conn.Super.), 14 Conn. L. Rptr. 517

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d

1993 WL 499080 (Conn.Super.), 10 Conn. L. Rptr. 430

**(Cite as: 1993 WL 499080 (Conn.Super.))**

Page 1

▷

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of New London, at Norwich.
Patricia CRANDALL, Parent and Guardian of Faith Crandall
v.
GROTON BOARD OF EDUCATION, et al.
No. 102935.

Nov. 26, 1993.

MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE

HENDEL, Judge.

*1 Plaintiff Faith Crandall brings this action through her parent and guardian Patricia Crandall against defendants Groton Board of Education ("Board") and Vancom-Connecticut, Inc. The plaintiff, a special education student, alleges that she was subjected to verbal and physical abuse by transportation aides employed by the Board, which caused emotional and physical injuries to the plaintiff.

Count one of the plaintiff's amended complaint states, in pertinent part:
8. The injuries suffered by Faith Crandall are as a result of the negligence of the Groton Board of Education in one or more of the following ways:
a. Said Board of Education failed to properly screen and hire the transportation aides.
b. Said Board of Education failed to properly train said aides in the proper treatment of disabled children.
c. Said Board of Education failed to discipline or remove said aides from the supervision of Faith Crandall when they knew or should have known that those aides had abused Faith Crandall.
d. Said Board of Education failed to provide appropriate transportation for Faith Crandall as required by Section 10-76d-19 of the Connecticut General Administrative Regulations.

The Board has moved to strike count one on the basis of sovereign immunity and governmental immunity

A motion to strike challenges the legal sufficiency of the allegations of a complaint, or any one or more counts thereof, to state a claim upon which relief may be granted. Practice Book § 152(1). "In deciding upon a motion to strike ... a trial court must take the facts to be those alleged in the complaint and 'cannot be aided by the assumption of any facts not therein alleged.' " *Liljedahl Bros., Inc. v. Grisby,* 215 Conn. 345, 348 (1990) (citations omitted). The facts are to be construed in the light most favorable to the pleader. *Bouchard v. People's Bank,* 219 Conn. 465, 471 (1991). If the facts provable under the allegations of the pleadings would support a cause of action, the motion to strike must fail. *Mingachos v. CBS, Inc.,* 196 Conn. 91, 109 (1985). A defendant may raise the doctrine of sovereign immunity on a motion to strike. *See Heigl v. Board of Education,* 218 Conn. 1, 2 (1991).

The Board argues that it is immune from liability pursuant to the doctrine of sovereign immunity as an agent of the state. In addition, the Board argues that it is immune from liability pursuant to the doctrine of governmental immunity in that all of the acts of negligence alleged in the plaintiff's amended complaint are discretionary in nature.

The plaintiff concedes that the defendant is entitled to the protection of the doctrine of **sovereign immunity** for the act of providing **special education** services. The plaintiff argues, however, that the doctrine of **sovereign immunity** does not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 2

1993 WL 499080 (Conn.Super.), 10 Conn. L. Rptr. 430

**(Cite as: 1993 WL 499080 (Conn.Super.))**

apply in the present case because the Board breached its statutory duty to provide transportation in connection with these services. The plaintiff argues further that the Board is not protected by governmental immunity because once the Board implemented a **special education** program, its function was no longer discretionary since it was bound to provide transportation for that program. The plaintiff also argues that the acts are not discretionary because the Board knew or should have known of the acts of abuse suffered by the plaintiff.

**\*2** A local board of education can be an agent of the state for some purposes and an agent of the municipality for others. *Id.,* 3-4 (1991). Thus, a local board of education potentially enjoys immunity under two different theories of immunity for acts carried out within its governmental capacity, sovereign immunity and governmental immunity. *Id.,* 4.

"There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate of article eighth, § 1." [FN1] *Cheshire v. McKenney,* 182 Conn. 253, 258 (1980). They are also agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality's limits. *Id.,* 258-59.

When acting on behalf of the town, local boards of education are not shielded by the doctrine of sovereign immunity. *See, e.g., Kosloff v. Fairfield City Council of Boy Scouts of America,* 6 Conn.L.Rptr. 88 (February 25, 1992, Spear, J.) (sovereign immunity does not bar a claim against school board by minor plaintiff who was injured when several older and larger children fell on him during a roller-skating event sponsored by a Boy Scouts Council and held at a school, since board was not acting as a state agency in maintaining control over the school with respect to the conduct of the skating event). *But see Arvoy v. City of Stamford,* 2 Conn.L.Rptr. 317 (August 21, 1990, Lewis, J.) (sovereign immunity bars claim against school board by plaintiff student who was assaulted by another student on the grounds of a high school, since board of education while performing its educational functions is a state agent).

> FN1. Article eighth, § 1 of the Connecticut constitution provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation."

The complaint alleges negligence against the Board for failure to properly hire, train and discipline aides, and for failure to provide appropriate transportation as required by § 10-76d-19 of the Connecticut General Administrative Regulations. General Statutes § 10-76a et seq. govern special education programs. In developing and maintaining a special education program, a board of education acts under state mandate, and, thus, as an agent of the state. See *Cheshire v. McKenney, supra,* 258.

Section 10-76d-19 states:
  Each board of education shall provide, as a related service, safe and appropriate transportation as required to implement the individualized education program for each child requiring special education and related services
  ....
  (d) Transportation aides. Each board of education shall provide transportation aides where such aides are ascertained to be necessary to ensure safe and appropriate transportation. A transportation aide shall be assigned to each vehicle transporting a child whose individualized education program specifies the need for such an aide.

The Board provided transportation aides for the plaintiff and in doing so acted as an agent of the state.

**\*3** Because the allegations in the present case involve duties or activities for which the Board is responsible as a state agent, the doctrine of sovereign immunity applies and the Board's motion to strike count one of the plaintiff's amended complaint must be granted on such grounds.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

1993 WL 499080 (Conn.Super.), 10 Conn. L. Rptr. 430

**(Cite as: 1993 WL 499080 (Conn.Super.))**

Page 3

Inasmuch as the motion to strike count one must be granted on the grounds of sovereign immunity, it is not necessary to address the issue of governmental immunity.

For the reasons stated above, the court grants the defendant's motion to strike count one.

1993 WL 499080 (Conn.Super.), 10 Conn. L. Rptr. 430

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.