UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MATHEW AND CINDY MYSLOW, ET AL | : | NO.:  3:03CV00496 (MRK) |
| | : | |
| v. | : | |
| | : | |
| NEW MILFORD SCHOOL DISTRICT, | : | |
| ET AL | : | OCTOBER 31, 2005 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF SCHOOL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The defendants, New Milford School District, New Milford Board Of Education, Raymond Avery, Jeanann Paddyfote, Thomas Mulvihill, Paula Kelleher, Denis Dolan, Jean Malcolm, Josephine Rositano, Adele Johnson, Deborah Shelley, and Robyn Vikland, hereby submit this reply memorandum in support of their motion for summary judgment dated August 15, 2005.

**I.      PLAINTIFFS' OPPOSITION BRIEF**

  **A.      Narrowing of Issues**

A review of the plaintiffs' omnibus brief in opposition to the five pending motions reveals that the plaintiffs are not pursuing several of their claims.  First, the plaintiffs concede that there is no individual liability under §504 of the Rehabilitation Act of 1973 or the American With Disabilities Act (Count 4, 5 and 9).  See Plaintiffs' Brief, p. 29.  With respect to the plaintiffs' §504 claim against the New Milford School District, the plaintiffs concede that §504 does not contain or guarantee any procedural rights (Counts 4 and 9).  See Plaintiffs' Brief, p. 30, n. 104.  The plaintiffs also concede that Connecticut General Statute §10-76b-4 does not provide for a cause of action (Count

9). See Plaintiffs' Brief, p. 30, n. 104.

A review of the plaintiffs' omnibus brief also reveals that the plaintiffs' claims are limited to one issue: whether the New Milford School District required Travis to be medicated in violation of his rights. See Plaintiffs' Brief, p. 31; and Plaintiffs' Rule 56(a)(2) statement.

### B. Evidence

In the plaintiffs' local rule 56(a) statement, the plaintiffs admit to the majority of the defendants' claimed undisputed facts. Where the plaintiffs have denied statements of undisputed fact, however, the plaintiffs cite to their complaint. Similarly, the counter-statement of facts section of the plaintiffs' brief is replete with citations solely to the complaint. See Plaintiffs' Brief, pp. 4-6, 9-10, 12-13. The plaintiffs' reliance on their complaint in this regard is fatal to their case.

In order to defeat summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2nd Cir. 2002), *quoting*, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (underline in original). A non-moving party "may not rely upon the mere allegations or denial of the pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986); see also, Fed. R. Civ. P. 56(e). Once the moving party has satisfied its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to

interrogatories in order to demonstrate specific material facts giving rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986).

In this case, the School Defendants have submitted evidence demonstrating the absence of a genuine issue of material fact, but the plaintiffs have failed to go beyond the pleadings in their effort to defeat the pending motion for summary judgment.

## II.   STATUTE OF LIMITATIONS DEFENSE

The plaintiffs argue that their claims are not barred by the applicable statute of limitations periods because the statutes were tolled until April 2001 when Travis saw Dr. Kreminitzer for more medication "at the District's behest." See Plaintiffs' Brief, p. 29. The plaintiffs, however, have cited no evidence that Travis' seeing Dr. Kreminitzer was at the District's behest. Moreover, there is no evidence that either Dr. Alshansky's diagnosis of ADHD or Drs. Alshansky or Kreminitzer's prescriptions for medication were caused by the actions of any of the School Defendants. As such, even if the Court were to credit the plaintiffs' theory that Dr. Rubin prescribed Ritalin at the suggestion of the school, the plaintiffs' negligence and malpractice claims, which are subject to a two-year statute of limitations, would be barred because Travis stopped taking Ritalin (the only medication prescribed by Dr. Rubin) by May 2000. By May 2000 at the latest, the plaintiffs were aware of the side effects associated with Ritalin and had come to believe that "Ritalin is like cocaine." See **Exhibit H**, attached to original memorandum, pp. 117-20. The statute of limitations certainly commenced at this time, if not sooner.

As set forth in the defendants' prior memorandum of law, the alleged "misdiagnosis" and "recommendation" for medication by the school occurred in 1998,

3

five years before this action was commenced. As the plaintiffs' remaining claims are subject to a three-year statute of limitations, they are likewise barred.

### III.   FAILURE TO EXHAUST DEFENSE

As set forth in the defendants' prior memorandum of law, all of the plaintiffs' federal claims are subject to dismissal if it is determined that the plaintiffs failed to exhaust their administrative remedies.[1] The plaintiffs imply that because they "are essentially suing the District because it required him to be medicated," they did not need to exhaust the procedures set forth under the IDEA. See Plaintiffs' Brief, p. 31. The plaintiffs have cited no cases, statutes or regulations in support of their claim that the IDEA was somehow inapplicable. On the contrary, the only case the plaintiffs did cite that addressed a claim of forced medication by a school was actually brought pursuant to the IDEA. See Plaintiffs' Brief, p. 33; Valerie J. v. Derry Coop. Sch. Dist., 771 F. Supp. 483 (D.N.H. 1991).

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education…." 20 U.S.C. 1400(d). Where, as here, the plaintiffs claim that their son was denied a FAPE because he was required to be medicated, the IDEA governs. And the failure to exhaust the administrative remedies available under the IDEA deprives this court of subject matter jurisdiction. See Polera v. Bd. of Educ. Of Newburgh, 288 F.3d 478, 483 (2nd Cir. 2002); Hope v. Cortines, 69 F.3d 687, 688 (2nd Cir. 1995); Garro v. State of Conn. 23 F.3d 734 (2nd Cir. 1994).

---

[1] Lack of subject matter jurisdiction may be raised at any time, even jointly with other issues in a motion for summary judgment where filing only one motion is the desired approach because it is most cost effective. See Plaintiffs' Brief, p. 30, n. 105.

4

The plaintiffs argue that they satisfied the exhaustion requirement by pursuing a grievance via §504. See Plaintiffs' Brief, p. 31. Again, the plaintiffs have cited no authority in support of their claim that a §504 grievance relieves them of any obligations under the IDEA, and the defendants submit that that is not the case. Additionally, the plaintiffs' failure to cite to any evidence that their §504 grievance was timely, that the Board refused to hold a hearing, or that the plaintiffs asked for information as to the proper procedures for appealing the Board's denial of their grievance and received no word in response, makes it impossible for them to satisfy their burden regarding exhaustion. See Plaintiffs' Brief, pp. 13, 31.

## IV.    FAILURE TO STATE A CLAIM PURSUANT TO §504 AND THE ADA

The plaintiffs concede that there is no individual liability under §504 of the Rehabilitation Act or the Americans with Disabilities Act. See Plaintiffs' Brief, p. 29. The plaintiffs also concede that they cannot maintain a cause of action under §504 for any procedural violations. See Plaintiffs' Brief, p. 30, n. 104. The plaintiffs maintain, however, that they have asserted a cause of action against the School District and/or the Board of Education under §504 and the ADA for "lazily require[ing] them to put Travis on stimulants in order to attend school there." See Plaintiffs' Brief, p. 32.

The plaintiffs note that the Second Circuit has never considered whether bad faith or gross misjudgment is required to show discrimination under §504 or the ADA, but argue that the School District's requirement that Travis be medicated satisfies that standard. See Plaintiffs' Brief, p. 32. At least two district courts within the Second Circuit have followed the reasoning of the Eighth and Fourth Circuits and concluded that

5

a showing of bad faith or gross misjudgment is in fact required.  See A.W. v. Marlborough Co., 25 F. Supp.2d 27, 31 (D. Conn. 1998); Zahran v. New York Dept. of Educ., 306 F. Supp.2d 204, 213-14 (N.D.N.Y. 2004).  Section 504 and the ADA prohibit discrimination, not simply a denial of a FAPE.  In this case, the plaintiffs have proffered no evidence of discrimination.  There is no evidence of bad faith or gross misjudgment, but rather evidence of a professional disagreement over Travis' diagnosis.

      The plaintiffs also argue repeatedly that the School District "required" Travis to be medicated.  There is simply no evidence to support that allegation.  At most, Josephine Rositano and/or the PPT indicated to the Myslows that medication might help their son Travis, and suggested that the plaintiffs share Ms. Rositano's report with their own personal pediatrician.  Travis' pediatrician, Dr. Rubin, prescribed the Ritalin, without ever speaking to anyone from the School District.  After receiving the prescription from Dr. Rubin, the plaintiffs filled the prescription, took the medication to the school, and signed an authorization permitting the school nurse to administer the prescription.  See Cindy Myslow deposition transcript, p. 68.  When medication ran out, the plaintiffs refilled it and again delivered it to the school.  At the plaintiffs' request, teachers provided feedback regarding Travis' behavior after he started on the Ritalin.  At times, changes in the schedule for administering the medication were recommended.  The plaintiffs consulted with Dr. Rubin regarding any proposed time or dosage changes.  See Cindy Myslow deposition transcript, p. 67, attached hereto as **Exhibit Y**.

      Mrs. Myslow testified as follows:

      Q.    Do you think the school required you to have Travis on Ritalin?

6

> A. Yes.
>
> Q. Yes. Okay. And how did they do that?
>
> A. Constant phone calls, constant, you know, just notes like these, he was good in the morning, not doing so well in the afternoon, and impulsive, obstinate behavior. When he couldn't write something, he would push the paper away because he had a hard time. Like in the afternoons and the mornings changing things.
>
> …
>
> Q. And did you ask for the teachers to give you feedback on how Travis' behavior was after he started the Ritalin?
>
> A. Only in the very beginning.
>
> Q. Okay. How long did you ask for feedback from the teachers?
>
> A. Well, I always asked for feedback. But it was about everything on Travis, you know, the Ritalin, the learning, the other thing.
>
> Q. And so did there come a point in time when you didn't want feedback about Ritalin any more?
>
> A. Of course not.
>
> …
>
> Q. Okay. And then what did you not want comments on at a certain point?
>
> A. I got tired of the phone calls about medication. I got tired of, you know, switching it, not switching it, changing it, upping it, and not seeing any progress with Travis' work.
>
> Q. Okay. And so when did you reach that point that you got tired of the phone calls about the medication.
>
> A. I believe it was fourth grade I took Travis totally off all medications.

See **Exhibit Y**, pp. 63-64.

The plaintiffs have submitted no evidence that any of the School Defendants ever told them that medication was "required" or that any of the School Defendants ever

7

threatened them that adverse consequences would follow if they did not medicate Travis. This is not a case of forced medication as the plaintiffs suggest.

### V.   FAILURE TO STATE A CLAIM PURSUANT TO 42 U.S.C. §1983

The plaintiffs do not set forth any argument in opposition to the dismissal of their Fourteenth Amendment equal protection claim brought pursuant to 42 U.S.C. §1983. See Plaintiffs' Brief, pp. 32-33.

Arguably, the plaintiffs are continuing to pursue only a procedural due process claim and/or a substantive due process claim under the Fourteenth Amendment based on a theory that the School District forced the plaintiffs to medicate Travis. As set forth in Section IV above, this is not a case of forced medication upon a student.

The plaintiffs fail to address how their claim against the School District satisfies the standard for liability against a municipality under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, (1978). There is no evidence of an official custom or policy that caused Travis to be subjected to a denial of a constitutional right.

The plaintiffs likewise fail to address how their claim against the individual School Defendants survives in light of the doctrine of qualified immunity. The statute to which the plaintiffs cite regarding a prohibition against the recommendation of psychotropic drugs by school personnel was not enacted until 2003. See Plaintiffs' Brief, p. 3. There was no such law in existence during the years at issue in this case. The evidence here shows nothing more than a stated belief by a school psychologist that medication might help Travis (at a time when no legal authority prevented such), and subsequent feedback from the school regarding how Travis was doing on the medication.

The plaintiffs cite to only one case anywhere in the country in support of their §1983 claim.  See Plaintiffs' Brief, pp. 32-33, *citing*, Valerie J. v. Derry Coop. Sch. Dist., 771 F. Supp. 483 (D.N.H. 1991).  In the Valerie J. case, the school superintendent informed the parents that their son would be suspended for the remainder of the school year if they refused to accept an IEP that included mandated medication.  See id. at 486.  On appeal from a due process hearing decision pursuant to the IDEA, the district court held that such a requirement violated the student's right to a free appropriate public education.  Id. at 490.  The court did not consider any claims brought pursuant to §1983.  And unlike in this case, there was evidence of a threatened adverse action if the parents did not medicate their son.

## VI. **FAILURE TO STATE A CLAIM UNDER THE STATE CONSTITUTION**

Contrary to the plaintiffs' implication otherwise, the Connecticut Supreme Court in Sheff v. O'Neil, 238 Conn. 1, 678 A.2d 1267 (1996) did not find that the Connecticut Constitution provides a private right of action for *money* damages for failing to provide a free and appropriate public education without discrimination.  The action was for a declaratory judgment only, not for money damages as is the case here.

The plaintiffs have set forth no response to the defendants' argument that a *Bivens* action for money damages is not available against a municipality.

## VII. **SCHOOL DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY**

The plaintiffs argue that the School Defendants are not entitled to governmental immunity because there is in issue of fact as to whether their actions were malicious, wanton or in an abuse of discretion.  However there are no allegations of such conduct

in Counts One (negligence), Two (malpractice) or Eight (negligent infliction of emotional distress). These actions all lie in negligence (and are labeled accordingly) for which the School Defendants are entitled to governmental immunity both at common law and pursuant to Conn. Gen. Stat. §52-557n.

The plaintiffs have set forth no response in opposition to the defendants' argument that the plaintiffs' common law claims fail because they did not advance any statutory basis for asserting the claims against these municipal entities and/or their employees. Similarly, the plaintiffs have set forth no response in opposition to the argument that §52-557n expressly bars the intentional infliction of emotional distress claim (Count Seven) against the School District and the Board of Education.

### VIII. FAILURE TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiffs have failed to point to any evidence to support their claim for intentional infliction of emotional distress against any of the School Defendants. As set forth above, there is no evidence that this is a case of forced medication. And the plaintiffs have failed to show how the conduct of each of the individual School Defendants was by itself extreme and outrageous. As set forth in Section VII above, the claims against the School District and the Board of Education are expressly barred. Therefore, even if the Court determines that the individual School Defendants are not protected by sovereign or governmental immunity, the claims nonetheless fail absent evidence of wrongful conduct particular to that defendant. There is no such evidence in this case.

## IX. <u>CONCLUSION</u>

For the reasons set forth above and in the School Defendants' prior memorandum of law, the Court should grant summary judgment in favor of the School Defendants.

>DEFENDANTS,
>NEW MILFORD SCHOOL DISTRICT, NEW MILFORD BOARD OF EDUCATION, RAYMOND AVERY, JEANANN PADDYFOTE, THOMAS MULVIHILL, PAULA KELLEHER, DENIS DOLAN, JEAN MALCOLM, JOSEPHINE ROSITANO, ADELE JOHNSON, DEBORAH SHELLEY, and ROBYN VIKLAND
>
>By<u>/s/Alexandria L. Voccio</u>
>   Alexandria L. Voccio
>   ct21792
>   Howd & Ludorf, LLC
>   65 Wethersfield Avenue
>   Hartford, CT  06114
>   (860) 249-1361
>   (860) 249-7665 (Fax)
>   E-Mail: avoccio@hl-law.com

## **CERTIFICATION**

    This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 31st day of October, 2005.

| | |
|---|---|
| Deborah G. Stevenson, Esquire<br>226 East Flag Swamp Road<br>Southbury, CT  06488 | Alan C. Milstein, Esquire<br>Michael Dube, Esquire<br>4300 Haddonfield Road, Suite 311<br>Pennsauken, NJ  08109 |
| Richard A. O'Connor, Esquire<br>Christine A. Robinson, Esquire<br>Leslie Gold, Esquire<br>Sachner & O'Conner<br>The Crossroads West<br>765 Straits Turnpike, Bldg 2, Ste, 1001<br>Middlebury, CT  06762-1323 | Katherine C. Callahan, Esquire<br>Benjamin J. Berger, Esquire<br>Updike, Kelly & Spellacy, P.C.<br>One State Street<br>P.O. Box 231277<br>Hartford, CT  06123-1277 |

                /s/Alexandria L. Voccio
                Alexandria L. Voccio